**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MICHAEL MURRAY, WESLEY SMITH, SR., DOUGLAS WARD, RUSSELL KEMP, JACOB MEDOFF, MIRZA BAIG, TONI COLEMAN, DAVID LEVY, MARTY KINDELL, ROMAN WALKER, MARCUS BROWN, BRANDON ARRINGTON, RYAN DESOMBRE, STEVEN ANZALONE, PETER CASPER, JACQUELINE MUELLERLEILE, JOHN WILLIAMS, MICHAEL ROSENTHAL, ANGELINA SCHIEDEL, LADEE SAMUEL, AUSTIN SCHLENKER, FABIAN ACEVEDO, NADIA DABUL, JEFFREY HAHN, JR., SEBRINA HILL, RYAN ARDITO, ANDREW KENNEDY, PATRICIA BURROLA, PAYTON HERBERT, ELIZABETH STEELE, JERMAINE CHILDS, MARK HARPER, JOSEPH DUZY, TROY REIBLE, JACQUELINE WARD, MICHAEL DELORENZO, PAOLLA SILVEIRA, CHAD COBLE, CRYSTAL JENKINS, ANTONIO JACKSON, and CATHRYN SECOR, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT**<br><br><br>Case No. 26-cv-50184 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| CRESCO LABS INC., A BRITISH COLUMBIA, CANADA CORPORATION; | ) ) ) ) | |
| GREEN THUMB INDUSTRIES INC., A BRITISH COLUMBIA, CANADA CORPORATION; | ) ) ) ) ) | |
| VERANO HOLDINGS CORP., A NEVADA CORPORATION; | ) ) ) ) | |
| VERANO HOLDINGS, LLC, A DELAWARE LIMITED LIABILITY COMPANY, | ) ) ) ) | |
| Defendants. | | |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ......................................................................................................1

II.     PARTIES ....................................................................................................................5

III.    JURISDICTION AND VENUE .................................................................................33

IV.     FACTUAL ALLEGATIONS .....................................................................................34

        A.      Cannabis and Its Uses .................................................................................34

        B.      Federal Cannabis Law .................................................................................36

        C.      State Cannabis Laws ....................................................................................38

        D.      Cannabis and Health ....................................................................................43

                i.      Psychosis and Schizophrenia ...........................................................43

                ii.     Suicidal Ideation, Depression, PTSD, and Anxiety ........................53

                iii.    Cannabis and Cardiovascular Health ...............................................59

                iv.     Cannabis and Pain ...........................................................................60

                v.      Glaucoma .........................................................................................62

                vi.     Hyperemesis ....................................................................................63

                vii.    Cannabis Use Disorder.....................................................................64

                viii.   Prenatal Cannabis Exposure Risks to Fetuses and Children ..........65

        E.      Defendants' Unlawful Marketing Practices .................................................66

        F.      Summary of Defendants' Untrue, False, and Misleading Statements........92

V.      INTERSTATE AND INTRASTATE COMMERCE .................................................94

VI.     CLASS ALLEGATIONS...........................................................................................95

        A.      Cresco Multi-State Class.............................................................................95

        B.      Cresco State Subclasses ..............................................................................95

        C.      GTI Multi-State Class .................................................................................96

        D.      GTI State Subclasses...................................................................................97

        E.      Verano Multi-State Class ............................................................................99

        F.      Verano State Subclasses..............................................................................100

        G.      Class Exclusions.........................................................................................102

        H.      Rule 23 Prerequisites..................................................................................102

VII.     CAUSES OF ACTION MULTI-STATE CLASSES ........................................................... 104

VIII.    CAUSES OF ACTION STATE SUB-CLASSES ............................................................... 139

IX.      PRAYER FOR RELIEF ................................................................................................ 316

X.       LACK OF ADEQUATE REMEDIES AT LAW ............................................................... 316

XI.      DEMAND FOR JURY ................................................................................................. 316

The Plaintiffs, Michael Murray, Wesley Smith, Sr., Douglas Ward, Russell Kemp, Jacob Medoff, Mirza Baig, Toni Coleman, David Levy, Marty Kindell, Roman Walker, Marcus Brown, Brandon Arrington, Ryan DeSombre, Steven Anzalone, Peter Casper, Jacqueline Muellerleile, John Williams, Michael Rosenthal, Angelina Schiedel, Ladee Samuel, Austin Schlenker, Fabian Acevedo, Nadia Dabul, Jeffrey Hahn, Jr., Sebrina Hill, Ryan Ardito, Andrew Kennedy, Patricia Burrola, Payton Herbert, Elizabeth Steele, Jermaine Childs, Mark Harper, Joseph Duzy, Troy Reible, Jacqueline Ward, Michael DeLorenzo, Paolla Silveira, Chad Coble, Crystal Jenkins, Antonio Jackson, and Cathryn Secor, individually and on behalf of all similarly situated Arizona, Connecticut, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Ohio, Rhode Island, and Virginia residents who purchased one or more cannabis products in Arizona, Connecticut, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Ohio, Rhode Island, and Virginia within the applicable statute of limitations period manufactured, distributed, sold, or offered for sale by Cresco Labs Inc. ("Cresco Labs"), Green Thumb Industries Inc. ("Green Thumb"), Verano Holdings Corp. ("Verano Holdings"), and Verano Holdings, LLC ("Verano LLC"), by and through their attorneys allege the following facts and claims upon personal knowledge, investigation of counsel, and/or information and belief.

## I.     INTRODUCTION

1.      Cannabis purveyors market and promote their cannabis products to an unsuspecting public through a public relations megaphone as the antidote to ailments of all kinds, including, among others, insomnia, narcolepsy, over-eating, cancer, auto-immune disorders, neuropathy, pain, anger, boredom, sadness, shyness, irritable bowel syndrome, grief, and opioid addiction.  These claims are part of a calculated strategy in which the cannabis industry, including Defendants Cresco Labs, Green

Thumb, Verano Holdings, and Verano LLC, have unleashed an acute intoxicant—tetrahydrocannabinol ("THC")—at unprecedently high concentrations on its customers.

2.      But Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC have known at all relevant times that their cannabis products have not been approved as a treatment for a single medical disorder by the Food and Drug Administration ("FDA") and that no credible scientific research has established that cannabis is safe and effective in treating mental health or other health disorders in the manner they claim.  A 2025 narrative review and meta-analysis published in the Journal of the American Medical Association of 124 recent randomized controlled trials found that the evidence that cannabis "treats" disorders such as pain, anxiety, post-traumatic stress disorder ("PTSD"), insomnia, and most other hyped uses is weak or non-existent.  The position of the American Psychiatric Association ("APA") as of December of 2025 is that "[t]here is insufficient evidence that cannabis is an effective treatment for any psychiatric disorder."

3.      In fact, contrary to Cresco Labs, Green Thumb Verano Holdings, and Verano LLC's public claims about the purported health benefits of their products, and as they knew or should have known, medical research demonstrates that the use of cannabis causes and exacerbates the development of schizophrenia, psychosis,[1] bipolar disorder, suicidal ideation, depression, and anxiety,[2] and other serious health disorders, including adverse cardiovascular events, cannabis hyperemesis syndrome, and cannabis use disorder; it also poses significant risks to fetuses and children from prenatal exposure.  Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC

---

[1] These would include, but not be limited to, disorders as described in sections 297.1, 295.40, 295.70, 295.90, 298.8, and 298.9 of the *Diagnostic and Statistical Manual of Mental Health Disorders*. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th ed. 2013) [hereinafter DSM-5].

[2] These would include disorders as described in sections 296.20-26, 296.30-36, 296.40-46, 296.50-57, 296.89, 300.00, 300.01, 300.02, 300.09, 300.23, and 300.4 of the DSM-5. *Id*.

2

also knew or should have known that cannabis was not a safe or effective medicine or therapy for mental health disorders or many other medical conditions identified by Defendants but in fact makes symptoms worse, as shown by a large body of credible scientific research.

4. Despite their actual and constructive knowledge, Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC failed to adequately warn their customers of the long-term, devastating mental and physical health risks of their products. Quite the opposite. In their enterprise to profoundly expand the cannabis market and realize extravagant profits, Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC deceptively marketed cannabis as medicine capable of alleviating or treating the very mental health disorders Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC knew or should have known were caused or exacerbated by the use of their products, including bipolar disorder, depression, anxiety, PTSD, and/or other medical disorders.

5. This deceptive marketing stands in stark contrast to the mounting empirical evidence demonstrating the serious mental health risks associated with increased use of cannabis. Cannabis use has significantly increased across all age groups and categories in every state where recreational use has been legalized. A 2025 study found that states that legalized recreational marijuana with open dispensaries experienced a 12% increase in the number of people admitted to state mental health facilities for schizophrenia and other psychotic disorders.

6. Tracking national trends, persons with mental illnesses have the highest rates of frequent cannabis use.

7. Amid this tragedy and human misery, the cannabis industry grows ever richer. In 2024, total cannabis sales exceeded $30 billion and generated $4.4 billion in tax revenues.

3

8.     This class action lawsuit seeks to hold Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC responsible for promoting their cannabis products to recreational users as safe and appropriate for widespread use despite scientific evidence to the contrary.  The truth, as will be established in a court of law through scientific presentation of evidence, is that:

    a.   Cannabis is not the medicine as Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC claim that it is, least of all medicine for mental health disorders; and

    b.   Cannabis is and has always been a dangerous drug that requires sufficiently clear and adequate warnings for informed use.

9.     This suit seeks damages and injunctive relief on behalf of the Plaintiffs and class members as described below, including as follows:

    a.   Damages for consumers who purchased cannabis products from a recreational or adult-use dispensary, market, shop, store, online or other retail platform but overpaid due to, or were misled into purchasing cannabis by, Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC's deceptions, including their material omissions.

    b.   An order prohibiting Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC from making any further misrepresentations or omissions regarding the medicinal, health, or therapeutic benefits of marijuana sold through a recreational or adult-use dispensary, market, shop, store, online or other retail platform in those states where applicable.

    c.   An order requiring Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC to adequately warn consumers who purchase their products from a recreational or adult-use dispensary, market, shop, store, online or other retail platform, in those states

where applicable, of their cannabis products' dangers, especially the dangers to users'

mental and physical health.

10.     This complaint does not seek relief for purchases of cannabis pursuant to a physician's

prescription or order.

## II.     <u>PARTIES</u>

11.     Plaintiff Wesley Smith, Sr. is a citizen of the United States and domiciled in Arizona.

During the applicable limitations period, Plaintiff purchased a Cresco product under the brand

FloraCal in Arizona.[3]  Plaintiff paid money for the product and suffered economic injury as a direct

and proximate result of Cresco's unlawful conduct.  Plaintiff reviewed the packaging and/or

labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is

associated with, causes, and exacerbates serious medical conditions.  Plaintiff discovered that

Cresco had breached its warranties regarding its cannabis product in or about February, 2026.

Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or

about March 11, 2026 by FedEx.  Plaintiff brings this action on behalf of himself, the Cresco Multi-

State Class, and the Cresco Arizona Subclass.

12.     Plaintiff Douglas Ward is a citizen of the United States and domiciled in Arizona.

During the applicable limitations period, Plaintiff purchased a Cresco product under the brand JAMS

in Arizona. Plaintiff paid money for the product and suffered economic injury as a direct and

proximate result of Cresco's unlawful conduct.  Plaintiff reviewed the packaging and/or labeling on

the cannabis product, which contained inadequate warnings that the use of cannabis is associated

with, causes, and exacerbates serious medical conditions.  Plaintiff discovered that Cresco had

---

[3] Cresco throughout this Complaint collectively refers to Cresco Labs and its subsidiaries, affiliates, and related entities identified in this Complaint that operate under Cresco Labs' control, direction, branding, labeling, quality control, and business and promotional strategy.

breached its warranties regarding its cannabis products in or about February, 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco Arizona Subclass.

13. Plaintiff Russell Kemp is a citizen of the United States and domiciled in Massachusetts. During the applicable limitations period, Plaintiff purchased a Cresco product under the brand High Supply in Massachusetts. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Cresco's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco Massachusetts Subclass.

14. Plaintiff Jacob Medoff is a citizen of the United States and domiciled in Massachusetts. During the applicable limitations period, Plaintiff purchased a Cresco product under the brand High Supply in Massachusetts. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Cresco's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March

11, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco Massachusetts Subclass.

15. Plaintiff Mirza Baig is a citizen of the United States and domiciled in Michigan. During the applicable limitations period, Plaintiff purchased a Cresco product under the brand FloraCal in Michigan. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Cresco's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco Michigan Subclass.

16. Plaintiff Toni Coleman is a citizen of the United States and domiciled in Michigan. During the applicable limitations period, Plaintiff purchased a Cresco product under the brand Cresco in Michigan. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Cresco's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco Michigan Subclass.

17.     Plaintiff David Levy is a citizen of the United States and domiciled in New York. During the applicable limitations period, Plaintiff purchased a Cresco product under the brand Wonder Wellness in New York.  Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Cresco's unlawful conduct.  Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions.  Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx.  Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco New York Subclass.

18.     Plaintiff Michael Murray is a citizen of the United States and domiciled in New York. During the applicable limitations period, Plaintiff purchased a Cresco product under the brand Wonder Wellness in New York.  Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Cresco's unlawful conduct.  Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions.  Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx.  Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco New York Subclass.

19.     Plaintiff Marty Kindell is a citizen of the United States and domiciled in Ohio.  During the applicable limitations period, Plaintiff purchased a Cresco product under the brand Cresco in Ohio.  Plaintiff paid money for the product and suffered economic injury as a direct and proximate

8

result of Cresco's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco Ohio Subclass.

20. Plaintiff Roman Walker is a citizen of the United States and domiciled in Ohio. During the applicable limitations period, Plaintiff purchased a Cresco product under the brand Cresco in Ohio. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Cresco's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Cresco had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Cresco Labs of the claimed breaches of warranties on or about March 11, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Cresco Multi-State Class, and the Cresco Ohio Subclass.

21. Plaintiff Marcus Brown is a citizen of the United States and domiciled in Connecticut. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Good Green in Connecticut.[4] Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached

---

[4] GTI throughout this Complaint collectively refers to Green Thumb and its subsidiaries, affiliates, and related entities identified in this Complaint that operate under Green Thumb's control, direction, branding, labeling, quality control, and business and promotional strategy.

its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Connecticut Subclass.

22. Plaintiff Brandon Arrington is a citizen of the United States and domiciled in Maryland. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rhythm in Maryland. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Maryland Subclass.

23. Plaintiff Steven Anzalone is a citizen of the United States and domiciled in Massachusetts. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Good Green in Massachusetts. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March

12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Massachusetts Subclass.

24. Plaintiff Peter Casper is a citizen of the United States and domiciled in Massachusetts. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rhythm in Massachusetts. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February, 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Massachusetts Subclass.

25. Plaintiff Jacqueline Muellerleile is a citizen of the United States and domiciled in Minnesota. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Dogwalkers in Minnesota. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Minnesota Subclass.

11

26.     Plaintiff John Williams is a citizen of the United States and domiciled in Minnesota. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rhythm in Minnesota.  Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions.  Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026.  Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx.  Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Minnesota Subclass.

27.     Plaintiff Michael Rosenthal is a citizen of the United States and domiciled in Nevada. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rise in Nevada. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct.  Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions.  Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Nevada Subclass.

28.     Plaintiff Angelina Schiedel is a citizen of the United States and domiciled in Nevada. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Dogwalkers in Nevada.  Plaintiff paid money for the product and suffered economic injury as a direct

12

and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Nevada Subclass.

29. Plaintiff Ladee Samuel is a citizen of the United States and domiciled in New Jersey. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rise in New Jersey. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI New Jersey Subclass.

30. Plaintiff Austin Schlenker is a citizen of the United States and domiciled in New Jersey. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rhythm in New Jersey. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached

its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI New Jersey Subclass.

31.     Plaintiff Fabian Acevedo is a citizen of the United States and domiciled in New York. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Dogwalkers in New York. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI New York Subclass.

32.     Plaintiff Nadia Dabul is a citizen of the United States and domiciled in New York. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rise in New York. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by

14

FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI New York Subclass.

33. Plaintiff Jeffrey Hahn, Jr. is a citizen of the United States and domiciled in Ohio. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Dogwalkers in Ohio. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Ohio Subclass.

34. Plaintiff Sebrina Hill is a citizen of the United States and domiciled in Ohio. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Dogwalkers in Ohio. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Ohio Subclass.

35. Plaintiff Ryan Ardito is a citizen of the United States and domiciled in Rhode Island. During the applicable limitations period, Plaintiff purchased a GTI product under the brand

15

Dogwalkers in Rhode Island. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Rhode Island Subclass.

36. Plaintiff Andrew Kennedy is a citizen of the United States and domiciled in Rhode Island. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Rise in Rhode Island. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Rhode Island Subclass.

37. Plaintiff Patricia Burrola is a citizen of the United States and domiciled in Virginia. During the applicable limitations period, Plaintiff purchased a GTI product under the brand Good Green in Virginia. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with,

16

causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Virginia Subclass.

38. Plaintiff Jermaine Childs is a citizen of the United States and domiciled in Virginia. During the applicable limitations period, Plaintiff purchased GTI products under the brands Good Green and Rise in Virginia. Plaintiff paid money for the products and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis products, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February, 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March 12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Virginia Subclass.

39. Plaintiff Antonio Jackson is a citizen of the United States and domiciled in Maryland. During the applicable limitations period, Plaintiff purchased GTI products under the brand Dogwalkers in Maryland. Plaintiff paid money for the products and suffered economic injury as a direct and proximate result of GTI's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis products, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that GTI had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Green Thumb of the claimed breaches of warranties on or about March

12, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the GTI Multi-State Class, and the GTI Maryland Subclass.

40. Plaintiff Payton Herbert is a citizen of the United States and domiciled in Arizona. During the applicable limitations period, Plaintiff purchased a Verano product under the brand BITS in Arizona.[5] Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Arizona Subclass.

41. Plaintiff Elizabeth Steele is a citizen of the United States and domiciled in Arizona. During the applicable limitations period, Plaintiff purchased a Verano product under the brand BITS in Arizona. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of

---

[5] Verano throughout this Complaint collectively refers to Verano Holdings and Verano LLC and their subsidiaries, affiliates, and related entities identified in this Complaint that operate under Verano Holdings and Verano LLC's control, direction, branding, labeling, quality control, and business and promotional strategy.

warranties on or about March 13, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Arizona Subclass.

42. Plaintiff Crystal Jenkins is a citizen of the United States and domiciled in Maryland. During the applicable limitations period, Plaintiff purchased Verano products under the Encore Edibles, Verano, and Zen Leaf brands in Maryland. Plaintiff paid money for the products and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis products, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through her counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about April 15, 2026 by FedEx. Plaintiff brings this action on behalf of herself, the Verano Multi-State Class, and the Verano Maryland Subclass.

43. Plaintiff Ryan DeSombre is a citizen of the United States and domiciled in Maryland. During the applicable limitations period, Plaintiff purchased Verano products under the brands Encore Edibles, Savvy, Essence, Verano, and Zen Leaf in Maryland. Plaintiff paid money for the products and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis products, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about April 15, 2026 by FedEx.

19

Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Maryland Subclass.

44.    Plaintiff Mark Harper is a citizen of the United States and domiciled in Massachusetts. During the applicable limitations period, Plaintiff purchased a Verano product under the brand Cabbage Club in Massachusetts.  Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct.  Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions.  Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx.  Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Massachusetts Subclass.

45.    Plaintiff Joseph Duzy is a citizen of the United States and domiciled in Michigan. During the applicable limitations period, Plaintiff purchased a Verano product under the brand Essence in Michigan.  Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct.  Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026.  Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx.  Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Michigan Subclass.

46. Plaintiff Troy Reible is a citizen of the United States and domiciled in Michigan. During the applicable limitations period, Plaintiff purchased a Verano product under the brand On the Rocks in Michigan. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Michigan Subclass.

47. Plaintiff Willobe Williams is a citizen of the United States and domiciled in Michigan. During the applicable limitations period, Plaintiff purchased a Verano product under the brand BITS in Michigan. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Michigan Subclass.

48. Plaintiff Jacqueline Ward is a citizen of the United States and domiciled in Nevada. During the applicable limitations period, Plaintiff purchased a Verano product under the brand Essence in Nevada. Plaintiff paid money for the product and suffered economic injury as a direct

and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Nevada Subclass.

49. Plaintiff Michael DeLorenzo is a citizen of the United States and domiciled in New Jersey. During the applicable limitations period, Plaintiff purchased a Verano product under the brand Verano in New Jersey. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano New Jersey Subclass.

50. Plaintiff Paolla Silveira is a citizen of the United States and domiciled in New Jersey. During the applicable limitations period, Plaintiff purchased a Verano product under the brand Cabbage Club in New Jersey. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano

had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx. Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the New Jersey Subclass.

51. Plaintiff Chad Coble is a citizen of the United States and domiciled in Ohio. During the applicable limitations period, Plaintiff purchased a Verano product under the brand Zen Leaf in Ohio. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of warranties on or about March 13, 2026 by FedEx   Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Ohio Subclass.

52. Plaintiff Cathryn Secor is a citizen of the United States and domiciled in Ohio. During the applicable limitations period, Plaintiff purchased a Verano product under the brand Cabbage Club in Ohio. Plaintiff paid money for the product and suffered economic injury as a direct and proximate result of Verano's unlawful conduct. Plaintiff reviewed the packaging and/or labeling on the cannabis product, which contained inadequate warnings that the use of cannabis is associated with, causes, and exacerbates serious medical conditions. Plaintiff discovered that Verano had breached its warranties regarding its cannabis products in or about February 2026. Plaintiff sent notice through his counsel to Verano Holdings and Verano LLC of the claimed breaches of

23

warranties on or about March 13, 2026 by FedEx.  Plaintiff brings this action on behalf of himself, the Verano Multi-State Class, and the Verano Ohio Subclass.

53. Defendant Cresco Labs Inc. is a corporation organized under the laws of British Columbia, Canada, with its principal place of business located at 600 W. Fulton St. Suite 800 in Chicago, Illinois. Cresco Labs is a vertically integrated cannabis operator engaged in the cultivation, processing, distribution, and retail sale of cannabis and cannabis-derived products in multiple U.S. markets under brands including Cresco, High Supply, Mindy's, Good News, Remedi, FloraCal, Sunnyside, and Wonder Wellness Co. Cresco does business under the trade name and brand "Sunnyside" and controls through ownership, operation, or otherwise retail dispensaries known to consumers as "Sunnyside Dispensary."  Cresco Labs conducts its business through various wholly-owned and controlled subsidiaries engaged in cannabis-related operations: Cresco U.S. Corp., an Illinois corporation; Cresco Labs, LLC, an Illinois limited liability company; Cresco Edibles, LLC, an Illinois limited liability company; Cannabis Cures Investment, LLC, a Florida limited liability company; Cannroy Delaware, Inc., a Delaware corporation; High Road Holdings LLC, a Delaware limited liability company; SPS Management, LLC, a Delaware limited liability company; Altus Global, LLC, a Delaware limited liability company; Altus, LLC, a Delaware limited liability company; GoodNews Holdings, LLC, an Illinois limited liability company; Wonder Holdings, LLC, an Illinois limited liability company; JDRC Seed, LLC, an Illinois limited liability company; Arizona Facilities Supply, LLC, an Arizona limited liability company; Cresco Labs of Maryland, LLC, a Maryland limited liability company; Cresco HHH, LLC, a Massachusetts limited liability company; CMA Holdings, LLC, an Illinois limited liability company; Cultivate Licensing LLC, a Massachusetts limited liability company; Cresco Labs Michigan, LLC, a Michigan limited liability company; Cresco Labs Michigan Management, LLC, a Michigan limited liability company; Cresco

24

Labs New York, LLC, a New York limited liability company; Cresco Labs Nevada L.L.C., a Nevada limited liability company, Cresco Labs Ohio, LLC, an Ohio limited liability company. Cresco Labs controls and directs a company-wide branding, labeling, quality control, and business and promotional strategy through each of the foregoing wholly-owned subsidiaries that are engaged in activities forming part of Cresco Labs' vertically integrated cannabis business.

54. Cresco Labs controls company-wide cannabis production, policies, marketing, branding, quality control, and business strategy. Cresco Labs, through its employees and/or agents, manages, directs, conducts and controls operations relating to its subsidiaries' participation in the process by which cannabis products are produced, branded, marketed and sold to consumers. Cresco Labs also controls company-wide decisions on production, branding, marketing, and sales of cannabis products. Cresco Labs' management, direction, conduct and control is exercised through a variety of means, including through its employees' and/or agents' implementation of policies, procedures, and programs relating to its cannabis products and to marketing, branding, and sales of such products specifically. Cresco Labs states on its website that "Cresco Labs is one of the largest publicly traded, vertically integrated, multistate cannabis companies in the U.S.," that it "produce[s] the industry's #1 portfolio of cannabis brands and operate[s] dispensaries under [its] Sunnyside brand nationally that focus on delivering consumer education, trust and convenience," and that "Our goal is simple: to provide you with information on cannabis in a very straightforward and intuitive way." Cresco Labs states in its Form 40-F for 2025 filed with the U.S. Securities and Exchange Commission ("SEC") that "Cresco will . . . cement itself as the most important multi-state operator within the cannabis industry" by, among other things, "[c]omplement[ing] its leading wholesale positions with tactical expansion of its retail footprint" and "[b]uild[ing] the best portfolio of brands within the cannabis industry." Cresco Labs further states that "Cresco has invested significant resources towards

25

developing recognizable and unique brands" and that "Cresco owns or operates numerous website domains (including but not limited to www.crescolabs.com, www.chooseremedi.com, www.crescocannabis.com, www.highsupplyofficial.com, www.mindysedibles.com, and www.sunnyside.shop), numerous social media accounts across all major platforms and various phone and web application platforms." Cresco Labs also states that it "uses quality control processes and procedures to ensure its consumer-packaged goods meet its standards" and that it "has detailed procedures in place for testing finished products." Cresco Labs has identified as a "principal milestone[]"to "implement marketing plans" in "Cresco's new markets, including retail stores for recreational and medical cannabis" in 2026 to accomplish its business objectives. Cresco Labs also states that it must have "sufficient resources to maintain research and development, marketing, sales, and support efforts" in order to remain competitive in the cannabis industry.

55. As a result of its management, direction, conduct and control of operations relating to company-wide cannabis production, policies, marketing, branding, quality control, and business strategy, Defendant Cresco Labs is responsible for its subsidiaries' past and current production, branding, marketing, and sales of cannabis products.

56. Defendant Green Thumb Industries Inc. is a corporation organized under the laws of the Province of British Columbia, Canada, with its principal place of business located at 325 West Huron Street Suite 700 in Chicago, Illinois. Green Thumb is a vertically integrated cannabis operator engaged in cultivation, processing, distribution, and retail sales of cannabis and cannabis-derived products across multiple U.S. markets under brands including Rise, Rythm, Dogwalkers, and Good Green. Green Thumb does business under the trade name and brand "RISE" and controls through ownership, operation, or otherwise retail dispensaries known to consumers as "RISE Dispensary." Green Thumb conducts its business through the following wholly-owned and controlled subsidiaries,

26

each of which is engaged in cannabis-related operations: GTI23, Inc., a Delaware corporation; VCP23, LLC, a Delaware limited liability company; For Success Holdings Company, a Delaware corporation; TWD18, LLC, a Delaware limited liability company; RHYTHM, Inc., a Nevada corporation; GTI Core, LLC, a Delaware limited liability company; Vision Management Services, LLC, a Delaware limited liability company; RISE Holdings, Inc., a Massachusetts corporation; Advanced Grow Labs, L.L.C., a Connecticut limited liability company; Bluepoint Apothecary, LLC, a Connecticut limited liability company; GTI-Clinic Illinois Holdings, LLC, an Illinois limited liability company; GTI Maryland, LLC, a Maryland limited liability company; Leafline Industries, LLC, a Minnesota limited liability company; GTI Nevada, LLC, a Nevada limited liability company; GTI New Jersey, LLC a New Jersey limited liability company; Fiorello Pharmaceuticals, Inc., a New York corporation; GTI Ohio, LLC, an Ohio limited liability company; GTI Rhode Island, LLC, a Rhode Island limited liability company; GreenStar Herbals, Inc., a Massachusetts corporation; KSGNF, LLC, a Florida limited liability company; Dharma Pharmaceuticals, LLC, a Virginia limited liability company; GTI Virginia, LLC, a Virginia limited liability company; GTI Florida, LLC, a Florida limited liability company. Green Thumb controls and directs a company-wide branding, labeling, quality control, and business and promotional strategy through each of the foregoing wholly-owned subsidiaries that are engaged in activities forming part of Green Thumb's vertically integrated cannabis business.

57. Green Thumb controls company-wide cannabis production, policies, marketing, branding, quality control, and business strategy. Green Thumb, through its employees and/or agents, manages, directs, conducts and controls operations relating to its subsidiaries' participation in the process by which cannabis products are produced, branded, marketed and sold to consumers. Green Thumb also controls company-wide decisions on production, branding, marketing, and sales of

27

cannabis products. Green Thumb's management, direction, conduct and control is exercised through a variety of means, including through its employees' and/or agents' implementation of policies, procedures, and programs relating to its cannabis products and to marketing, branding, and sales of such products specifically. Green Thumb states in its 2025 10-K filed with the SEC that "Green Thumb's core business is manufacturing, distributing and marketing a portfolio of cannabis consumer packaged goods brands" and that "We aim to maintain strict brand and quality assurance standards and have implemented standard operating procedures across all production facilities to ensure continuity of product and consistent consumer experience across all operating markets." Green Thumb further states in its 2025 10-K that "We believe that brand protection is critical to our business strategy" and that "our success depends upon . . .areas of our business such as product development and design, production and marketing." It further states that "[t]o remain competitive, the Company will require a continued high level of investment in research and development, marketing, sales and customer support." In a March 2026 presentation to investors, Green Thumb stated that its mission is to "promote well-being through the power of cannabis."

58. As a result of its management, direction, conduct and control of operations relating to company-wide cannabis production, policies, marketing, branding, quality control, and business strategy, Defendant Green Thumb is responsible for its subsidiaries' past and current production, branding, marketing, and sales of cannabis products.

59. Defendant Verano Holdings Corp. is a corporation organized under the laws of Nevada, United States, with its principal place of business located at 224 W. Hill Street, Suite 400 in Chicago, Illinois. Defendant Verano Holdings, LLC is a limited liability company organized under the laws of Delaware, United States, with its principal place of business located at 224 W. Hill Street, Suite 400 in Chicago, Illinois. Verano LLC is the primary subsidiary of Verano Holdings and Verano

28

LLC is the direct parent of all of Verano's operating subsidiaries. Verano Holdings and Verano LLC are vertically integrated cannabis operators focused on limited-license markets in the United States, engaged in cultivation, processing, distribution, and retail sales of cannabis and cannabis-derived products under brands including Cabbage Club, (the) Essence, Savvy, BITS, Encore Edibles, Verano, On the Rocks, Holy Union, Avexia, Zen Leaf, and MÜV. Verano Holdings does business under the trade name and brand "Zen Leaf" and Verano Holdings and Verano LLC control through ownership, operation, or otherwise retail dispensaries known to consumers as "Zen Leaf Dispensary." Verano Holdings and Verano LLC operate regulated cannabis businesses through wholly-owned subsidiaries in many states. Verano Holdings and Verano LLC conduct their business through various wholly owned and controlled subsidiaries engaged in cannabis-related operations including: Verano Holdings USA Corp., a Delaware corporation; Verano Holdings, LLC, a Delaware limited liability company; 203 Organix, LLC, an Arizona limited liability company; ; 415 Camden, LLC, a New Jersey limited liability company; 420 Capital Management, LLC, an Illinois limited liability company; ; AGG Wellness, LLC, a Maryland limited liability company; Ataraxia, LLC, an Illinois limited liability company; Aurora Financial Holdings, LLC, a Delaware limited liability company; AZGM 3, LLC, an Arizona limited liability company; Buchanan Development, LLC, a Michigan limited liability company; Caring Nature EJV2, LLC, a Delaware limited liability company; Caring Nature, LLC, a Connecticut limited liability company; Columbia Care Eastern Virginia, LLC, a Virginia limited liability company; Connecticut Pharmaceutical Solutions, LLC, a Connecticut limited liability company; CTPharma Newington, LLC, a Delaware limited liability company; CTPharma Norwich, LLC, a Delaware limited liability company; Elevele LLC, an Illinois limited liability company; FGM Processing, LLC, a Maryland limited liability company; Fort Consulting, LLC, an Arizona limited liability company; Four Daughters Compassionate Care, Inc., a

29

Massachusetts limited liability company; Freestate Wellness, LLC, a Maryland limited liability company; Glass City Alternatives, LLC, an Ohio limited liability company; Green RX, LLC, an Ohio limited liability company; Healthway Services of West Illinois, LLC, an Illinois limited liability company; Lone Mountain Partners, LLC, a Nevada limited liability company; Mad River Remedies, LLC, an Ohio limited liability company; Maryland Natural Treatment Solutions, LLC, a Maryland limited liability company; Mikran, LLC, a Maryland limited liability company; MME Aurora Retail, LLC, an Illinois limited liability company; MME Evanston Retail, LLC, an Illinois limited liability company; Mother Grows Best, LLC, an Ohio limited liability company; NatureX, LLC, a Nevada limited liability company; Nuuvn Holdings, LLC, a Delaware limited liability company; Ohio Natural Treatment Solutions, LLC, a Delaware limited liability company; Patient Alternative Relief Center, LLC, an Arizona limited liability company; Perpetual HealthCare, LLC, an Arizona limited liability company; RedMed, LLC, a Delaware limited liability company; ; SG1 LLC, a Delaware limited liability company; Salubrious Wellness Clinic, Inc, an Arizona corporation; ; Sterling Horizon Capital, LLC, a Delaware limited liability company; The Herbal Care Center, Inc., an Illinois corporation; The Medicine Room, LLC, an Arizona limited liability company; Vending Logistics, LLC, an Arizona limited liability company; Verano Arizona, LLC, an Arizona limited liability company; Verano Connecticut, LLC, a Delaware limited liability company; Verano El Dorado, LLC, an Arkansas limited liability company; Verano Four Daughters Holdings, LLC, a Delaware limited liability company; Verano Illinois, LLC, an Illinois limited liability company; Verano Maryland, LLC, a Delaware limited liability company; Verano Michigan, LLC, a Delaware limited liability company; Verano Nevada, LLC, a Nevada limited liability company; Verano NJ Holdings, LLC, a Delaware limited liability company; Verano NJ, LLC, a New Jersey limited liability company; Verano Ohio, LLC, a Delaware limited liability company; West Capital, LLC, an Illinois limited

30

liability company; Willow Brook Enfield, LLC, a Delaware limited liability company; Willow Brook Stratford, LLC, a Delaware limited liability company; Willow Brook Wellness, LLC, a Connecticut limited liability company; WSCC, Inc., a Nevada corporation; Zen Leaf Mount Holly, LLC, a Delaware limited liability company; Zen Leaf Retail, LLC, a Maryland limited liability company; Zen Leaf Technologies, LLC, a Delaware limited liability company; ZNN Holdings, LLC, a Delaware limited liability company. Verano Holdings and Verano LLC control and direct a company-wide branding, labeling, quality control, and business and promotional strategy through each of the foregoing wholly-owned subsidiaries that are engaged in activities forming part of Verano Holdings and Verano LLC's vertically integrated cannabis business.

60. Verano Holdings and Verano LLC control company-wide cannabis production, policies, marketing, branding, quality control, and business strategy. Verano Holdings and Verano LLC, through their employees and/or agents, manage, direct, conduct and control operations relating to their subsidiaries' participation in the process by which cannabis products are produced, branded, marketed and sold to consumers. Verano Holdings and Verano LLC also exercise control over company-wide decisions on production, branding, marketing, and sales of cannabis products. Verano Holdings and Verano LLC's management, direction, conduct and control is exercised through a variety of means, including through their employees' and/or agents' implementation of policies, procedures, and programs relating to their cannabis products and to marketing, branding, and sales of such products specifically. Verano Holdings states in its 2025 10-K filed with the SEC that "[w]e produce a wide variety of cannabis products sold under our portfolio of consumer brands." Verano Holdings further states: "Our strategy is to vertically integrate as a single cohesive company in multiple states through the consolidation of seed-to-sale cultivating, manufacturing, distributing, and dispensing cannabis brands and products at scale. Our cultivation, processing and distribution of

31

cannabis consumer packaged goods are designed to support our retail dispensaries, as well as to develop and foster long term wholesale supply relationships with third-party retail operators." It continues in the 2025 10-K: "We also design, build and operate branded dispensaries operating under the Zen Leaf™ and MÜV™ retail banners, among others, that deliver a cannabis shopping experience in both medical and adult use markets." Verano Holdings further states in the 10-K that its "business objectives" include its "business plan [that] centers around four foundational pillars: cultivation, production, brand development and retail," that the "Company strives to operate and manage the entire vertical cannabis operation and supply chain from seed-to-sale," the "Company emphasizes developing high-quality products at various price points to elevate its products' market desirability and value," and that the "Company aims to adhere to standard operating procedures across all of its cultivation and processing facilities, producing state-permitted products and implementing compliance programs to meet product testing, inventory controls and other state regulatory requirements." Verano Holdings states that an objective of its compliance program is to: "Conduct reviews of products and product packaging to ensure that the products and packaging comply with applicable regulations and contain necessary disclaimers about the contents of the products to prevent adverse public health consequences from cannabis use and prevent violations related to motor vehicle, labor and other laws applicable to individuals."

61. As a result of their management, direction, conduct and control of operations relating to company-wide cannabis production, policies, marketing, branding, quality control, and business strategy, Verano Holdings and Verano LLC are responsible for their subsidiaries' past and current production, branding, marketing, and sales of cannabis products.

32

### III.  JURISDICTION AND VENUE

62.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

63.     This Court has personal jurisdiction over Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC because they each have their principal place of business in Illinois, thus making them subject to the general jurisdiction of this Court.  Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC also maintain continuous and systematic contacts with Illinois through, among other things, their marketing, distribution, and sale of cannabis products and have purposefully availed themselves of the privilege of conducting business in Illinois.

64.     Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC have further subjected themselves to personal jurisdiction in every state in which they operate by materially participating in conduct that caused intended and foreseeable effects on Plaintiffs and the putative class members residing in those states.  Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC marketed, sold, and distributed their cannabis products through a nationwide network of dispensaries and retail outlets, and Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC knew or should have known that their conduct would reach and injure consumers across multiple jurisdictions.

65.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).  Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC reside in this District within the meaning of 28 U.S.C. § 1391(c) because each is subject to the Court's personal jurisdiction with respect to the

claims asserted herein. Venue is proper in the Western Division of this District because counsel for Plaintiffs, Franks Gerkin Ponitz & Greeley, maintain their principal offices in this Division, and the interests of judicial economy and convenience of the parties support venue here.

## IV. FACTUAL ALLEGATIONS

### A. Cannabis and Its Uses

66. Cannabis, generally, is the greenish-gray mixture of dried flowers from the *Cannabis sativa* plant. For purposes of this Complaint, "cannabis" is defined as marijuana, hashish, and other substances that are identified as including any parts of the plant *Cannabis sativa* and including derivatives or subspecies and any compound manufacture, salt, derivative, mixture, concentrate or preparation of the plant, its seeds, or resin that contains delta-9-tetrahydrocannabinol ("$\Delta$9-THC") that is not otherwise "hemp" under applicable law. All Defendants' cannabis products are materially identical for purposes of the injuries alleged. Every product manufactured, sold, or offered for sale by Defendants is derived from the cannabis plant and contains the same psychoactive compound, $\Delta$9-THC.

67. The *Cannabis sativa* plant contains 545 constituent compounds, the most prominent of which is the cannabinoid and psychoactive substance *delta-9-trans-tetrahydrocannabinol* ("$\Delta$9-THC"). $\Delta$9-THC exerts its effects on the body's endocannabinoid system, a ubiquitous, endogenous system of neurotransmitters in the human body.

68. The two most important cannabinoid receptors are called CB1 and CB2. CB1 receptors are most abundant in the central nervous system, most notably the basal ganglia, cerebellum, hippocampus, and cerebral cortex portions of the brain. CB2 receptors are generally found in the body's immune cells and tissues.

69. Δ9-THC, by binding to CB1 receptors in the central nervous system, affects executive functioning, decision making, sensory responsiveness, motor function, learning, memory, and emotional reactions. Short-term effects include altered senses and perception, distorted sense of time, mood fluctuations, impaired body movement, disorganized thinking and problem-solving, diminished memory, hallucinations, delusions, and psychosis.

70. Cannabis can be inhaled or digested. The effects and adverse reactions differ based on the method of administration. Inhalation is the fastest method of delivery and is preferred by many consumers.[6] The effect from smoking or vaping is near instantaneous and may last up to four hours, with the peak effects manifesting one hour after inhalation.[7]

71. Cannabis edibles (i.e. Δ9-THC-bearing food) produce a different pharmacokinetic profile than smoking or vaping. The effect onset is delayed by 30 to 60 minutes and the high can last for over six hours and is generally stronger. Edibles are often preferred by those who wish to avoid the caustic effect of smoking or by those seeking to consume without the tell-tale aroma of smoked cannabis. "Dosing" with edibles is much more difficult due to the delayed and varied onset of the

---

[6] Marijuana can also be ingested orally through edibles, tinctures, capsules, concentrates, or oils. Oral ingestion requires the extraction of the desired constituents of cannabis, generally Δ9-THC and CBD. Extraction involves the use of solvents such as ethanol, butane, methanol, or propane that are then distilled leaving Δ9-THC and CBD, usually after further chemical refinement. Modern techniques not involving solvents include ultrasound-assisted extraction, supercritical extraction, and pressurized hot water extraction. Depending on the process used for extraction, different types of concentrates are produced. These include shatter, rosin, BHO, $CO_2$ oil, wax, crumble, and live resin. Other solvent-free extraction methods include manually separating or grinding and sieving to isolate the trichomes, which contain the highest level of Δ9-THC and CBD and is commonly referred to as "kief." Cannabis concentrate can also be smoked or vaporized or "dabbed." Marijuana can also enter the blood stream when placed under the tongue and absorbed by the large blood vessels in the mouth. Common examples of these types of products include dissolvable strips, sublingual sprays, or medicated lozenges or tinctures.

[7] There are two ways to inhale cannabis—smoking or vaporizing/vaping. Smoking involves burning cannabis and inhaling the active components of the plant that are released. *Id.* Vaporization/vaping involves inhaling an aerosol or vapor produced from Δ9-THC-bearing oil or wax or dry cannabis that is heated in an electronic powered device such as an e-cigarette or vape pen.

effects. Consequently, edibles have recently been tied to cannabis "overdoses" following ingestion of additional doses because of the misperception that the initial dose had not produced the desired effect.

72.     Cannabis users tend to use cannabis far more frequently and in higher amounts than drinkers consume alcohol. Nearly 40% of cannabis users consume at least once daily whereas only about 10% of drinkers use alcohol daily. One group of researchers representing Carnegie Mellon University, the RAND Corporation, and New York University explained that "normal marijuana use more closely resembles binge drinking than it does mere drinking."

73.     Cannabis has become a more popular drug since cannabis purveyors including Defendants have begun openly marketing and touting the benefits of their products.

**B.  Federal Cannabis Law**

74.     The U.S. Drug Enforcement Administration (DEA) currently classifies cannabis as a Schedule I controlled substance.[8]  Under federal law, sale and possession of cannabis and all derivatives is illegal.[9]  The production, possession, and distribution of cannabis are felony violations of the Controlled Substances Act (CSA), punishable by fines and imprisonment or both.

75.     On July 19, 2016, the DEA denied a petition to initiate rulemaking proceedings to permit the medicinal use of marijuana through reclassification. The DEA's conclusion was based on the consistent findings that cannabis: (1) "has a high potential for abuse;" (2) "has no currently

---

[8] *Drug Scheduling*, U.S. DRUG ENF'T ADMIN., https://www.dea.gov/drug-scheduling (last visited May 1, 2026). Schedule I drugs are substances or chemicals that are defined as drugs with no currently accepted medical use and high potential for abuse. *Id.* Other Schedule I drugs include heroin, lysergic acid diethylamide (LSD), 3,4-methlenedioxymethamphetamine (ecstasy), methaqualone, and peyote. *Id.* As addressed below, FDA-approved marijuana products and state-licensed medical marijuana products that are not the subject of this complaint have been re-classified to Schedule III.
[9] 21 U.S.C. §§ 801–901. Congress passed the Controlled Substances Act by a bipartisan vote of 341 to 6. To Pass H.R. 18583, Comprehensive Drug Abuse Prevention and Control Act of 1970, GOVTRACK.US, https://www.govtrack.us/congress/votes/91-1970/h355 (last visited May 1, 2026).

36

accepted medical use in treatment in the United States;" and (3) "lacks accepted safety for use under medical supervision."

76. Though illegal, the United States Justice Department generally has a policy to not enforce federal cannabis laws against those possessing and distributing cannabis in accordance with a state's regulatory framework for medicinal or recreational use. The 2013 Cole Memorandum, entitled "Guidance Regarding Marijuana Enforcement," shifted governmental priorities from tough enforcement of federal cannabis law towards a more hands-off approach in those "jurisdictions that have enacted laws legalizing marijuana in some form and that have also implemented strong and effective regulatory and enforcement systems to control the cultivation, distribution, sale and possession of marijuana." The Memorandum further provided:

> [A] robust system may affirmatively address [federal] priorities by, for example, implementing effective measures to prevent diversion of marijuana outside the regulated system and to other states, prohibiting access to marijuana by minors, and replacing an illicit marijuana trade that funds criminal enterprises with a tightly regulated market in which revenues are tracked and accounted for.

77. The Cole Memorandum was later rescinded by Attorney General Jeff Sessions who drafted his own memorandum to all U.S. Attorneys in 2018. In practice, however, very little changed.

78. In 2024, however, the DEA under the Biden Administration initiated rulemaking proceedings to reschedule marijuana from Schedule I of the Controlled Substances Act to Schedule III, which would have permitted its medicinal use. Evidentiary hearings were slated to start on January 21, 2025, but were postponed due to legal challenges concerning participant inclusion. The process remained on hold pending resolution of the procedural appeals.

79. On December 18, 2025, President Trump signed an executive order titled *Increasing Medical Marijuana and Cannabidiol Research*, directing the Attorney General and federal agencies to expedite the longstanding effort to reschedule cannabis from Schedule I to Schedule III under the

Controlled Substances Act. The order explicitly accelerates the rulemaking process by setting strict timelines and requiring agencies to prioritize regulatory review.[10] On April 23, 2026, Acting Attorney General Todd Blanche implemented this directive by immediately moving FDA-approved marijuana products and state-licensed medical marijuana products to Schedule III, while initiating an expedited DEA administrative hearing (beginning June 29, 2026) for broader rescheduling of marijuana. These actions pertain to non-recreational uses of certain marijuana products which are not the subject of this complaint.

### C. State Cannabis Laws

80. The following states have enacted regulations or laws regarding recreational and medical cannabis as described below:

- a. Arizona[11]
  - Smart and Safe Arizona Act, Ariz. Rev. Stat. § 36-2850 *et seq*.
  - Arizona Medical Marijuana Act, Ariz. Rev. Stat. § 36-2801 *et seq.*
  - Ariz. Admin. Code tit. 9, ch. 18 (Department of Health Services—Medical Marijuana Program).
  - Ariz. Admin. Code tit. 9, ch. 17 (Department of Health Services—Adult-Use Marijuana Program).

---

[10] *Id*.

[11] Arizona law requires that marijuana and marijuana products be sold in clearly and conspicuously labeled containers that include warnings regarding their use, including the statement: "ARIZONA DEPARTMENT OF HEALTH SERVICES' WARNING: Marijuana use can be addictive and can impair an individual's ability to drive a motor vehicle or operate heavy machinery. Marijuana smoke contains carcinogens and can lead to an increased risk for cancer, tachycardia, hypertension, heart attack, and lung infection. Marijuana use may affect the health of a pregnant woman and the unborn child. KEEP OUT OF REACH OF CHILDREN." Ariz. Rev. Stat. Ann. § 36-2854 (LexisNexis 2026). Arizona also requires pregnancy-specific warnings accessible via QR code stating: "Using Marijuana during pregnancy could cause birth defects or other health issues to your unborn child." Ariz. Admin. Code § R9-18-314 (2026). Additionally, retail establishments must post signage warning: "WARNING: There may be potential dangers to fetuses caused by smoking or ingesting marijuana while pregnant or to infants while breastfeeding" and "WARNING: Use of marijuana during pregnancy may result in a risk of being reported to the Department of Child Safety during pregnancy or at the birth of the child by persons who are required to report." Ariz. Admin. Code § R9-18-402 (2026).

38

- Ariz. Admin. Code tit. 3, ch. 4, art. 9 (Department of Agriculture—Hemp Program, Cannabis-Related Regulations).

b. Connecticut[12]
- Responsible and Equitable Regulation of Adult-Use Cannabis Act, Conn. Gen. Stat. § 21a-420 *et seq*.
- Palliative Use of Marijuana Act, Conn. Gen. Stat. § 21a-408 *et seq*.
- Conn. Agencies Regs. §§ 21a-408-1 to 21a-408-72 (Department of Consumer Protection—Palliative Use of Marijuana Program Regulations).
- Conn. Agencies Regs. §§ 21a-421j-1 to 21a-421j-99 (Department of Consumer Protection—Adult-Use Cannabis Program Regulations).
- Conn. Agencies Regs. §§ 21a-421jj-1 to 21a-421jj-99 (Department of Consumer Protection—Cannabis Product Safety, Packaging, and Labeling Requirements).

c. Maryland[13]
- Cannabis Reform Act of 2023, Md. Code, Alcoholic Beverages & Cannabis § 36-101 *et seq*.
- Natalie M. LaPrade Medical Cannabis Commission Statute, Md. Code, Health–General § 13-3301 *et seq*.
- COMAR 14.17.01–.18 (Maryland Cannabis Administration—Adult-Use and Medical Cannabis Regulations).

d. Massachusetts[14]

---

[12] Connecticut requires that cannabis product labels include rotating warning statements addressing health risks. Conn. Gen. Stat. Ann. § 21a-420j (LexisNexis 2026). The required warnings include: "Children, or those who are pregnant or breastfeeding, should avoid using such product prior to consulting with a health care professional concerning such product's safety"; "Products containing cannabinoids should be kept out of reach of children"; and "The U.S. Food and Drug Administration has not evaluated this product for safety or efficacy." Conn. Agencies Regs. § 21a-420-25 (2026). Connecticut additionally requires that products intended for inhalation bear the warning: "Smoking or vaporizing is hazardous to human health." *Id*. Further required rotating warnings include: "Warning: Consumption while pregnant or breastfeeding may be harmful"; and "Warning: Cannabis has intoxicating effects and may be habit-forming and addictive." *Id*.

[13] Maryland regulations require cannabis product labels to include multiple health and safety warnings. Md. Code Ann., Alcoholic Beverages & Cannabis § 36-801 (LexisNexis 2026). Required label statements include: "The contents may only be lawfully consumed by a consumer 21 years old or older, or a registered medical cannabis patient"; "Consumption of cannabis may impair your ability to drive a car or operate machinery. Please use extreme caution"; "There may be health risks associated with cannabis use, especially during pregnancy or breastfeeding"; and "This package contains cannabis. Keep out of the reach of children and animals." Md. Code Regs. 14.17.11.07 (2026). Labels must also include the Maryland Poison Center emergency telephone number. *Id*.

[14] Massachusetts requires warning statements on all marijuana products. 935 Mass. Code Regs. 500.105 (2026). The primary warning statement must read: "This product has not been analyzed or

- Regulation of the Use and Distribution of Marijuana Not Medically Prescribed Act, Mass. Gen. Laws ch. 94G, § 1 *et seq*.
- Massachusetts Medical Use of Marijuana Program, Mass. Gen. Laws ch. 94I, § 1 *et seq*.
- 935 Mass. Code Regs. 500.000–500.180 (Cannabis Control Commission—Adult-Use Marijuana).
- 935 Mass. Code Regs. 501.000–501.180 (Cannabis Control Commission—Medical Use of Marijuana).

e. Michigan[15]
- Michigan Regulation and Taxation of Marihuana Act, Mich. Comp. Laws § 333.27951 *et seq*.
- Michigan Medical Marihuana Act, Mich. Comp. Laws § 333.26421 *et seq*.
- Mich. Admin. Code r. 420.1–420.1004 (Cannabis Regulatory Agency—Adult-Use and Medical Marijuana Rules).

f. Nevada[16]
- The Regulation and Taxation of Marijuana Act, Nev. Rev. Stat. § 453D.010 *et*

---

approved by the FDA. There is limited information on the side effects of using this product, and there may be associated health risks. Marijuana use during pregnancy and breast-feeding may pose potential harms. It is against the law to drive or operate machinery when under the influence of this product. KEEP THIS PRODUCT AWAY FROM CHILDREN." *Id*. Labels must also include the general warning: "There may be health risks associated with consumption of this product." *Id.* All warnings must appear in at least ten-point font, and the statement "KEEP OUT OF REACH OF CHILDREN" must be prominently displayed. *Id.*

[15] Michigan law requires cannabis product labels to include specific health and safety warnings. Mich. Comp. Laws Ann. § 333.27959 (LexisNexis 2026). Required warnings include: "It is illegal to drive a motor vehicle while under the influence of marihuana"; "National Poison Control Center 1-800-222-1222"; "For use by individuals 21 years of age or older or registered qualifying patients only. Keep out of reach of children"; and "WARNING: USE BY PREGNANT OR BREASTFEEDING WOMEN, OR BY WOMEN PLANNING TO BECOME PREGNANT, MAY RESULT IN FETAL INJURY, PRETERM BIRTH, LOW BIRTH WEIGHT, OR DEVELOPMENTAL PROBLEMS FOR THE CHILD." Mich. Admin. Code R. 420.206 (2026).

[16] Nevada requires cannabis product labels to include health warnings in at least 12-point font and not in italics. Nev. Admin. Code § 678B.510 (2026). Required warnings include: "Cannabis and cannabis products must be kept out of the reach of children"; "Cannabis and cannabis products can cause severe illness in children"; "Allowing children to ingest cannabis or cannabis products, or storing them in an accessible location, may result in an investigation by a child welfare agency or criminal prosecution for child abuse or neglect"; "THE INTOXICATING EFFECTS OF CANNABIS MAY BE DELAYED BY 2 HOURS OR MORE AND USERS OF CANNABIS PRODUCTS SHOULD INITIALLY INGEST A SMALL AMOUNT OF THE PRODUCT CONTAINING NO MORE THAN 10 MILLIGRAMS OF THC, THEN WAIT AT LEAST 2 HOURS BEFORE INGESTING ANY ADDITIONAL AMOUNT OF THE PRODUCT"; "This product may have intoxicating effects and may be habit forming. Smoking is hazardous to your health" "Ingesting cannabis or cannabis products with alcohol or other drugs, including prescription medication, may result in unpredictable

*seq.*
- Nevada Medical Marijuana Act, Nev. Rev. Stat. § 453A.010 *et seq.*
- Nev. Admin. Code ch. 453A (Medical Marijuana) and ch. 453D (Adult-Use Marijuana) (Cannabis Compliance Board Regulations).

g. New Jersey[17]
- New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J. Stat. Ann. § 24:6I-31 *et seq.*
- Compassionate Use Medical Cannabis Act, N.J. Stat. Ann. § 24:6I-1 *et seq.*
- N.J. Admin. Code tit. 17, ch. 30 (Cannabis Regulatory Commission—Adult-Use and Medical Cannabis Rules).

h. New York[18]
- Marihuana Regulation and Taxation Act, N.Y. Cannabis Law § 1 et seq.
- Compassionate Care Act, N.Y. Pub. Health Law § 3360 *et seq.*
- N.Y. Comp. Codes R. & Regs. tit. 9, subtit. B (Office of Cannabis Management—Adult-Use and Medical Cannabis Regulations).

---

levels of impairment and a person should consult with a physician before doing so"; "There may be health risks associated with consumption of this product"; "Pregnant women should consult with a physician before ingesting cannabis or cannabis products"; "Cannabis or cannabis products can impair concentration, coordination and judgment. Do not operate a vehicle or machinery under the influence of cannabis or cannabis products"; and "Ingestion of any amount of cannabis or cannabis products before driving may result in criminal prosecution for driving under the influence." *Id.*

[17] New Jersey requires cannabis items to bear specific warning statements on labels. N.J. Stat. Ann. § 24:6I-35 (LexisNexis 2026). Required warnings include: "This product contains cannabis"; "This product is intended for use by adults 21 years of age or older and is not intended for resale"; "Keep out of the reach of children"; "There may be health risks associated with cannabis use, especially for women who are pregnant, breastfeeding, or planning on becoming pregnant"; "Do not drive a motor vehicle or operate heavy machinery while using this product"; and "Poison Control: 1-800-222-1222." N.J. Admin. Code § 17:30-14.4 (2026). For high-potency products containing more than 40% THC, an additional warning in at least 10-point font on the front of the package must state: "This is a high potency product and may increase your risk for psychosis." *Id.* For ingestible cannabis products, labels must include the warning: "The intoxicating effects of this product may be delayed by two or more hours." *Id.*

[18] New York law requires cannabis products to bear health warnings addressing potential impacts. N.Y. Cannabis Law § 81 (McKinney 2026). Required statements include: "This product contains cannabis and THC"; "KEEP OUT OF REACH OF CHILDREN AND PETS. For use only by persons 21 years of age and older"; "Warning: Do not use if pregnant or nursing"; and "Poison Center 1-800-222-1222." 9 N.Y.C.R.R. § 128.6 (2026). Products intended to be smoked or vaped must bear the warning: "Warning: Smoking or vaping is hazardous to health." *Id.* Oral cannabis products must include the warning: "Warning: Effects of this product may be delayed by 4 or more hours." *Id.* Topical cannabis products must be labeled: "Warning: For topical use only. Do not eat or smoke." *Id.*

41

i. Ohio[19]
  - Regulate Marijuana Like Alcohol Amendment (2023), Ohio Rev. Code Ann. § 3780.01 *et seq*.
  - Ohio Medical Marijuana Control Program, Ohio Rev. Code Ann. § 3796.01 *et seq*.
  - Ohio Admin. Code chs. 3796:1-1 to 3796:8-4 (Board of Pharmacy, Dept. of Commerce, Medical Board—Medical Marijuana Rules).
  - Ohio Admin. Code chs. 3780:1-1 to 3780:8-4 (Dept. of Commerce—Adult-Use Marijuana Rules).

j. Rhode Island[20]
  - Rhode Island Cannabis Act, R.I. Gen. Laws § 21-28.11-1 *et seq*.
  - Edward O. Hawkins and Thomas C. Slater Medical Marijuana Act, R.I. Gen. Laws § 21-28.6-1 *et seq*.
  - 230-RICR-80-05-1 to 230-RICR-80-05-15 (Dept. of Business Regulation—Cannabis Control Regulations).

k. Virginia[21]

---

[19] Ohio law requires cannabis product labels to include health and safety warnings. Ohio Rev. Code Ann. § 3796.25 (LexisNexis 2026). Required warnings include: "This product may cause impairment and may be habit-forming"; and "This product may be unlawful outside of the State of Ohio." Ohio Admin. Code § 3796:6-3-09 (2026). For edible and infused cannabis products, labels must include the additional warning: "Caution: When eaten or swallowed, the effects and impairment caused by this drug may be delayed." *Id.*

[20] Rhode Island requires cannabis product labels to include health warnings. R.I. Gen. Laws Ann. § 21-28.11-14 (LexisNexis 2026). Required statements include: "This product contains cannabis. Store securely locked away from children"; "It is unlawful to transport this product outside of Rhode Island"; "Cannabis use may impair your ability to operate a motor vehicle or machinery"; and "Consumption while pregnant or breastfeeding may be harmful." 230 R.I. Code R. § 80-5.8 (2026). Products intended to be smoked or vaped must bear the warning: "Smoking and Vaping is hazardous to your health." *Id.* Infused cannabis products must include the warning in bold or larger font: "Effects of this product may be delayed." *Id.* Topical products must be labeled: "For Topical Application – Do Not Eat or Smoke." *Id.*

[21] Virginia law requires cannabis products to bear health and safety warnings that must be approved by the Virginia Cannabis Control Authority. Va. Code Ann. § 4.1-1603.2 (LexisNexis 2026). Required warning themes include statements that products must be kept out of reach of children and pets; that products are not for use by individuals under 21; and that risks exist if children ingest the products, including potential for severe illness or child welfare investigation. 3 Va. Admin. Code § 10-50-90 (2026). Products must include impairment and driving warnings such as: "Consumption of cannabis may impair your ability to drive a car or operate machinery. Please use extreme caution." *Id.* Labels must also include pregnancy and health risk warnings such as: "There may be health risks associated with cannabis use, especially during pregnancy or breastfeeding"; and "Pregnant women should consult with a physician before use." *Id.* Additional required elements include: "This product contains cannabis"; "For use by adults 21 and older only"; "This product may be unlawful outside

42

- Virginia Cannabis Control Act, Va. Code Ann. § 4.1-600 *et seq.*
- Medical Cannabis Program, Va. Code Ann. § 54.1-3408.3.
- 3 Va. Admin. Code §§ 10-50-10 to 10-60-300 (Cannabis Control Authority—Adult-Use and Medical Cannabis Regulations).

## D. Cannabis and Health

### i. Psychosis and Schizophrenia

81. Perhaps the most alarming health risk associated with marijuana use is its causal relationship with mental health disorders such as schizophrenia and psychosis.[22] A relationship that has been verified by dozens of peer-reviewed studies, systematic reviews, and meta-analyses. This association is so strong that the Canadian Government advised in 2018 that "there is strong evidence that using cannabis may increase the risk of an individual developing psychosis and schizophrenia." In 2017, the National Academy of Sciences declared, "[t]here is substantial evidence of a statistical association between cannabis use and the development of schizophrenia or other psychoses, with the highest risk among the most frequent users." Other studies have also linked cannabis use to the development of psychiatric disorders.

82. There is an increasing amount of mental health impacts from cannabis products in states that legalized cannabis for medical and recreational purposes.

83. In Colorado, which legalized recreational cannabis in 2012, emergency room visits and hospitalizations with marijuana-related billing codes increased 116% between 2000 and 2015. The prevalence of mental illness in patients admitted to the hospital generally with a marijuana-related billing code was nine times higher when compared to patients admitted without such billing codes.

---

the Commonwealth of Virginia"; and "This product may cause impairment and may be habit-forming." *Id.*

[22] According to Hill's Postulates, evidence supporting causality includes: (1) strength of association; (2) consistency; (3) specificity of the association; (4) temporality; (5) biological gradient (i.e. dose-response curve); (6) plausibility; (7) coherence; (8) experiment; and (9) analogy.

84.     A 2022 Colorado study found that as recreational dispensaries per 10,000 residents in Colorado increased, the rate of emergency room visits for cannabis-involved complications increased 24%.

85.     A study published in the Canadian Journal of Psychiatry in 2024 found a significant increase in the percentage of emergency room visits for first-episode psychosis in states post-legalization.

86.     A 2025 study in Arizona found that cannabis-related visits to an emergency room were seven times more likely to involve psychotic disorder than cannabis-unrelated visits during the years 2016 through 2022.

87.     The capacity of cannabis to induce short term psychosis is recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM). Therein, a diagnosis of Cannabis-Induced Psychotic Disorder (CIPD) is given when one who has recently ingested cannabis "presents with hallucinations and/or delusions causing clinically significant distress or impairment in social, occupational, or other important areas of functioning." CIPD can be differentiated from cannabis intoxication in that CIPD symptoms are "severe enough to warrant clinical attention and/or treatment, the hallucinations or delusions are experienced without insight, and the symptoms are not time-locked to exposure but rather can last for as long as a month."

88.     CIPD is strongly associated with a subsequent diagnosis of long-term psychosis. A study of 18,478 Finnish patients hospitalized for substance induced psychosis found that nearly half of those admitted for CIPD had been diagnosed with schizophrenia eight years later compared with 5% of those who had been hospitalized for alcohol induced psychosis.

89.     The bedrock study illuminating the profound impact cannabis use has on the development of long-term psychosis is the Swedish conscript study, published in 1987. In that study,

44

researchers examined the effect of drug use on Swedish military conscripts who filled out extensive questionnaires regarding their upbringing, education, and drug use upon conscription in 1969-1970. To examine the effect of cannabis, researchers tracked the hospitalizations and psychiatric inpatient registries for these conscripts in 1983. Of the nearly 45,000 Swedish conscripts considered, researchers found that those who had used cannabis on fifty or more occasions in 1969-1970 had a six times greater risk of having developed schizophrenia by 1983. Importantly, researchers found that the relative risk of schizophrenia was dose dependent, increasing with increased cannabis consumption. Even when statistically controlling for other confounding factors such as prior psychiatric illness, social background, and prior family history of mental illness, researchers found a persistent association with cannabis that more than doubled the risk of developing schizophrenia.[23]

90.     Perhaps the most comprehensive longitudinal study ever conducted, the Dunedin, New Zealand Multidisciplinary Health and Development Study (which is still ongoing), similarly found a conclusive link between cannabis use and subsequent psychosis. The study has been following a group of approximately 1,000 people since their birth sometime in 1972 or 1973. The children were assessed at ages 5, 7, 9, 11, 13, 15, 18, 21, and 26.[24] Researchers found that cannabis use was

---

[23] A follow-up with of the same Swedish cohort in 2002 found that cannabis use remained associated with schizophrenia, the risk increasing with the frequency of cannabis exposure. Researchers found further that those who had consumed cannabis at least 50 times had a 6.7 times greater chance of developing schizophrenia 27 years later. This risk held when the analysis was repeated on a subsample of men who used cannabis only, as opposed to using other drugs as well. The risk was reduced, but remained significant, after controlling for confounders such as disturbed behavior, low IQ, growing up in a city, cigarette smoking, and poor social integration. The adjusted odds ratio for developing schizophrenia in years 0–5 after conscription in subjects who have ever used cannabis was 4.7.

[24] The assessment is a one-day process that consists of "almost all" aspects of the groups physical and mental health, including cardiovascular, dental, respiratory, sexual, and mental health, psychosocial well-being, and detailed interviews about relationships, behavior and family.

45

associated with a threefold risk of developing schizophrenia or schizophreniform disorders even after controlling for psychotic symptoms prior to cannabis use.

91.     Another New Zealand study in 2005 reached similar results. A longitudinal 25-year study of 265 children found that, even after controlling for previous psychotic symptoms, daily users of cannabis had rates of psychosis that were nearly twice that of non-users. Regression models indicated that cannabis use had a "positive and significant" effect on psychotic symptoms suggesting that increasing cannabis use was associated with increased symptom levels. Moreover, after controlling for several confounding factors, including anxiety disorder, deviant peer affiliations, exposure to childhood sexual or physical abuse, educational achievement and, most importantly, psychotic symptoms at a previous assessment, the association remained strong and significant. The authors concluded:

> The findings are clearly consistent with the view that heavy cannabis use may make a causal contribution to the development of psychotic symptoms since they show that, independently of pre-existing psychotic symptoms and a wide range of social and contextual factors, young people who develop cannabis dependence show an elevated rate of psychotic symptoms.

92.     The devastating association goes beyond use during adolescence or young adulthood. A three-year, population-based study from 2022 of the incidence, course, and consequences of psychiatric disorders in over 4,000 randomly selected adult Danes reported that baseline history of cannabis use significantly increased the risk of a "follow-up psychosis outcome" three years later by a factor of nearly three. This risk remained significant after statistical adjustments for a range of factors including ethnic group, marital status, educational level, urbanicity, and discrimination. The authors found a dose-response relationship between schizophrenia and schizophreniform and cannabis use such that for the most frequent cannabis users the risk was nearly seven times higher. The authors concluded that "cannabis use is an independent risk factor for the emergence of psychosis

46

in psychosis free persons and may be responsible for as much as half the serious psychosis in previously healthy adults."

93. Study after study has continued to corroborate with hard evidence the causative association between cannabis use and psychosis.

94. A 2007 systematic review and meta-analysis of population-based and longitudinal studies reported a 40% increased risk of any psychotic outcome in individuals who had ever used cannabis compared with non-users. As with other studies, the more cannabis ingested the greater the risk.

95. An examination of a nationally representative U.S. sample of approximately 34,653 adults derived from a 2001-2002 epidemiologic survey and a 2004-2005 follow-up also found a dose-dependent relationship between the level of cannabis use and psychosis such that cannabis-dependent subjects had the highest risk, four-fold, of developing psychosis.

96. A 2016 meta-analysis of cohort and cross-sectional studies assessing cannabis and psychosis also revealed a four-fold increase in the risk of developing psychosis for the heavier users and a two-fold increase in risk for the average cannabis user.

97. The association persists even among sibling pairs raised in the same households or, in other words, even after controlling for genetics and environment. A 2010 analysis of 228 sibling pairs in Australia, all born at the same hospital between 1981 and 1984 who were evaluated at ages 5, 14, and 21, focused on the difference between the age of first cannabis use and the Peters Delusion Inventory (PDI) [25] score. Compared with their siblings, those with more years since first cannabis use

---

[25] The Peters Delusions Inventory is a 21-item questionnaire that measures delusional ideation and is one of the primary means by which psychosis is determined and measured.

were more likely to have higher PDI total scores with every additional year of divergence between the sibling pairs in terms of onset of cannabis use increasing the variance in PDI scores.

98.     It is not just the frequency or length of cannabis use that increases the risk of psychosis; it is also the potency or Δ9-THC concentration. In a 2015 case-cohort study, daily cannabis use of high potency cannabis containing 16% Δ9-THC or higher was associated with a greater risk of developing psychosis when compared with lower potencies. After controlling for use of other intoxicants, education, gender, and prior employment history, those who used high potency cannabis were three times more likely to develop psychosis when compared to non-users.

99.     A 2019 study published in *The Lancet* examined nearly 1,000 patients presenting with first episode psychosis at 11 sites across Europe and Brazil between 2010 and 2015. The study found that daily cannabis use was associated with 3.2 times increased odds of presenting with a psychotic disorder when compared with never users. For daily users of high potency cannabis, the risk increased to 4.8 times. The study found further that the population attributable fraction of high potency cannabis (in other words, the percentage of psychosis cases that could be prevented if high potency cannabis were no longer available) was 12.2% across the entire sample, rising to 50.3% in Amsterdam and 30.3% in London.

100.     The peer-reviewed medical literature convincingly demonstrates that cannabis increases the risk of causing and/or exacerbating psychosis in those who are already vulnerable to such a diagnosis. A recent systematic review and meta-analysis, which included 24 studies and over 16,000 participants who had suffered at least one psychotic episode, showed that independent of the state of psychotic illness, continued cannabis use was associated with a greater increase in psychosis relapse when compared to patients who never used or who discontinued use. Continued use was also associated with longer hospital admissions.

48

101. A subsequent observational study of 256 patients, 18-65 years of age, with first episode psychosis showed that regular users of cannabis who stopped using after the onset of psychosis had the most favorable illness course with regards to psychotic relapse, whereas continued high-frequency use (i.e. daily use of high potency cannabis) was associated with the worst outcomes. High frequency, high potency users had an over three times greater chance of a subsequent relapse and more intense psychiatric care after the onset of psychosis as well as fewer months until a relapse occurred.

102. A 2025 study of 1,000 participants aged 16-40 who had recently suffered a brief psychotic episode. A two year follow up revealed that those whose cannabis induced psychotic event had been cannabis-induced had the highest transition rate to schizophrenia – being 87% higher than the non-substance group.

103. A 2025 study further found that, among patients experiencing a first episode of psychosis, the risk of subsequent psychotic disorder declined progressively following cessation of cannabis use and, after approximately 37 weeks of sustained abstinence, receded to a level comparable to that of individuals who had never used cannabis.

104. The weight of the scientific literature also rejects the hypothesis that the higher association between psychosis and cannabis use can be explained by a user's attempt to self-medicate prodromal or full-fledged psychotic symptoms. A 2011 meta-analysis of studies examining the effect of cannabis use on the onset of psychotic illness found that the age of onset of psychosis for cannabis users was nearly three years younger than for nonusers while alcohol use was not associated with a younger age at onset. The authors commented:

> Our findings do not support the view that people with a propensity to develop psychosis at a young age are simply more likely to use all substances…The result of this systematic review and meta-analysis represents strong scientific evidence for an association between

49

substance use, particularly the use of cannabis, and an earlier age of onset of psychotic illnesses…The results of this study provide strong evidence that reducing cannabis use could delay or even prevent some cases of psychosis. Reducing the use of cannabis could be one of the few ways of altering the outcome of the illness because earlier onset of schizophrenia is associated with a worse prognosis and because other factors associated with age at onset, such as family history and sex, cannot be changed…The results of this confirm the need for a renewed public health warning about the potential for cannabis use to bring on psychotic illness.

105. Similarly, in 2018 the Cannabis Legalization and Regulation Branch of Health Canada synthesized dozens of clinical studies and found that cannabis users developed schizophrenia an average of 1.5 years earlier than non-users.

106. There is compelling evidence in at least two countries that accurately track psychosis-related disorders that such diagnoses increase at a population level concomitant with population-wide increases in marijuana use.

107. A 2017 Finland study examining rates of schizophrenia or other psychosis in all children born in 1966 and 1986 in two provinces by age 27 found that prevalence went from 1.0% to 1.9%. In other words, between 1993 and 2013, schizophrenia rates in Finland nearly doubled. Surveys show that marijuana use similarly doubled among Finnish teens and young adults between 1992 and 2002 and remained at the higher levels through 2010. A subsequent Danish study found that the incidence of schizophrenia related disorders increased by 30% between 2002 and 2012. This increase corresponds with an increase in cannabis use in Denmark. Specifically between 1994 and 2010, the rate of cannabis use among 16- to 24-year-olds doubled.

108. A 2021 study examined the proportion of schizophrenia cases in Denmark that were attributable to cannabis use disorder. Researchers reviewed the nationwide mental health records from all people born in Denmark prior to 2001 who were alive and 16 years or older at some point from January 1, 1972, to December 31, 2016. Researchers found that having been diagnosed with cannabis

50

use disorder increased the risk of developing psychosis by a factor of four. Researchers found further that the proportion of schizophrenia cases associated with cannabis use disorder increased from 2.0% prior to 1995 to 8.0% since 2010, a four-fold increase during the past two decades.

109. In another gravely unsettling population-based 2025 study including over 13 million Canadians, researchers found that that nearly 9% of those with cannabis use disorder eventually went on to develop schizophrenia compared with 0.6% of those without said disorder. Researchers found further that the proportion of new schizophrenia cases attributed to cannabis use disorder nearly tripled since cannabis legalization in Canada, rising from 3.7 % before cannabis legalization to 10.3% after legalization.

110. The United States has experienced a similar increase in the prevalence of self-reported psychosis when comparing nationally representative data from the National Epidemiologic Survey on Alcohol and Related Conditions from 2001-2002 with the data from 2012-2013. Researchers noted that those reporting cannabis use were significantly more likely to have self-reported psychosis.

111. A 2020 meta-analysis of 12 high-quality studies revealed a number of arresting conclusions, especially with respect to the biological gradient criteria of Bradford Hill's criteria for causation. Specifically, the meta-analysis found that cannabis use can alter the typical age and onset of schizophrenia symptoms, cannabis-induced psychosis can eventually convert to clinical schizophrenia, frequent use of cannabis at a young age can double the chances of developing schizophrenia, and daily use of high-potency $\Delta 9$-THC may result in a five times higher chance of developing a psychotic illness.

112. A 2022 meta-analysis of studies analyzing the association of cannabis potency with mental health and addiction found that the use of high potency cannabis, relative to low potency cannabis, was associated with an increased risk of psychosis and cannabis use disorder.

113. In a groundbreaking 2023 study, researchers from the National Institute of Drug Abuse and the Mental Health Services of Denmark analyzed a health records data for more than 6.9 million Danes spanning five decades, an enormous data set. Researchers found strong evidence of an association between cannabis use disorder and schizophrenia among men and women, though the association was much stronger among young men. Using statistical models, researchers estimated that as many as 30% of the cases of schizophrenia among men aged 21 through 30 and 15% of cases among women 16 through 49 might have been prevented by averting cannabis use disorder. Researchers stated that "the study adds to our growing understanding that cannabis use is not harmless, and that the risks are not fixed at one point in time."

114. In a 2023 article for the National Institute of Health, Dr. D'Souza, M.D., professor of psychiatry at the Yale School of Medicine, stated, "the tight temporal relationship between exposure to cannabinoids and the emergence of psychotic states observed in experimental studies provides strong evidence to support a causal relationship." With respect to schizophrenia, Dr. D'Souza continued, "the relationship between cannabis and schizophrenia fulfills, to varying degrees, a number of the classic Hill criteria of causality, including the strength, consistency, specificity, temporal characteristics, direction, biological gradient, coherence, and plausibility of the association and supporting experimental evidence."

115. In 2024, Dr. Bertha Madras stated when discussing Sir Hill's criteria for the causal relationship between cannabis use and psychosis and schizophrenia:

> When you look at the causality of association, the strength of the association is pretty good. There is consistency across countries. The timing is almost invariably that marijuana precedes the symptoms. The dose-response is very robust; the more potent the drug and the more frequently it is used, the more likely schizophrenia will develop. The specificity is that of all the patients who took different drugs that brought them to the ED, it is marijuana that best predicts the conversion to psychosis. Not the other drugs to the same extent. The biological

52

plausibility is that the symptoms of psychosis that THC produces can be antagonized by the same drug that is used to treat schizophrenia.

### ii. Suicidal Ideation, Depression, PTSD, and Anxiety

116. Far from "stimulating or easing the mind," a waxing body of research has established that cannabis use increases the risk of developing mental health disorders such as depression, anxiety, bipolar disorder, and suicidal ideation.

117. A 2015 systematic review of the scientific literature found that cannabis use worsens the course of bipolar disorder by increasing the likelihood, severity, and/or the duration of manic phases. This finding persists even after controlling for baseline symptoms, suggesting that cannabis use is causative and not merely a symptom or attempt at self-medication.

118. In a 2015 study of 1,922 bipolar disorder patients enrolled in a two-year prospective observational study, cannabis users were found to have lower rates of recovery and remission, higher rates of recurrence, and higher rates of work impairment when compared to never users.

119. A 2023 meta-analysis of 25 studies involving 13,624 individuals examining "the repercussion of cannabis use on the onset of the first episode of bipolar disorder and the worsening of symptoms in pre-existing illness" found a large effect size of 2.63 after conducting a fixed-effects model.

120. In the most comprehensive study to date examining the medical history of over six million Danes, researchers in 2023 found that individuals with cannabis use disorder have almost double the risk of developing depression, two to three times the risk of developing bipolar disorder, and four times the risk of developing bipolar disorder with psychotic symptoms. The authors concluded that "[o]ur findings lend support to the notion that cannabis use may represent an independent factor associated with unipolar depression and bipolar disorder."

53

121.    One of the first studies demonstrating the anxiety-inducing effects of recent cannabis use was performed in 2004 and centered around a group of 22 healthy individuals. In a three-day double-blind, randomized procedure study, 22 volunteers were asked to score their feelings using a clinically verified anxiety test after ingesting cannabis. The results showed a statistically significant increase in VAS-A scores of "anxious," with the scores increasing in a dose-dependent manner.

122.    A 2017 study of 302 adults between the ages of 18 and 50 over a 12-week period found, after controlling for demographics, treatment condition, and tobacco and alcohol use, that there was a "significant association" between cannabis use and worsening symptoms of anxiety, depression, and sleep quality.

123.    A 2015 study of 332 female adults, ages 18-25, found that reductions in cannabis use were significantly associated with reductions in depression symptoms among those reporting at least mild depression symptoms.

124.    A 2002 cohort study following students, ages 14-15, in 44 Australian schools over a period of seven years found that daily cannabis use in young women was associated with a more than five-fold increase in the odds of reporting a state of depression and anxiety and that weekly or more frequent cannabis use in teenagers predicted an approximately two-fold increase in the risk for later depression and anxiety after controlling for alcohol use, antisocial behavior, parental separation, parental education, and teenagers' depression and anxiety at 13-14 years old.

125.    A New Zealand birth cohort was also used to assess cannabis use and its association with various quality of life metrics. Researchers in 2008 found that increased cannabis use at ages 14 through 21 was "significantly associated" with lower income at age of 25, higher levels of welfare dependence, higher unemployment, lower levels of relationship satisfaction, lower levels of life satisfaction that persisted even after controlling for confounding variables such as family socio-

54

economic background, family functioning, exposure to child abuse, early adolescent academic achievement, mental disorders, and substance abuse.

126. A 2024 study of over 12 million Canadians without prior care for an anxiety disorder found that a visit to the emergency room for a cannabis-related incident increased the risk of a future emergency room visit or outpatient treatment for an anxiety disorder by a factor of nearly four.

127. A 2018 systematic review of prospective studies examined the longitudinal associations between cannabis use and symptomatic outcomes among individuals with anxiety or mood disorders at baseline. After inclusion of 12 studies with a total of 11,959 individuals, the authors found that "recent" cannabis use was associated with higher symptomatic levels of posttraumatic stress disorder, panic disorder, bipolar disorder, and depressive disorder over time relative to comparison groups. The review found further that cannabis was also associated with less symptomatic improvement from treatment.

128. In a longitudinal U.S. study of a nationally representative sample of 34,000 adults aged 18 years or older researchers investigated the prospective associations of cannabis use in the past 12 months with anxiety disorders three years later. Researchers adjusted for sociodemographic characteristics, family history of substance use disorder, disturbed family environment, childhood parental loss, low self-esteem, social deviance, education, recent trauma, past and present psychiatric disorders, and respondent's history of divorce. Using the same data set, a different group of authors found that those who had used cannabis in the last year had a nearly three-fold risk of reporting social anxiety disorder. They also found that regular cannabis use increased the risk of developing panic disorder with agoraphobia and social phobia by nearly a factor of two.

129. A 2023 Canadian Task Force's meta-analysis of 56 studies on cannabis use and bipolar disorder or major depressive disorder found that cannabis use was "associated with worsening course

55

and symptoms of both mood disorders, . . . increased severity of depressive, manic, and psychotic symptoms in bipolar disorder and depressive symptoms in major depressive disorder."

130.    A 2025 longitudinal study involving participants ages 16-50 found that continued cannabis use following first-episode psychosis (FEP) found "persistently higher" depression and suicidality scores and slower recovery and higher relapse rates than non-cannabis users.

131.    A 2024 systematic review of 78 studies found that cannabis use is associated with increased depressive and manic symptoms in the general population in addition to an elevated likelihood of developing major depressive disorder and bipolar disorder and, far from "improv[ing] clinical or treatment outcomes," worsens symptoms of those already suffering from these disorders. Specifically, the authors stated:

> [W]e found compelling evidence indicating that cannabis use and cannabis use disorder are linked to more pronounced symptomatology and less favorable prognosis compared to patients who do not use cannabis. This includes greater levels of anhedonia, suicidality, reduced adherence and poorer cognition…Our systematic review also revealed a multitude of adverse consequences of cannabis use in people with bipolar disorder. This includes more severe symptom profiles, a greater number of manic and depressive episodes, more rapid cycling, and higher levels of suicidality.

132.    Like psychosis, these increased rates of mental health disorders associated with cannabis use are being observed at the population level. A study in 2018 found that states with more permissive medical cannabis laws were "significantly associated with higher prevalence of [serious mental illnesses]." The researchers similarly found further that the increased past-year use of cannabis by state residents was "significantly associated with higher prevalence of [serious mental illnesses]."

133.    With respect to PTSD specifically, the scientific evidence shows that it is not therapeutic, but rather makes symptoms worse and "nullif[ies] the benefits of specialized, intensive treatment."   A 2015 longitudinal study involving over 2,000 veterans found that those who began

56

using marijuana after PTSD treatment were significantly more likely to experience more severe symptoms, increased violent behavior, and higher alcohol use compared to those who abstained or ceased use. Moreover, the Veteran's Affairs/Department of Defense Guidelines "strongly" recommends against" treating PTSD with cannabis or cannabis derivatives due to the lack of evidence for their efficacy, known adverse side effects, and associated risks.

134. In 2019, the APA in a position statement opposing the use of cannabis for PTSD found that the extant medical literature contained no high quality studies that cannabis or cannabinoids could provide benefit for patients suffering with PTSD. Based on its review of the literature, the APA concluded that, if anything, individuals with PTSD who use cannabis have more severe PTSD and possibly worse outcomes than individuals who did not use cannabis.

135. Most alarming, a steadily condensing body of research has linked marijuana use and suicide. This association appears to be most pronounced for those whose marijuana use began during adolescence.

136. In 2014, a *Lancet*-published study combined three longitudinal data sets involving six to nine assessments over a period of 15 years and found a 6.9-fold increase in the risk for subsequent suicide attempts in those using marijuana daily before age 17. A second longitudinal study with a follow-up time of 8 years found, after controlling for a number of variables including a history of any mood disorder, a 7-fold increase in the risk for a suicide attempt for those who began using marijuana in their teen years. A subsequent meta-analysis of all longitudinal studies evaluating cannabis use prior to the age of 18 found a near 3.5 times increase in the risk of suicide attempts during young adulthood in those with no pre-existing suicidal behaviors, depression, or anxiety. A recent study involving a large and ethnically mixed population of U.S. high school students that effectively

controlled for a variety of confounding factors found that those students who had smoked marijuana 20 or more days per month had an over 2.5 increased risk of suicide attempt.

137. The association is not limited to adolescent use. A 2016 meta-analysis of a mix of longitudinal and case-control studies worldwide found that heavy users of cannabis were over three times more likely to attempt suicide than non-users. A 2013 study of Danish individuals who were followed after having been discharged from treatment for cannabis use disorder revealed a 5.3-fold increase in completed suicide. A 2017 study of over 3,000 veterans found that cannabis use disorder was significantly associated with both current suicidal ideation and lifetime suicide attempts, even after accounting for the effects of sex, posttraumatic stress disorder, depression, alcohol use disorder, non-cannabis drug use disorder, childhood sexual abuse, and combat exposure.

138. The National Academy of Sciences in its definitive review of the association between cannabis use and major depression in 2017 found that there is "moderate evidence of a statistical association between cannabis use and increased incidence of suicidal ideation and suicide attempts, with higher incidence among heavier users."

139. A 2020 data summary of case reports of those admitted to the hospital over a four-month period with self-reported history of marijuana use revealed that nearly 10% professed having experienced suicidal ideation in the last 30 days. A 2019 study found that of cannabis using teens, use of marijuana on a particular day is reported to be a "significant" predictor of a suicide attempt on that day.

140. A 2023 population-based study found that people with a cannabis-related emergency or hospital visit had a 5.4-fold higher adjusted risk of deliberate self-harm and a 9.2-fold higher adjusted risk of death by suicide within three years compared with the general population. These significantly increased risks remained even after adjusting for age, sex, other health conditions, and

substance use, indicating a strong association between serious cannabis-related health contacts and subsequent self-harm and suicide outcome.

141. Most recently, a 2025 systematic review of over 50 studies examining the relationship between cannabis use and suicide risk in FEP demonstrated that daily use or high-potency use tripled the risk of suicide in FEP.

### iii. Cannabis and Cardiovascular Health

142. Cannabis has other devastating health effects, including adverse cardiovascular events. A 2025 "exhaustive" systematic review and meta-analysis of 24 studies found that, even after adjusting for age, smoking, and other risk factors, cannabis use doubled the risk of cardiovascular death and increased the risk of stroke by 20%.

143. A separate 2025 study analyzed electronic health records from over 4.6 million adults aged 18-50 with no prior history of cardiovascular disease, comparing the cardiovascular outcomes of those who self-identified as cannabis users to non-users. After adjusting for age, sex, race, tobacco use, and other comorbidities, the findings revealed that cannabis users had significantly elevated cardiovascular risks. Specifically, they faced more than six times higher odds of experiencing a heart attack, four times higher odds of ischemic stroke, double the risk of developing heart failure, and triple the risk of experiencing any major adverse cardiovascular event.

144. The same team also conducted a 2025 meta-analysis examining the relationship between cannabis use and heart attack by systematically reviewing and pooling data from 12 observational studies encompassing more than 75 million individuals. Researchers found that cannabis users faced a 50% increased risk of experiencing a myocardial infarction compared to non-users.

59

145. The American College of Cardiology ("ACC") found these results so startling that it issued a press release setting forth the results. In the press release, the ACC quotes the primary author of the study, who advises that "[a]sking about cannabis use should be part of clinicians' workup to understand patients' overall cardiovascular risk, similar to asking about smoking cigarettes." (internal quotation marks omitted).

146. These recent studies build upon a meta-analysis conducted in 2024 examining 26 studies that included 72,551,926 patients that found that self-identified cannabis users had a 38% increased risk of suffering a heart attack and a 43% increased risk of suffering a stroke.

### iv. Cannabis and Pain

147. From a scientific standpoint, credible evidence does not support the effectiveness of cannabis in treating pain, and pain's inherently subjective nature may be exploited by individuals whose motivations are more recreational than therapeutic.

148. In a 2022 systematic review and meta-analysis encompassing 20 randomized, double-blind, placebo-controlled cannabis-based trials with a total of 1,459 participants, researchers found that placebo treatments produced a moderate to large, statistically significant reduction in self-reported pain. Researchers found no statistically significant difference in pain reduction between the active drug and placebo groups. Researchers discovered too that the size of the placebo effect reported was linked to the "low risk" of bias in the study. In other words, in those studies included as part of the systematic review where the researchers and their methodologies were biased in favor of cannabis, the reported placebo effect was lower. The authors also examined the media coverage of the included studies and found that they were being categorically misrepresented by the media. Specifically, researchers found that the overwhelming majority of news items reported that cannabis had a positive effect on pain regardless of what the study's outcomes actually were.

60

149.     A 2023 systematic analysis reached nearly the identical result - as study quality improves and risk of bias decreases, it becomes increasingly evident that cannabis's apparent effect on pain is nearly entirely attributable to the placebo response.  In a 2023 comprehensive review of 65 randomized, placebo-controlled trials involving 7,017 participants, cannabinoids fared no better than the placebo in improving acute pain, chronic pain, or cancer-related pain when the quality and bias of studies were controlled for.

150.     As observed by Bertha Madras, the situation mirrors past opioid marketing because "[t]he benefits have been exaggerated, the risks have been minimized, and skeptics in the scientific community have been ignored."

151.     As for the contention that cannabis can act as a substitute for opioids or results in reduced opioid consumption, this also is without a credible scientific basis.  As of 2020, the definitive review of the current state of knowledge found that individuals using marijuana for pain relief do not exhibit a reduction or elimination of opioid use.  More disturbing, the researchers found further that marijuana users were less likely to discontinue opioid use than non-users.

152.     A 2023 study spanning two decades reported that there is no evidence to support the claim that cannabis reduces opioid misuse.  The study, which is one of the longest studies of its kind, enlisted 615 heroin dependent subjects in 2001 and assessed cannabis and opioid use at various points in time over 20 years.  While finding that cannabis use was common among people with opioid use disorder, the researchers found further that there was no evidence to suggest that cannabis reduced the use of opioids.

153.     Neither the American Academy of Pain Medicine nor the International Association for the Study of Pain endorses the use of cannabis to treat pain. As stated by the IASP in its position statement in 2021:

61

> Due to the lack of high-quality clinical evidence, the International Association for the Study of Pain does not currently endorse general use of cannabis and cannabinoids for pain relief...There are concerns about the potential for harms of cannabis and cannabinoids.

### v. Glaucoma

154. The use of marijuana to treat glaucoma relies on the narrow fact that THC can transiently influence intraocular pressure while ignoring the broader reality that effective dosing is wholly impractical, sustained benefit is unsupported by credible evidence, and the risks of use far outweigh any conceivable therapeutic benefit.

155. Glaucoma is a complex disease that is characterized by progressive damage to the optic nerve over time, constriction of peripheral visual fields, and irreversible blindness if left untreated. One of the causes of glaucoma is intraocular pressure ("IOP"), which is a function of the production and drainage of aqueous humor within the ocular system.

156. Effective treatment for glaucoma, including oral medication or topical eye drops, laser or other surgical interventions, exist and "clinically translate to sustained, continuous control of IOP.

157. A 2019 meta-analysis of five studies featuring different routes of administration revealed varying and conflicting results in reducing intraocular pressure, leading researchers to conclude:

> Studies have indicated cannabis may have the potential to lower IOP, however the quality of available literature is poor. The studies that were reviewed were highly variable in their methods and patient population selected, and therefore no current evidence supports the use of any form of cannabis to replace existing Cannabis and glaucoma therapy for glaucoma.

158. While marijuana can lower intraocular pressure, it does not do so at therapeutic levels with reasonable dosing. To maintain a beneficial concentration of THC in the bloodstream for

glaucoma treatment, one would need to smoke or otherwise consume cannabis approximately six to eight times a day.

159. The American Glaucoma Society's current position statement on cannabis declares that there is no scientific basis for the use of marijuana in the treatment of glaucoma and expressly disavows the use of cannabis in any form as a primary or sole treatment for glaucoma.

160. The American Academy of Ophthalmology has declared that "there is no compelling research that shows CBD to be an effective treatment for glaucoma."

### vi.  Hyperemesis

161.  Cannabis hyperemesis syndrome (CHS) is a condition that is characterized by repeated bouts of relentless vomiting in the setting of chronic cannabis use.  Symptoms usually appear within 24 hours of cannabis use and can last for days.  These episodes are so brutal that ER staff have coined the terms "scromiting" – a chilling conflation of screaming and vomiting.

162.  Many patients are misdiagnosed or have delayed diagnosis, often after undergoing various expensive medical tests and workups. In a 2016 observational study of CHS patients over a two-year period, the median charge for emergency visits and hospital admissions for CHS was $95,023.  A 2019 study analyzed the cost for 17 patients diagnosed with CHS.  The total cost for combined emergency department visits and radiological studies averaged over $76,000 per patient.

163.  A research team at the University of Colorado led a large study analyzing emergency visits related to cannabis use between January 2012 (the year of legalization) and December 2016. Researchers found a dramatic increase in the emergency department visits attributable to CHS or CHS-like symptoms.

### vii. Cannabis Use Disorder

164.    Despite Defendants' repeated efforts to downplay or deny it, cannabis is highly addictive. Historically it was believed that about 9% of cannabis users became addicted. The National Institute on Drug Abuse and Centers for Disease Control and Prevention recently released data challenging this figure as inadequate and suggesting that 30% of those who use cannabis may have some degree of cannabis use disorder.[26] By comparison 15% of alcohol users, 32% of nicotine users, and 26% of opioid users become addicted.

165.    Daily cannabis users, such as those who use it regularly as a type of "medication," are at the highest risk for developing cannabis dependence, with 25% to 50% of these users becoming addicted.

---

[26] Cannabis Use Disorder (CUD) is defined in the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (DSM-5) as a problematic pattern of cannabis use leading to clinically significant impairment or distress. Diagnosis requires at least two of the following 11 criteria occurring within a 12-month period:
1.  Cannabis is often taken in larger amounts or over a longer period than intended.
2.  Persistent desire or unsuccessful efforts to cut down or control cannabis use.
3.  A great deal of time is spent obtaining, using, or recovering from cannabis.
4.  Craving or a strong desire to use cannabis.
5.  Recurrent cannabis use resulting in failure to fulfill major obligations at work, school, or home.
6.  Continued use despite persistent or recurrent social or interpersonal problems caused or exacerbated by cannabis.
7.  Important social, occupational, or recreational activities are given up or reduced because of cannabis use.
8.  Recurrent cannabis use in situations where it is physically hazardous.
9.  Continued use despite knowledge of having a persistent or recurrent physical or psychological problem likely caused or worsened by cannabis.
10. Tolerance, as defined by either:
    o   A need for markedly increased amounts to achieve intoxication or desired effect.
    o   A markedly diminished effect with continued use of the same amount.
11. Withdrawal, as manifested by either:
    o   The characteristic withdrawal syndrome for cannabis.
    o   Cannabis (or a closely related substance) is taken to relieve or avoid withdrawal symptoms.

### viii.    Prenatal Cannabis Exposure Risks to Fetuses and Children

166.    A 2016 meta-analysis assessing the effects of prenatal exposure to cannabis found that infants exposed to cannabis in utero had a 77% increased odds of low birthweight, which is associated with increased morbidity and mortality, and were more likely to need placement in the neonatal intensive care unit compared with infants whose mothers abstained.  The researchers concluded, "pregnant women could benefit from health education on the potential adverse effects of use of cannabis during pregnancy."

167.    Results in 2020 from the largest long-term U.S. study of brain development and child health, the Adolescent Brain Cognitive Development ("ABCD" study), revealed that prenatal cannabis exposure affects children well beyond infancy.  In children averaging about ten-years-old, prenatal cannabis exposure before and after maternal knowledge of pregnancy was associated with greater offspring psychopathology characteristics (e.g. psychotic-like experiences and attention, thought, and social problems), sleep problems, and lower cognition and gray matter volume.  The ABCD study also corroborated prior studies finding that cannabis exposure was associated with lower birth weight.  Researchers concluded, "[s]imilar to the effective messaging surrounding the adverse consequences of alcohol and tobacco exposure during pregnancy, education regarding the potential harms associated with prenatal cannabis use is necessary."

168.    Leveraging longitudinal ABCD study data, a 2022 study linked prenatal cannabis exposure to persistent psychopathology from childhood to early adolescence. Exposed children showed significantly higher levels of psychotic-like experiences, social problems, ADHD, depression, anxiety, and other conduct problems than unexposed peers even after adjusting for confounders.

169. A 2024-2025 systematic review found that cannabis use during pregnancy increased the risk of miscarriage, stillbirth, pre-term birth, and low birth weight. That same year, a separate group of researchers conducting a longitudinal assessment of prenatal cannabis use on neonatal outcomes found that maternal cannabis use increased the adjusted risk of fetal death (miscarriage/stillbirth) by more than a factor of six.

170. Most recently, a 2025 systematic review of 51 studies involving over 21 million pregnancies found that cannabis use was associated with preterm birth and lower birth weight.

### E. Defendants' Unlawful Marketing Practices

171. Defendants, based in part on the large body of scientific research set forth above, knew, or at least should have known, cannabis has no safe medical applications for mental health disorders such as depression, PTSD, bipolar disorder, and anxiety and is not a suitable treatment for other health disorders, such as pain and glaucoma, as the Defendants represent. Defendants also knew or should have known that cannabis use is a causal factor in the development and/or exacerbation of schizophrenia, psychosis, bipolar disorder, depression, suicidal ideation, and anxiety, and other health disorders, such as adverse cardiovascular events, CHS, and cannabis use disorder, and that it poses significant risks to fetuses and children from prenatal exposure, as has been repeatedly, coherently, and specifically established by years of high-quality medical research.

172. To mask the adverse effects of cannabis and maximize profits, Defendants' collective and defining marketing strategy has been to market cannabis as "medicine" or "health-supportive." In furtherance of that goal, Defendants have made countless unscientific, false, fraudulent, illegal, deceptive, disingenuous, and/or dangerous affirmative claims regarding the medical and therapeutic benefits of cannabis.

173. The cannabis industry, like Big Tobacco, adopted a strategy of promoting cannabis through less than reputable "cannabis research" that touts cannabis-related health benefits through free-floating concepts imbued with high consumer confidence such as "health," "medicine," and "science." As explained by University of Pennsylvania Professor Theodore Caputi:

> Essentially, marketers realize that social media sites and the 24-hour new cycle effectively deliver health information to consumers and that consumers are less-discerning auditors of scientific rigor than are federal regulators. Therefore, rather than invest in the multitude of expensive, large-scale clinical trials required to make regulator-endorsed health claims, marijuana companies sponsor and publicize the results of less-robust studies.

174. In a 2022 study, Professor Caputi analyzed how six major medical cannabis companies used their public websites to promote partnerships with major academic institutions and health-related research claims. Through web scraping and content analysis, it was determined that these companies made 908 research-related health claims referencing serious conditions like mental health disorders (412 claims), pain (326 claims), inflammation (163 claims), cancer (154 claims), and gastrointestinal issues (133 claims) without rigorous clinical proof.

175. Defendants similarly promote the health benefits of cannabis without rigorous scientific proofs and analysis by promoting their cannabis products based upon very low-quality cannabis "research" that commends to consumers cannabis as a "potential" or "promising" therapy.

67

As an example, Cresco's website has contained the following content at times relevant to this Complaint:

**Cannabis as Medicine**

Documents dating as far back as 2900 B.C. tell us cannabis has lived alongside humans for thousands of years and has been cultivated for medicinal purposes for just as long. Cannabis' impact on the human body can be credited, in large part, to what are called Cannabinoids. Cannabinoids are chemical compounds secreted by the plant's trichomes that offer a wide array of therapeutic benefits. The two most well known cannabinoids are THC and CBD. Cannabinoids bind to receptor sites in the brain and body – this system of receptors is referred to as the Endocannabinoid System.

Clinical research regarding the therapeutic benefits of cannabinoids is growing. Two aforementioned cannabinoids, THC and CBD, are showing to help patients suffering from pain, nausea, sleep and stress disorders, as well as stress relief, anxiety, inflammation and epilepsy. Cannabis contains over 100 different cannabinoids and more research becomes available every day detailing how cannabinoids can be used to treat a wide range of ailments. Without question, additional research into cannabis' impact on the human body is needed and appropriate.

As an example, Rise's website (one of GTI's branded products) has contained the following content at times relevant to this Complaint:

Right now, scientists are researching the use of marijuana in the treatment of a range of conditions as diverse as **Alzheimer's disease** to **anorexia**. The **most evidence** that it may be helpful is in **the treatment of** chronic pain, epilepsy, nausea (especially in chemotherapy patients), weight loss associated with HIV, and muscle stiffness in MS patients.

Just because experts don't currently have evidence that medical cannabis is useful in treating a condition doesn't mean people don't experience some benefits from use. In most cases, more research is needed before scientists reach conclusions.

176. Unlike drug companies who invest billions into highly rigorous clinical trials during the FDA approval process, which, in fairness, allows them to advertise their products with health claims, Defendants have made similar health claims based upon substandard and deeply flawed research that does not demonstrate health benefits to cannabis use.

177. Cannabis industry funding of "research" and "studies" make it more likely that the results will skew in favor of industry. Scientists have long recognized a "funding effect," wherein

68

industry sponsorship is statistically and positively associated with research outcomes and conclusions favorable to the sponsor. This effect is believed to be produced by researchers suppressing unfavorable results and/or making methodological choices around research or experimental design that produce more favorable outcomes.

178. Take as another example the 2011 review of literature regarding cannabis terpenes published in the British Journal of Pharmacology. One "finding" was that terpenes in cannabis "may" contribute to the therapeutic effects of cannabis. The author concluded that terpene "synergy, if proven, increases the likelihood that an extensive pipeline for new therapeutic products is possible from this venerable plant." In the "conflict of interest" section the author admitted that he works as a "Senior Medical Advisor to GW Pharmaceuticals," a "leader in cannabinoid science" that "passionately believe[s] in the therapeutic and breakthrough potential of cannabinoid medicines to revolutionize how patients deal with their often-overlooked diseases and redefine what living with their disease means."

179. Though the literature review "proved," scientifically speaking, nothing, Defendant GTI's brand Rise seized on the study in a blog post, and with a slight massaging of the language, reported that the "study" "found that terpenes offered 'complementary pharmacological activities.'"

180. This ongoing refusal of cannabis researchers to adopt gold-standard methodologies instead of relying on research of limited rigor and credibility was set forth convincingly by a 2021 study conducted by the Consortium for Medical Marijuana Clinical Outcomes Research. In its examination of randomized-controlled studies evaluating medical cannabis and cannabinoid-based treatments, researchers found that only 4 out of 79 trials (5%) reviewed met the criteria for "low risk of bias," indicating widespread methodological concerns. Key sources of bias were identified across multiple domains, including inadequate random sequence generation, poor allocation concealment,

69

insufficient blinding of participants and personnel, incomplete outcome data, and selective reporting, many of which were either poorly executed or inadequately documented. Researchers concluded that these shortcomings significantly undermined the reliability and applicability of these studies.

181. Undeterred, Defendants' websites are shrewdly and deceptively curated to resemble healthcare companies and project the authority of science and medicine.

As an example, Verano's website has contained the following content at times relevant to this Complaint:





As an example, Cresco's website has contained the following content at times relevant to this Complaint:



70

As an example, GTI brand Rise's website has contained the following content at times relevant to this Complaint:



182. These websites falsely create the overall impression that cannabis and, nearly all its constituent properties, have certain scientifically-approved medical applications.

183. Much of the work is done on "blogs" or "education" pages stocked with various false and deceptive posts relating to cannabis. These articles are meant to "teach" novice consumers how to ingest cannabis, which for most is still a novelty; demystify for new consumers those ritualized and elaborate aspects of cannabis use and lore they might otherwise find intimidating; and "inform" consumers of "potential," "possible," "anticipated," "suggested," and "promising" health and therapeutic benefits of cannabis.

71

As an example, Verano's website has contained the following content at times relevant to this Complaint:



As an example, GTI brand Rise's website has contained the following content at times relevant to this Complaint:





72

As an example, Cresco's Sunnyside brand website has contained the following content at times relevant to this Complaint:

### What are the potential benefits of THC and CBD?

Both THC and CBD hold a lot of promise when it comes to fighting symptoms of chronic conditions. More research into the medical value of cannabis is needed, but these compounds have reportedly offered many therapeutic benefits for those living with a number of ailments.

Here are some of the most common ailments they may help with:

**THC**

- Chronic pain
- Nausea
- Insomnia
- GI issues
- PTSD

- Inflammation
- Regulating Appetite
- Migraines
- Stress

**CBD**

- Epileptic seizures
- Inflammation
- Anxiety
- Insomnia

- Chronic Pain
- Neurological disorders
- Stress

184.    In Defendants' blogs, the medical lexicon and medical imagery are deceptively appropriated. One no longer takes a "hit" or does a "bong rip," but rather receives a specific "dose" or "micro-dose" measured out to the milligram by a pharmacist. Cannabis is no longer distributed as an "eighth" or in "blunt" form, but rather as "capsules," tinctures," "extracts," "topicals," or "therapies."  The "cashier" is a "personal care specialist."

73

As an example, Verano brand Zen Leaf Dispensaries' website has contained the following content at times relevant to this Complaint:



## Cannabis Tinctures: Proper Dosing Guide

Though taking a tincture sublingually is fairly simple, there are four simple steps to keep in mind as you begin. When you are ready to take a tincture dose:

1. Load the included dropper with your intended dosage. Double-check the dropper to ensure you have drawn up the appropriate dose before administering it.

2. Carefully squirt the liquid directly underneath your tongue. Keeping the liquid toward the front of your mouth can help you avoid unintentionally swallowing the tincture.

3. Hold the liquid under your tongue without swallowing for at least

As an example, Cresco's Sunnyside brand's website has contained the following content at times relevant to this Complaint:



As an example, GTI's Rise brand's website has contained the following content at times relevant to this Complaint:

# Introducing Cannabis Pharmacists at RISE Dispensaries

RISE dispensaries are proud to have a team of dedicated cannabis pharmacists who are passionate about patient care and education. These individuals have specialized knowledge in medical cannabis, ensuring that every patient's journey is safe, informed, and tailored to their needs. Our pharmacists are not just providers; they are advisors, educators, and advocates for health and wellness.

"Cannabis pharmacists are real, live pharmacists available to consult with our medical patient community on the following: The basics of the human endocannabinoid system, types of products available in medical dispensaries, proper product selection, proper product usage & safe storage.

GTI pharmacists are passionate about helping others find their well-being through the power of cannabis and take the time to ensure each medical patient is comfortable with the products they use. GTI pharmacists are always available for follow-up conversations. Our medical patients in PA, OH, NY, CT, VA, and MN can pre-schedule time to speak with a GTI Pharmacist via phone, video, or in-person by visiting their local RISE website page and clicking on the "talk to a pharmacist" button." - **Elizabeth Ardillo, PharmD, pharmacist for RISE Dispensaries in Pennsylvania**

As we celebrate National Pharmacist Day, we invite you to meet the professionals who make RISE dispensaries a trusted name in the cannabis world.

185.    In many of Defendants' blogs discussing marijuana and health, it is rare to find multiple consecutive paragraphs where some medical nomenclature, such as "treatment," "wellness," or "therapeutic," is not deceptively used. Defendants' often reference some medical condition followed by some deceptive language as to cannabis being "researched" as having the "potential" to treat said condition. Others of Defendants' blog posts state unequivocally that cannabis does in fact treat mental health disorders and offers medical advice on the best "dose" or "optimal" treatment for such disorders.

75

As an example, Cresco's website has contained the following content at times relevant to this Complaint:

## How Can Cannabis Help?

Cannabinoids, the organic chemical compounds possessing much of the healing powers of medical cannabis, bind to the same endocannabinoid receptors throughout the body and brain that are responsible the regulation of several physiological body systems, including pain, mood, memory, and appetite. While pharmaceuticals are also designed to react with the same receptors, they rarely bind as naturally as the cannabinoids in medical cannabis. This is why medical cannabis is such an effective treatment option for conditions that may otherwise be difficult to treat, like neuropathy. Where pharmaceutical therapies may not provide enough symptom relief to outweigh the negative side effects and potentials for addiction, cannabis can often react with the body's receptors more efficiently and without risk of life-threatening addiction.

Multiple research studies reveal that cannabis is often a preferred method of symptom relief for neuropathy patients because it is effective, even to those who have not responded to pharmaceutical therapies, and the psychoactive side effects are not as debilitating as those presented by opiates. Several medical cannabinoids are known to treat individual symptoms like pain, anxiety, inflammation, sleep deprivation, and mood disorders. While those single cannabinoid therapies are extremely successful, as highlighted by the pure CBD oils that are significantly reducing the severity and duration of many children suffering from severe forms of epilepsy, when multiple cannabinoids work together in a process called the entourage effect, the medical efficacy can increase dramatically.

## How Can Cannabis Help?

The human body contains systems that are filled with neuromodulators (receptors) and these sophisticated receptors help regulate a variety of physiological processes including movement, mood, memory, appetite and pain. In much the same manner that the human body's endocrine system receptors respond to opiates – the root compounds of many pain relieving medications like morphine, codeine and hydrocodone (Vicodin) – the body's endocannabinoid system receptors respond to the compounds present in cannabis called cannabinoids.

Anxiety is regulated by the endocannabinoid receptors that line the human brain, and while it is natural for a person to experience symptoms of anxiety, the severity of symptoms should dissolve over time. When the body does not produce enough anandamide, the endocannabinoid responsible for controlling anxiety, PTSD is more likely to develop. A patient may be diagnosed as suffering from PTSD if anxiety symptoms such as flashbacks, depression, social withdrawal, insomnia or night terrors, interfere with daily life or last longer than five weeks. Cannabinoids bind to the same regulatory receptors in the brain as the anxiety regulator, anandamide. It is believed that people diagnosed with PTSD exhibit lower natural levels of anandamide when compared to non-PTSD sufferers. An expert that has studied PTSD as part of Project CBD states that "anandamide triggers the same (endocannabinoid) receptors that are activated by THC and other components of the marijuana plant." A clear connection as to why medical cannabis can be effective in alleviating the symptoms of PTSD.

76

As an example, Verano brand Zen Leaf Dispensaries' website has contained the following content at times relevant to this Complaint:



# Best Cannabis Strains for Anxiety & Stress

By **Zen Leaf Team** October 18, 2024

Are you seeking relief from anxiety or stress through the use of cannabis? This guide will help you understand the best cannabis strains for anxiety and stress management, complete with information on their terpene profiles. You'll discover:

## What You'll Learn

- How cannabis can aid in managing anxiety and stress
- A list of top strains that can help manage symptoms of stress and anxiety
- Important factors in choosing the right strains
- Tips on using cannabis for stress and anxiety relief

## Can Cannabis Help Manage Anxiety and Stress?

Yes, cannabis can be used to help manage anxiety and stress. Some studies suggest that certain **cannabinoids** and **terpenes** may play a role in reducing anxiety symptoms (Blessing et al., 2015). However, it's important to explore which strains might be best suited for your personal needs and to consult with professionals when necessary.

77

As an example, GTI Rise brand's website has contained the following content at times relevant to this Complaint:

## BEST MARIJUANA STRAINS FOR DEPRESSION

One of the most important things to remember about cannabis and depression is the effects of cannabis are biphasic, which means high and low doses can create opposite effects, Ardillo says. Typically, a low dose of THC helps relieve symptoms of depression and a higher dose may worsen symptoms of depression, she says.

Here's the deal: certain strains will be better for depression than others. In general, it may be best to find **cannabis flower** that has a lower THC potency and some measurable amount of CBD. These strains may also be less likely to lead to anxiety or paranoia, as CBD seems to **counteract this undesirable side effect of THC**.

186. In explaining how a single plant can induce such different "experiences" and "treat" so many different medical and mood-related conditions, Defendants must construct their own apocryphal and false field of cannabis medicine.

187. Defendants falsely and deceptively distinguish and categorize their cannabis products, which, true to branding, is done using pseudo-scientific language drawn from botany, chemistry, engineering, and medicine. First, cannabis is classified by strain, whether indica, sativa, or hybrid. According to Defendants, the difference between these two "strains" are so pronounced that they produce opposite effects—indica causes a "body high," induces "relaxation," and is used as a "sleep aid" whereas sativa induces a "cerebral high," is "energizing," boost[s] creativity," and "boost[s] productivity."

78

As an example, Cresco's website has contained the following content at times relevant to this Complaint:

**Indica vs. Sativa**

*Form and structure:* Indica plants tend to be short and stocky, while sativa varieties are tall and lanky. The leaves of indica plants are broad and chunky, whereas sativa strains exhibit thin and pointy leaves. It should be noted, it's not always easy to quickly identify the different species solely by their appearance. The variation in form is primarily due to the different geographical regions in which each originate — indicas from the mountainous regions of Asia and the Middle East and sativas from more equatorial regions around the world.

*Efficacy:* The efficacy, or effect, of indica and sativa strains can be very different. Some users have reported sativa stdrains as having a powerful uplifting/energizing effect. Some users have reported that sativa strains promote focus and productivity – making them preferable for day-time use. However, strong sativas can cause a person's mind to race and cause users to feel anxious or paranoid.

Indicas traditionally promote relaxation and general calming. Often, indicas are thought to be very beneficial for pain relief, anxiety and sleep disorders. Strong indicas might not be the best option for morning-use and wanting to stay productive. Likewise, consuming a sativa in the evening isn't necessarily recommended.

As an example, Verano's website has contained the following content at times relevant to this Complaint:

## Sativa

Sativas boost serotonin and sharpen your focus, so they can help with depression, anxiety, and attention disorders. Sativas can also alleviate chronic and acute pain, treating everything from recurring migraines and fibromialgia, to menstrual cramps and sprained ankles. Due to the sativa plant's energizing properties, it's best for daytime use.

## Indica

The indica plant can relax your muscles *and* your mind. As a result of its sedative effects, it can help insomnia sufferers. Like the sativa plant, indica can alleviate chronic and acute pain, so it's a good choice for nighttime pain relief. Indica strains can also induce the munchies (useful for anyone with a low appetite!) and soothe nausea before bed.No matter how much you know about sativas vs. indicas vs. hybrids, it never hurts to ask an expert. We recommend visiting your local Zen Leaf dispensary if you're looking to achieve any particular cannabis benefits. Cannabis advisors have many sativa and indica options—as well as hybrid strains that offer the healing benefits of both parent plants—and they would love to help you find the ideal strain for you.

79

188.    Defendants falsely and deceptively claim that crossbreeding indica and sativa strains has produced thousands of new "hybrid" or "cultivar" strains that have their own unique properties and can cause one's "cannabis experience" to vary meaningfully depending on the chemical profile of the specific strain.

As an example, GTI brand Rise's website has contained the following content at times relevant to this Complaint:

**SATIVA**

Cannabis sativa is a long, tall plant with long, thin leaves that are light green. You may see **sativa-dominant strains** being described as energizing and cerebral. However, just as with indica-dominant strains, the truth is much more complex. Cannabis experience can vary widely depending on the chemical profile of a specific strain, your body, and additional factors. **[Source]**

As an example, Cresco's website has contained the following content at times relevant to this Complaint:

**Hybrid:**

A cannabis plant that is a cross of two or more different strains. Most of the cannabis available on both the black market and also in legal states is derived from hybrid strains. Hybrids are created to combine the best traits of two or more strains in an effort to create a more potent, pleasant, or long-lasting high.

**Understanding Hybrids**

Hybrids are simply new and unique strains that are bred from parents of different types. A hybrid theoretically possesses many or most of the beneficial medical properties of both its parents. Breeders can "cross" any two strains they desire in an effort to create a new strain that delivers the best possible medical efficacy, sometimes for particular diseases like lupus, multiple sclerosis, Crohn's disease, and epilepsy.

80

As an example, Cresco's Sunnyside brand's website has contained the following content at times relevant to this Complaint:

## Hybrid Strains: The Best of Both Worlds

In addition to pure Indica and Sativa strains, there are countless hybrid strains that combine the characteristics of both types. Hybrids are bred to provide a balanced experience and meet the demands that face cannabis farmers. These strains can be Indica-dominant, Sativa-dominant, or balanced—catering to a wide range of preferences and needs.

For cannabis consumers looking to purchase products at dispensaries, "hybrid" is typically going to be used to identify products that offer an effect somewhere between Indica and Sativa. Hybrid strains may offer a mix of relaxation and energy, making them versatile for different situations. They are often chosen for their tailored effects, which can be adjusted by breeders to achieve specific outcomes.

**Popular Hybrid Strains:** Some popular hybrid strains include Blue Dream, Girl Scout Cookies, and Pineapple Express.

189.     Products are then sub-categorized by their "cannabinoid profile."  According to Defendants, there could be as many as 100 different cannabinoids that interact with a person's endocannabinoid system. Defendants claim further, the endocannabinoid system is responsible for regulating nearly every major biological system and maintaining "homeostasis" or "stability and ability to function healthily in your environment."  Defendants falsely and deceptively claim that it is precisely "pharmacological interactions" between the cannabinoids making up a specific strain's profile and our body's endocannabinoid receptors that cause a strain to have a specific effect and induce unique "medical benefits."

As an example, Cresco brand Sunnyside's website has contained the following content at times relevant to this Complaint:



## What Are Cannabinoids?

As you might have guessed from the name, cannabinoids play an essential role in the life of the cannabis plant. They are also the compounds responsible for the litany of experiences that result from its ingestion.

In short, cannabinoids are compounds that interact with our endocannabinoid system—a biological system that promotes homeostasis in our bodies. It works to keep our bodies performing at an optimal level and is believed to be connected to things like sleep, pain sensitivity, appetite, and mood.

In this way, cannabinoids can offer relief from pain, euphoric states of mind, help with sleep, and a number of other helpful things that one might need to live their best life. They are one of the primary reasons humans have consumed this plant for thousands of years, but this plant isn't just making them for us.

Cannabinoids play an important role in keeping the plant healthy. Predominantly found in the trichomes of the plant, they help protect the plant from the harmful UV rays from the sun and help ward off pests that are looking for an easy snack. Cannabis plants produce a large amount of cannabinoids; however, cannabinoid production is not just limited to cannabis! Cannabinoids occur naturally within other plants as well as the human body. They can also be created synthetically in a lab.

As an example, Verano's website has contained the following content at times relevant to this Complaint:

**Huh? What's an 'endocannabinoid system'?**

It's a network of receptors located in your brain and along your nervous system, and it's not unique to you: Every human on Earth is lucky enough to have an endocannabinoid system.

**Lucky why?**

Well, these receptors regulate our appetite, immune system, mood, motor coordination, sleep, sense of pain, and perception of reality. And phytocannabinoids—the compounds in the cannabis plant—turn on these receptors, allowing us to influence how we feel.

**Whoa.**

Yeah, our biological connection to cannabis cannot be denied—and different phytocannabinoids have different effects on us. You've probably heard of the phytocannabinoids (commonly known as "cannabinoids") CBD and THC, but cannabis flowers also create:

- CBG, which has analgesic, anti-bacterial, anti-fungal, anti-tumoral, and sedative effects
- CBC, which offers anti-inflammatory, analgesic, anti-depressant, neuro-protectant, and sedative benefits
- CBN, which boasts anti-convulsant, antibiotic, analgesic, anti-bacterial, and sedative effects
- THCA (the raw form of THC), which has anti-inflammatory, neuroprotective, and anticonvulsant properties
- ... And many, many more. In total, there are more than 80 phytocannabinoids in each cannabis flower.

The biggies, though—at least in modern culture—are CBD and THC. Healing CBD (short for cannabidiol) is packed with anti-anxiety, anti-convulsant, antispasmodic, anti-depressant, anti-tumoral, and neuro-protectant powers. Unlike its fun cousin THC, however, CBD is not psychoactive.

82

As an example, Cresco's website has contained the following content at times relevant to this Complaint:

> The success of the entourage effect is demonstrated in the use of medical cannabis to treat neuropathic pain. THC, the most abundant psychoactive cannabinoid, has proven to be an extremely effective analgesic (pain reliever) and is also helpful in the treatment of the depression that can often accompany chronic pain conditions like neuropathy. Unlike THC, CBD is a non-psychoactive reliever of inflammation and pain. Research has linked the inflammation-reducing characteristics of CBD, and its ability to eliminate excessive immune-related oxidative stress in order to allow the body to better heal itself, to significant symptom reduction in neuropathy patients. Another medical cannabinoid, CBC, displays sedative properties that are known to help those suffering from pain get some much-coveted rest.

As an example, Cresco brand Sunnyside's website has contained the following content at times relevant to this Complaint:

## CBG

Short for Cannabigerol, CBG is a cannabinoid found in cannabis that has gained a lot of interest recently. CBG is not as common as THC or CBD. The medical potential of CBG is thought to be helpful with inflammation, glaucoma, and even slowing cancer from spreading.

190. Defendants falsely and deceptively promote terpenes—the aromatic compounds in cannabis that create its distinctive aroma—as having their own therapeutic properties or supporting other cannabinoids by amplifying their effect. However, terpenes are physiologically inert and have no known medical applications.

As an example, GTI brand Rise's website has contained the following content at times relevant to this Complaint:

## RISE LOVES TERPENES

The most unique trait of RISE Dispensaries is their respect and love of terpenes. They understand that terpenes are a vital part of a person's medication regimen, so they label each product with the batch-specific percentages of the dominant cannabinoids, like THC, CBD, and CBN, as well as the dominant terpene percentages! That way a patient can take away some of

83

## HOW DO TERPENES INTERACT WITH THE HUMAN BODY?

Terpenes in cannabis are more than just contributors to its aromatic profile; they play a significant role in how the plant interacts with the human body. These natural compounds, while small, play a substantial role in shaping our experience with cannabis, not just in what we smell or taste, but in how they resonate with our internal systems.

Beta-caryophyllene is a unique terpene known for directly interacting with the **endocannabinoid system (ECS)** by binding to the CB2 receptor. This interaction offers potential anti-inflammatory benefits. Other terpenes, while not directly engaging with the ECS as beta-caryophyllene does, contribute to the overall therapeutic properties of cannabis. **[Source]**

Terpenes also influence the brain's neurotransmitter systems, interacting with receptors that regulate mood and emotional states. **[Source]**

For instance, linalool is known for its calming effects, potentially affecting GABA receptors. **[Source]**

Limonene, with its citrus scent, may impact mood and stress levels through serotonin and dopamine. **[Source]**

Some terpenes mimic natural opioids, offering pain relief, while others like pinene and humulene show anti-inflammatory properties. This multifaceted interaction highlights the importance of terpenes in cannabis consumption, affecting mood regulation, pain perception, and inflammatory responses. **[Source]**

As research continues, especially with human studies, our understanding of these compounds and their potential health benefits is expected to deepen.

As an example, Cresco brand Sunnyside's website has contained the following content at times relevant to this Complaint:

## What Are Terpenes In Weed?

Embarking on an exploration of the world of terpenes unravels a tapestry of aromatic compounds, each playing a role in shaping the cannabis experience. Beyond their enticing aroma, these terpenes significantly influence the effects associated with various strains. Let's delve into a more detailed examination of the most common terpenes found in cannabis:



84

As an example, Verano's website has contained the following content at times relevant to this Complaint:



## Makes sense. So what's a terpene?

**Terpenes**, like cannabinoids, are chemical compounds in cannabis plants (and all plants, for that matter). Terpenes contribute to the aroma and flavor of different cannabis strains and work in tandem with cannabinoids to enhance their impact on the endocannabinoid system. Some terpenes you might hear about (and their associated tastes) are myrcene (earthy, musky), a-pinene (you guessed it, pine), b-Caryophyllene (woody, herbal), limonene (citrus), linalool (lavender), and nerolidol (floral). In addition to comprising the complex flavor profiles in different cannabis strains, terpenes also provide a whole host of health benefits, ranging from bronchodilation to memory retention. And, of course, many hybrid strains are bred to offer specific aromas and therapeutic effects.

191.     Defendants falsely and deceptively promote hundreds of their products as "good for", "great for", "aiding," "helping with," "treating" "alleviating," and/or "relieving" various mental health disorders. The promotions and product descriptions provide no citation or basis substantiating these claims nor any explanation as to how it is that the specific product being promoted uniquely or more effectively treats the referenced medical disorder when compared to other products.

As an example, GTI brand Rise's website has contained the following content at times relevant to this Complaint:



**$14.00** ~~$20.00~~
◇ 30% off - Nature's Grace Brands

−  1  +     **Add to Cart**

**DESCRIPTION**                                                                −

THC: 100mg | CBD: 100mg
--
NGW 10 piece chocolate bars are an Illinois cannabis staple. We like to have fun with our bars and we hope that
everyone else does too! Each break-apart piece is filled with 10mg of THC, 10mg CBG, & 10mg CBD. Sweet and wholesome French Toast flavors will promote the cozy feelings you will experience with this bar. CBG is said to reduce inflammation, have anti-anxiety effects, relieve nerve-related pain, and even possibly help to prevent cognitive decline. It has been reported to be beneficial to those suffering from cancer, tumors, appetite loss, Glaucoma, Huntington's Disease, bacterial infections, and inflammatory bowel disease. CBD has been reported to help with conditions such as anxiety, depression, PTSD, pain, arthritis, and some types of epilepsy. Unlike over-the-counter CBD, ours is cannabis-derived, trusted, and tested.

85



**DESCRIPTION**                                                    –

AlphaPinene: 0.4mg/g | BetaCaryophyllene: 5.76mg/g | BetaMyrcene: 3.54mg/g | BetaPinene: 0.57mg/g | Bisabolol: 1.3mg/g | CaryophylleneOxide: 0.22mg/g | Humulene: 2.1mg/g | Limonene: 4.4mg/g | Linalool: 2.7mg/g | THC: 28.54% | THC9: 1.06% | THCA: 31.34%

--

Grown in Fleur's Clean Green Certified® organic no-till living soil, Pixie Stix was created through crossing the delicious Grape Pie X Sherbet BX1 strains. If you're wondering what this bud tastes like, the name gives you every hint that you need. Pixie Stix packs a super sugary and sweet fruity candy flavor with touches of sour citrus and creamy vanilla cookies. The aroma is very similar, with a sugary vanilla cookie overtone accented by super sour citrus and sugary red fruits. The Pixie Stix high will hit you quickly, beginning as a tingle in the head that numbs the brain and eases away any mental aches or pains. This tingle will soon begin to spread throughout the rest of your body, helping you to stretch out and settle down in a state of pure relaxation that can be buzzy and arousing at times. A sedative feeling wraps everything up, allowing you to get to sleep if you need to. Combined with its high THC level, these effects make Pixie Stix a great choice for treating chronic stress, chronic pain, PTSD, neuropathy or nerve pain, depression and insomnia. This bud has oversized and super dense, spade-shaped forest green nugs with dark leaves, lots of thin light amber hairs and tiny, amber-tinted white crystal trichomes.

As an example, Verano brand Zen Leaf Dispensaries' website co has contained the following content at times relevant to this Complaint:



**Funnelcake [14.15g]**
Savvy
Smalls

🏷 20% OFF Savvy
**$96.00** ~~$120.00~~

| Each |
| --- |

—  Qty: 1  +                     **Add to Bag**

**Details**

| Hybrid<br>Lineage | 20.3%<br>THC ⓘ | 0.1%<br>CBD ⓘ |
| --- | --- | --- |
| 14.15g | | |

**Description**
AlphaPinene: 0.12% | BetaCaryophyllene: 0.76% | BetaMyrcene: 0.08% | BetaPinene: 0.12% | Bisabolol: 0.1% | CaryophylleneOxide: 0.01% | CBD: 0.05% | CBDa: 0.05% | Humulene: 0.21% | Limonene: 0.61% | Linalool: 0.21% | THC: 20.3% | THC9: 0.49% | THCA: 22.6%
--
Stash this for your next sesh. Savvy cannabis flower is your wallet's new preferred brand in quantities that are easy to save or savor for later.
--
With a gassy yet subtly sweet aroma, Funnelcake offers a blissful combination of carefree feelings and physical calmness while sparking creativity and imagination. This potent hybrid is known for providing overall elevation in mood and can be great for depression or anxiety.

For example, Verano brand Zen Leaf Dispensaries' website contains the following content:



As an example, Cresco Cannabis's website has contained the following content at times relevant to this Complaint:



87

As an example, Cresco brand Sunnyside's website has contained the following content at times relevant to this Complaint:



192. Defendants also use social media as an integral forum to market cannabis as therapeutic or having health benefits. One study found that social media was the number one source of advertising for adolescents and adults in Canada and the United States.

For example, the following X posts by Cresco provide:



For example, the following Facebook post by GTI brand Rise provides:



As an example, the following X post by Cresco brand Sunnyside provides:



As an example, the following Facebook post by Verano provides:

Touch the sky 🟥

Each bottle of Avexia™ #PainRelief lotion is filled with
100mg THC & 100mg CBD cannabis oil blended with
menthol, olive oil, cacao butter.

🧴 💊And there's more - With vitamin E, ginger, and rosemary essential oils, this silky smooth lotion is specifically engineered to take on pain.

193. Defendants are using social media to widely disseminate false or misleading health claims in interactive ways through "live stream" events featuring Q&A's with "experts."

As an example, the following Facebook post from GTI brand Rise provides:



As an example, the following Facebook post from Verano's MÜV Dispensary provides:



194. Numerous studies have substantiated the fact that the cannabis industry, including but not limited to, the Defendants, routinely and systematically advertises their products as healthy, medicinal, and therapeutic to reduce harm perceptions and drive initiation and continued use. One study found that nearly 62.8% of Las Vegas dispensaries surveyed posted some unsubstantiated health claim, most often indicating physical or mental health benefits.

195. Another study investigating the marketing tactics being used on cannabis dispensary websites in Arizona, California, Colorado, Illinois, Michigan, Montana, Nevada, New Mexico, Oregon, and Washington found that 67% made health claims pertaining to medical conditions that could be treated by their cannabis products.

196. A study surveying the Facebook and X posts of every recreational cannabis dispensary in Illinois found that nearly 11% of all posts contained a health claim.

197. Defendants' false and deceptive marketing is not confined to product descriptions, websites, blog posts, and social media. Rather, Defendants, including through their employees and agents engage in rampant, systematic, and daily misrepresentations about the medical and therapeutic benefits of their cannabis products through direct, personal interactions with customers at dispensaries they own and operate across the country. These misrepresentations occur regularly in the form of in-store conversations with "budtenders," online chat features on Defendants' websites, and telephone

consultations. Class members are routinely and repeatedly recommended to use Defendants' products to treat or relieve serious medical and health disorders, including PTSD, depression, anxiety, glaucoma, and pain.

198. One 2024 study involving mystery shoppers posing as new users at dispensaries in Las Vegas found that nearly all retailers endorsed use of cannabis to treat anxiety, insomnia, and/or pain

### F. Summary of Defendants' Untrue, False, and Misleading Statements

199. Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions in all states in which they operate. At all times relevant to this Complaint and in all states in which they operate, Defendants, made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to consumers to promote the sale and use of cannabis in all states in which they operate. The many, material and untrue, false, and/or misleading statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns, television and radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These many untrue, false, and/or misleading statements permeated the cannabis market in all states in which Defendants operated. Defendants' omissions and misrepresentations alleged in this complaint occurred during time periods relevant to this complaint. These untrue, false, and/or misleading statements include, but were not limited to:

a. Defendants falsely claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Defendants falsely claiming or implying that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

c. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

93

e. Defendants falsely claiming or implying that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

f. Defendants falsely claiming or implying that there is credible scientific or medical evidence or scholarship establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

## V. INTERSTATE AND INTRASTATE COMMERCE

200. Defendants' conduct as alleged herein has had a substantial effect on both interstate and intrastate commerce. At all material times, Defendants participated in the manufacture, marketing, promotion, distribution, and sale of substantial amounts of cannabis products in a continuous and uninterrupted flow of commerce across state and national lines and throughout the United States. Defendants' conduct also had significant intrastate effects, as cannabis products were advertised and sold in each identified state impacting at least thousands of individuals in every jurisdiction. As a direct result of Defendants' fraudulent, deceptive, and unfair conduct, Plaintiffs and class members in each identified state purchased cannabis products that they otherwise would not have purchased or paid more for such products than they would have absent such unlawful conduct.

94

## VI. CLASS ALLEGATIONS

201. Plaintiffs bring this action on behalf of themselves and, under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), as representatives of classes defined as follows:

### A. Cresco Multi-State Class

202. All natural persons who purchased in Arizona, Massachusetts, Michigan, New York, and Ohio within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Cresco from a recreational or adult-use dispensary, market, shop, store, online or other retail platform. On behalf of the Cresco Multi-State Class, Plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, for which federal law governs, and state-law claims for which Illinois law governs because Defendant Cresco's principal place of business is in Illinois.

### B. Cresco State Subclasses

203. As an alternative or in addition to the Multi-State Class, Plaintiffs allege a separate class for each State set forth below upon the applicable laws set forth in the alternate state law counts. Each class is defined as follows for the claims asserted under a particular jurisdiction's law:

 b. Arizona Subclass is defined as:

  All natural persons who purchased in Arizona within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Cresco from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

 c. Massachusetts Subclass is defined as:

  All natural persons who purchased in Massachusetts within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for

95

sale by Defendant Cresco from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

d. Michigan subclass is defined as:

All natural persons who purchased in Michigan within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Cresco from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

e. New York Subclass is defined as:

All natural persons who purchased in New York within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Cresco from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

f. Ohio Subclass is defined as:

All natural persons who purchased in Ohio within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Cresco from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

## C. GTI Multi-State Class

204. All natural persons who purchased in Arizona, Connecticut, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Ohio, Rhode Island, and Virginia within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform. On behalf of the GTI Multi-State Class, Plaintiffs

assert a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.,* for which federal law governs, and state-law claims for which Illinois law governs because Defendant GTI's principal place of business is in Illinois.

### D. GTI State Subclasses

205. As an alternative or in addition to the Multi-State Class, Plaintiffs allege a separate class for each State set forth below upon the applicable laws set forth in the alternate state law counts. Each class is defined as follows for the claims asserted under a particular jurisdiction's law:

a. Connecticut Subclass is defined as:

All natural persons who purchased in Connecticut within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

b. Maryland Subclass is defined as:

All natural persons who purchased in Maryland within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

c. Massachusetts Subclass is defined as:

All natural persons who purchased in Massachusetts within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

d. Michigan Subclass is defined as:

97

All natural persons who purchased in Michigan within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

e. Minnesota Subclass is defined as:

All natural persons who purchased in Minnesota within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

f. Nevada Subclass is defined as:

All natural persons who purchased in Nevada within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

g. New Jersey Subclass is defined as:

All natural persons who purchased in New Jersey within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

h. New York Subclass is defined as:

All natural persons who purchased in New York within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for

98

sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

i.   Ohio Subclass is defined as:

All natural persons who purchased in Ohio within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

j.   Rhode Island Subclass is defined as:

All natural persons who purchased in Rhode Island within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

k.   Virginia Subclass is defined as:

All natural persons who purchased in Virginia within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant GTI from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

**E.   Verano Multi-State Class**

206.   All natural persons who purchased in Arizona, Connecticut, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, and Ohio within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform. On behalf of the Verano Multi-State Class, Plaintiffs assert a claim under the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., for which federal law governs, and state-law claims for which Illinois law governs because Defendant Verano's principal place of business is in Illinois.

**F.      Verano State Subclasses**

207.     As an alternative or in addition to the Multi-State Class, Plaintiffs allege a separate class for each State set forth below upon the applicable laws set forth in the alternate state law counts. Each class is defined as follows for the claims asserted under a particular jurisdiction's law:

a.   Arizona Subclass is defined as:

All natural persons who purchased in Arizona within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

b.   Connecticut Subclass is defined as:

All natural persons who purchased in Connecticut within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

c.   Maryland Subclass is defined as:

All natural persons who purchased in Maryland within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

d.   Massachusetts Subclass is defined as:

100

All natural persons who purchased in Massachusetts within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

e. Michigan Subclass is defined as:

All natural persons who purchased in Michigan within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

f. Nevada Subclass is defined as:

All natural persons who purchased in Nevada within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

g. New Jersey Subclass is defined as:

All natural persons who purchased in New Jersey within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

h. Ohio Subclass is defined as:

All natural persons who purchased in Ohio within the applicable limitations period one or more cannabis products manufactured, distributed, sold, or offered for sale by

Defendant Verano from a recreational or adult-use dispensary, market, shop, store, online or other retail platform.

### G. Class Exclusions

208. The following persons and entities are excluded from the proposed classes: Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case; and any persons who filed claims against Defendants for personal injuries as a result of Defendants' conduct, including physical injury, illness, or death.

### H. Rule 23 Prerequisites

209. Each member of the proposed class meets the requirements of Federal Rules of Civil Procedure 23(a), (b)(2), and/or (c)(4).

210. The members of each class are so numerous that joinder is impracticable. Each class includes at least thousands of members. Members of the classes are widely dispersed throughout the country and/or each respective state.

211. Plaintiffs' claims are typical of the claims of all class members. Plaintiffs' claims arise out of the same common course of conduct that gives rise to the claims of the other class members. Plaintiffs and all class members were and will continue to be damaged by the same wrongful conduct.

212. Certifying class members would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness. Class certification would also allow Plaintiffs to overcome the impediment of otherwise small individual recoveries that would substantially disincentivize bringing this suit on their own.

213.    Plaintiffs will fairly and adequately protect and represent the interests of the classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the classes.

214.    Plaintiffs are represented by counsel who are experienced and competent in the prosecution of class action litigation and have particular expertise with consumer class actions.

215.    Questions of law and fact common to members of each class will predominate over any questions that may affect only individual class members because Defendants have acted on grounds generally applicable to members of the classes.

216.    Class treatment is a superior method for fair and efficient adjudication of the controversy because, among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in a similar forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism substantially outweigh any difficulties that may arise in the management of this class action.

217.    Class treatment is also manageable, and Plaintiffs know of no management difficulties that would preclude class certification in this case.

218.    All of Defendants' cannabis products are materially identical for purposes of the injuries alleged. Every product manufactured, distributed, sold, or offered for sale by Defendants regardless of brand or form (flower, pre-rolls, vapes, edibles, topicals, concentrates), or potency is derived from the cannabis plant and contains the same psychoactive compound ($\Delta$9-THC).

219.    The core misrepresentations and omissions at issue in this case, that these products are safe, non-addictive, therapeutic, and capable of treating or relieving PTSD, depression, anxiety, glaucoma, pain, and other conditions, apply uniformly to Defendants' entire product line. While the concentration of $\Delta$9-THC may vary across products and may pose a greater or lesser degree of risk

depending on potency, all of Defendants' products nevertheless pose the same fundamental category and type of risk arising from the presence of Δ9-THC. The health risks (schizophrenia, psychosis, exacerbation of mental illness, cardiovascular events, cannabis use disorder, etc.) likewise flow directly from the presence of Δ9-THC and are not unique to any particular brand, strain, formulation, or concentration level.

220. Because the deceptive marketing scheme, the omissions of material safety information, and the resulting economic injuries are identical across all of Defendants' cannabis products, the named Plaintiffs' injuries are fairly traceable to Defendants' uniform conduct and are substantially similar in all material respects to the injuries suffered by purchasers of any other Defendant product.

221. Plaintiffs reserve the right to seek to certify common questions related to Defendants' knowledge, conduct, products, and duties.

## VII.     CAUSES OF ACTION MULTI-STATE CLASSES

222. Except as otherwise noted, Plaintiffs bring each of the claims in this Section on behalf of the Multi-State Class.

### COUNT I
### RICO Violation

223. Plaintiffs and class members re-allege and incorporate by reference each and every allegation in all preceding paragraphs of this Complaint as though fully set forth herein.

224. This is a civil action for damages and other relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, arising from Defendants' operation of, participation in, and conspiracy to operate and participate in an enterprise and association-in-fact enterprise engaged in a pattern of racketeering activity. Defendants' racketeering activity includes, among other things, dealing in controlled substances prohibited by federal law; fraudulent

104

marketing schemes; misrepresentations; and systematic deception of consumers concerning the safety, addictiveness, and purported medical utility of cannabis products. Such actions were done in part to increase the market price and increase or otherwise ensure the sales of Defendants' products.

225. At all times relevant to this Complaint, the enterprise described below was engaged in, and its activities affected, interstate and foreign commerce, including through the manufacturing, marketing, distribution, and sale of cannabis products to consumers across multiple states, and through interstate communications used to promote those products.

226. Cresco Labs, Green Thumb, Verano Holdings, and Verano LLC, together with their respective subsidiaries and affiliated entities, officers, employees, agents, and other persons and entities known and unknown, associated together for the common purpose of manufacturing, marketing, distributing, and selling cannabis products throughout the United States while systematically concealing and misrepresenting the known health risks of those products and while falsely promoting cannabis products as safe, medicinal, and therapeutic (the "Enterprise").

227. The Enterprise constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4). The Enterprise is an ongoing organization whose members function as a continuing unit with relationships among those associated with the Enterprise and with a shared purpose and course of conduct directed at expanding cannabis sales, market price, and industry profits by promoting a false public narrative that cannabis products are safe, non-addictive, therapeutic, and medicinal, while suppressing or minimizing material health-risk information known to Defendants.

228. Upon information and belief, the Enterprise's coordinated conduct includes, among other things, Defendants' participation in common trade associations and industry groups, including the American Trade Association for Cannabis and Hemp ("ATACH")[27], through which Defendants

---

[27] ATACH's website states that one of the problems it seeks to solve is "Consumer Mistrust."

105

advance shared goals of expanding cannabis markets, resisting health warnings, and coordinating industry-wide marketing and messaging strategies coordinating to increase or otherwise ensure sales, and coordinating to increase the market price of Defendants' products.

229.    Upon information and belief, the Enterprise's coordinated conduct further includes Defendants' deployment of materially similar marketing strategies across their platforms, including the shared use of pseudo-scientific terminology; the false categorization of products by "strain" (including "indica," "sativa," and "hybrid"); and the practice of marketing cannabis as a treatment for mental health disorders including PTSD, depression, and anxiety, in each instance to cultivate consumer demand while minimizing or omitting material health-risk information.

230.    Upon information and belief, Defendants also sponsor, promote, and rely upon a shared body of methodologically flawed and industry-funded research to support health and therapeutic claims about cannabis, while suppressing, omitting, and failing to disclose well-established scientific evidence of serious adverse health effects of cannabis. Those concealed or minimized risks include, among other things, addiction, psychosis, schizophrenia, bipolar disorder, suicidal ideation, depression, anxiety, adverse cardiovascular events, cannabis hyperemesis syndrome, cannabis use disorder, and prenatal harm.

231.    Upon information and belief, Defendants further disseminate materially similar health-related messages through substantially similar marketing channels, including websites, social media platforms, email campaigns, and influencer endorsements, and coordinate efforts to expand market access for cannabis products, to the detriment of consumers, including Plaintiffs and class members.

232.    The Enterprise has an ascertainable structure separate and apart from the individual acts constituting the pattern of racketeering activity. Defendants' association with one another

106

within the Enterprise is evidenced by, among other things, their overlapping state-market participation, their common membership and active participation in ATACH and similar cannabis industry organizations through which they coordinate messaging and share promotional plans, and the longevity of the Enterprise, which has existed for a period sufficient for Defendants to pursue and accomplish the Enterprise's purpose.

233. Each Defendant named herein is a "person" within the meaning of 18 U.S.C. § 1961(3). Each Defendant is distinct from the Enterprise, and each Defendant has conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

234. Defendants' pattern of racketeering activity consists of multiple related predicate acts committed over an extended period of time, which are related to each other and amount to or pose a threat of continued criminal activity, all directed at Plaintiffs and class members and undertaken to profit from the marketing, increased market price, promotion, distribution, and sale of cannabis products through deception regarding legality, safety, addictiveness, and purported medical utility and as otherwise described herein.

235. Defendants' predicate acts constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) and include, among other things, (a) dealing in a controlled substance punishable under federal law, including the manufacture, distribution, dispensing, and sale of cannabis products, which Defendants knew or should have known were illegal under federal law; (b) mail fraud, in violation of 18 U.S.C. § 1341, through the use of the United States mail to facilitate the marketing and sale of cannabis products and to disseminate false or misleading statements and omissions concerning the legality, safety, addictiveness, and therapeutic value of cannabis products; (c) wire fraud, in violation of 18 U.S.C. § 1343, through the use of interstate

107

wire communications, including email, digital advertising, marketing campaigns, and public statements, to disseminate false or misleading statements and omissions concerning the legality, safety, addictiveness, and therapeutic value of cannabis products; and (d) monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957, including, upon information and belief, engaging in monetary transactions of $10,000 or more using property derived from specified unlawful activity, including the unlawful dealing in cannabis and the foregoing fraud-based conduct.

236. As part of and in furtherance of Defendants' racketeering activity, Defendants misrepresented and omitted material facts through marketing and advertising to convey that their cannabis products were safe and legal for consumers; misrepresented that their cannabis products complied with federal laws and regulations; and failed to disclose material facts regarding known or foreseeable risks, including risks of addiction, psychosis, bipolar disorder, depression, suicidal ideation, and anxiety, while affirmatively marketing products to "patients," including those with mental health vulnerabilities.

237. Defendants' predicate acts were not isolated, sporadic, or accidental. They were repeated, related, and coordinated acts undertaken pursuant to the Enterprise's common purpose of maximizing cannabis sales and profits by expanding consumer demand through deception and by reducing the likelihood that consumers would refrain from purchase or pay less due to concerns about legality, safety, addictiveness, and health risks.

238. By reason of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs and class members were injured in their business or property. As a direct and proximate result of Defendants' racketeering activity, Plaintiffs and class members suffered economic injury, including losses from the purchase of Defendants' unlawfully marketed and illegal cannabis products. But for Defendants'

108

racketeering activity, Plaintiffs and class members would not have purchased cannabis products from Defendants, or would have paid substantially less for such products.

239. Plaintiffs and class members are therefore entitled to recover treble damages and attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c), together with such other relief as the Court deems proper.

240. In violation of 18 U.S.C. § 1962(d), each Defendant further conspired and agreed with the other Defendants and with other persons and entities, both known and unknown, to violate 18 U.S.C. § 1962(c). Each Defendant knew of, and agreed to, the overall objective of the conspiracy, including the commission of at least two predicate acts constituting a pattern of racketeering activity. The existence of the conspiracy is demonstrated by, among other things, the parallel and coordinated nature of Defendants' conduct; their common membership in ATACH and other trade and public relations organizations through which they developed, refined, and propagated their shared marketing strategy and promotional plans; their materially similar public messaging and suppression of health warnings; and their shared financial interest in expanding the cannabis market through deceptive means.

241. Each Defendant committed overt acts in furtherance of the conspiracy, including, among other things, the predicate acts of mail fraud, wire fraud, and dealing in controlled substances as described herein, as well as the use and reinvestment of proceeds derived from those unlawful activities to continue the Enterprise's operations and expand the reach of the challenged marketing, promotion, and sales practices.

242. As a direct and proximate result of Defendants' racketeering and conspiracy described herein, Plaintiffs and class members suffered injury in their business or property,

including economic losses from the purchase of Defendants' unlawfully marketed, priced, and illegal cannabis products.

243. WHEREFORE, Plaintiffs and class members respectfully request that the Court enter judgment in their favor and against Defendants and award relief including: (a) threefold the damages sustained by the Plaintiffs and class members in an amount to be determined at trial, together with pre- and post-judgment interest as provided by law; (b) such equitable and injunctive relief as may be available pursuant to 18 U.S.C. § 1964(a) to enjoin Defendants from continuing the unlawful acts, practices, and schemes alleged herein; (c) disgorgement, restitution, and other equitable monetary relief to the extent available; (d) reasonable attorneys' fees, costs, and expenses of litigation as provided by 18 U.S.C. § 1964(c); (e) certification of this action as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiffs as class representatives and their counsel as class counsel; and (f) such other and further relief as the Court deems just and proper.

## COUNT II
### Illinois Consumer Fraud and Deceptive Business Practices Act Violation[28]

244. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

245. Pursuant to 815 ILCS 505/2:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact …are hereby declared unlawful whether any person has in fact been misled, or damaged thereby.

---

[28] The substantive law of Illinois may apply to all multi-class claims. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ("Subject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class").

246.     Defendants have engaged in unlawful, deceptive, and unfair business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), as set forth above.

247.     Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions.  At all times relevant to this Complaint, Defendants, violated the ICFA by making and disseminating untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to Illinois consumers to promote the sale and use of their cannabis products.  The countless, material and untrue, false, and/or misleading statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns, television and radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These untrue, false, and/or misleading statements include, but were not limited to:

a.  Defendants falsely claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis  products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Defendants falsely claiming or implying that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

c. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e. Defendants falsely claiming or implying that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events or CHS.

f. Defendants falsely claiming or implying that there is credible scientific or medical evidence or scholarship establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events or CHS.

248. Defendants' marketing and advertisements for and labeling and packaging of their cannabis products concealed and failed to adequately disclose or warn of the facts that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and anxiety, and/or cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

249. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

250. Defendants' conduct was unfair and unconscionable in that it included: a) the manufacture, sale, and marketing of products that are illegal under federal law and cause and/or exacerbate serious and debilitating mental health conditions; and b) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under the Cannabis Regulation and Tax Act; offends public policy; was immoral, unethical, oppressive, and unscrupulous; was part of a pattern of sales conduct that

would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

251. Defendants' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, cause confusion or misunderstanding to reasonable consumers including the Plaintiffs and class members. Reasonable consumers, including the Plaintiffs and class members, would have found it material to their purchasing decisions that: a) Defendants' cannabis products were not therapeutic or medicinal in the manner represented and could not treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, depression, and anxiety and/or other medical disorders, including, but not limited to pain and glaucoma; b) there is no credible medical or scientific evidence or scholarship that supports that Defendants' cannabis products have medicinal or therapeutic properties as represented by Defendants and/or can treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, depression, and anxiety and/or other medical disorders, including, but not limited to pain and glaucoma; c) certain of Defendants' cannabis products do not uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma when compared to other cannabis products; and d) Defendants' cannabis products cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and anxiety; adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

252. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' decisions to purchase cannabis products.

253. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

254. Defendants knew or should have known that their misrepresentations and omissions were false and misleading and intended for consumers, including Plaintiffs and class members, to rely on such misrepresentations and omissions.

255. Defendants' conduct actually and proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

256. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants'

cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to disgorge their ill-gotten profits; (d) prohibiting Defendants from making any further misrepresentations or omissions regarding the medicinal, health, or therapeutic benefits of cannabis or cannabis products; (e) requiring Defendants to adequately warn consumers in Illinois of their cannabis products' dangers, especially the dangers to users' mental and physical health; (f) requiring Defendants to pay the costs of the suit, including attorneys' fees; (g) prejudgment interest; and (h) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## Count III
### Negligence - Unlawful Advertising in Violation of the Illinois Cannabis Tax and Regulation Act, 410 ILCS 705/55-20

257. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs of this Complaint as if they were fully set forth herein.

258. Pursuant to 410 ILCS 705/55-20, "[n]o cannabis business establishment nor any other person or entity shall engage in advertising that contains any statement or illustration that…makes any health medicinal, or therapeutic claims about cannabis or cannabis-infused products."

259. Pursuant to 410 ILCS 705/1-10, "advertise" means to "engage in promotional activities including, but not limited to: newspaper, radio, Internet and electronic media, and television advertising; the distribution of fliers and circulars; billboard advertising; and the display of window and interior signs."

260. Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of their cannabis products through a pervasive pattern of

116

false and misleading statements and omissions. At all times relevant to this Complaint, Defendants made numerous statements regarding the health, medicinal, and therapeutic benefits of cannabis.

261. These statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns, television and radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These statements included, but were not limited to: Defendants claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

262. Plaintiff and class members are members of the class for whose benefit section 705/55-20 was passed.

263. A private right of action is consistent with the purposes of the CRTA.

264. Plaintiff's injury is one the CRTA was designed to prevent and enforcing this section through a private right of action is necessary to provide an adequate remedy for Defendants' violations.

265. Plaintiffs and class members allege that Defendants committed intentional fraudulent misrepresentation by knowingly making false health, medicinal, and therapeutic claims about their cannabis products. These material misrepresentations caused Plaintiffs and class members to

117

justifiably rely and suffer economic losses allowing tort recovery under the intentional misrepresentation exception to Illinois' economic loss rule.

266.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**<u>COUNT IV</u>**
**Negligent Misrepresentation**

267.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs of this Complaint as if they were fully set forth herein.

268.    Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of their cannabis products through a pervasive pattern of false and misleading statements and omissions. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to Illinois consumers to promote the sale and use of cannabis. The many, material and untrue, false, and/or misleading statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns,

118

television and radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These untrue, false, and/or misleading statements include, but were not limited to:

a. Defendants falsely claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Defendants falsely claiming or implying that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, than other cannabis products.

c. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or

119

therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, than other cannabis products.

e. Defendants falsely claiming or implying that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

f. Defendants falsely claiming or implying that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

269. Defendants' marketing and advertisements for and labeling and packing of their cannabis products concealed and failed to adequately disclose or warn of the facts their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and anxiety and/or cause or contribute to adverse cardiovascular events, CHS, and/or cause cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

270. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

271. Defendants were careless or negligent in determining the truth of the above statements and/or omissions.

272. At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

273. Plaintiffs and class members did rely on these statements and/or omissions when purchasing cannabis products.

274. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

275. Defendants' motive of increasing profits at the expense of the mental health of vulnerable people was morally wrong and the acts showed a reckless disregard for the rights of Plaintiffs and class members.

276. Defendants' conduct actually and proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

277. Plaintiffs and class members allege that Defendants committed intentional fraudulent misrepresentation by knowingly making false health, medicinal, and therapeutic claims about their cannabis products. These material misrepresentations caused Plaintiffs and class members to

121

justifiably rely and suffer economic losses allowing tort recovery under the intentional misrepresentation exception to Illinois' economic loss rule.

278.    WHEREFORE, Plaintiffs and class members respectfully request that this Court enter judgment in their favor and against Defendants and award relief including: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; and (d) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT V
### Strict Liability

279.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs of this Complaint as if they were fully set forth herein.

280.    At all relevant times, Defendants sold to Plaintiffs and class members cannabis products in a defective condition that were unreasonably dangerous to Plaintiffs and class members as consumers.  Defendants' cannabis products had and have a "marketing defect" in that they failed to adequately warn Plaintiffs and class members as consumers that their products can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, depression, and anxiety and cause and/or contribute to adverse cardiovascular events, CHS, and cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

281. The danger was not obvious or generally appreciated by Plaintiffs and class members, and the magnitude of the danger outweighs the utility of the products as designed.

282. The lack of an adequate warning existed at the time Defendants' cannabis products left Defendants' control and were purchased by Plaintiffs and class members.

283. Defendants knew or should have known that their cannabis products caused, contributed to, or exacerbated mental health disorders such as schizophrenia, psychosis, bipolar disorder, depression, and anxiety and/or caused or contributed to adverse cardiovascular events, CHS, and/or cannabis use disorder and/or posed significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

284. Instead of adequately warning Plaintiffs and class members, Defendants knowingly misrepresented cannabis products as safe, therapeutic, or medicinal.

285. As a proximate result of Defendants' failure to adequately warn of the mental health dangers of their products, Plaintiffs and class members have suffered damages in an amount to be determined at trial, in that, among other things, they purchased and paid for products that they otherwise would not have purchased or overpaid for Defendants' cannabis products.

286. Defendants motive of increasing profits at the expense of the mental health disorders of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

287. Plaintiffs' and class members' claims are not barred by the economic loss rule because Defendants fraudulently misrepresented and concealed material health risks associated with their cannabis products—an established exception under Illinois law.

288.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; and (e) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VI
### Negligence

289.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs of this Complaint as if they were fully set forth herein.

290.    Defendants had a non-delegable duty of care to Plaintiffs and class members to cultivate, manufacture, transport, and sell reasonably safe products and/or adequately warn consumers of a product's dangerous propensity of which the average consumer would not be aware.

291.    At all relevant times, Defendants sold to Plaintiffs and class members cannabis products that were unreasonably dangerous to Plaintiffs and class members as their products cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, depression, and anxiety, and cause and/or contribute to adverse cardiovascular events, CHS, and cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

292.    Defendants breached their duty to Plaintiffs and class members by failing to adequately warn Plaintiffs and class members of these dangers.

124

293. Defendants knew or should have known that their cannabis products caused, contributed to, and/or exacerbated mental health disorders such as schizophrenia, psychosis, bipolar disorder, depression, and anxiety, and caused and/or contributed to adverse cardiovascular events, CHS, and cannabis use disorder, and/or posed significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

294. Instead of adequately warning Plaintiffs and class members, Defendants knowingly misrepresented cannabis products as safe, therapeutic, or medicinal.

295. As a proximate result of Defendants' failure to adequately warn of the mental health dangers of their product, Plaintiffs and class members have suffered damages in an amount to be determined at trial, in that, among other things, they purchased and paid for products that they would not have purchased if they had known of the mental health dangers or overpaid for Defendant's cannabis products.

296. Defendants' motive for increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

297. Plaintiffs' and class members' claims are not barred by the economic loss rule because Defendants fraudulently misrepresented and concealed material health risks associated with their cannabis products—an established exception under Illinois law.

298. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants'

125

misrepresentations and omissions; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; and (e) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VII
### Breach of Express Warranty

299.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs of this Complaint as if they were fully set forth herein.

300.    Pursuant to 810 ILCS 5/2-313:

(1) Express warranties by the seller are created as follows:

(a)    Any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise.

(b)    Any description of the good which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description….

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have specific intention to make a warrant.

301.    Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to warranties that cannabis, any constituent part of cannabis, or their cannabis products can treat, ease, alleviate, is good for, aid, or relieve or otherwise is a medicine or therapy for certain mental health disorders such as bipolar disorder, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

126

302. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that certain Defendants' cannabis products uniquely or more effectively treat, ease, alleviate, is good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

303. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis products are medicinal or therapeutic and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

304. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis products are medicinal or therapeutic and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

305. Defendants breached these warranties resulting in damages to Plaintiffs and class members who purchased Defendants' products, which did not have the purported benefits.

306. Plaintiffs complied with the terms of the express warranty, and demanded Defendants fulfill its terms, and provided notice to Defendants within a reasonable time upon discovering their breach of this express warranty.

307. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted, or on products that they would not otherwise have purchased.

308. Defendants' motive of increasing profits at the expense of the mental health disorders of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

321. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; and (e) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VIII
### Breach of Implied Warranty of Merchantability

322. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs of this Complaint as if they were fully set forth herein.

323. Pursuant to 810 ILCS 5/2-314:

> (1) Unless excluded or modified (Section 2-316 [810 ILCS 5/2-316]), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

128

(2) Goods to be merchantable must be at least such as
      (a) pass without objection in the trade under the contract description; and
      (b) in the case of fungible goods, are of fair average quality within the description; and
      (c) are fit for the ordinary purposes for which such goods are used; and
      (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
      (e) are adequately contained, packaged, and labeled as the agreement may require; and
      (f) conform to the promises or affirmations of fact made on the container or label if any.
(3) Unless excluded or modified (Section 2-316 [810 ILCS 5/2-316]) other implied warranties may arise from course of dealing or usage of trade.

324. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the ordinary purpose for which they would be used. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to dangers of psychosis, bipolar disorder, suicidal ideation, depression, and anxiety and/or an adverse cardiovascular event, CHS, and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health

129

disorders such as bipolar disorder, depression, and anxiety and or other medical conditions, including, but not limited to pain and glaucoma.

325. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

326. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

327. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

328. Plaintiffs and class members provided Defendants with notice of the breach of implied warranty within a reasonable time after discovering, or when they should have discovered, the above-mentioned breaches.

329. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or products that they would not otherwise have purchased.

330. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

331. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; and (e) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT IX
## Common Law Fraud

332. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

333. Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of their cannabis products through a pervasive pattern of false and misleading statements and omissions. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to Illinois consumers to promote the sale and use of cannabis. The many material and untrue, false, and misleading statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns, television and

131

radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These untrue, false, and/or misleading statements include, but were not limited to:

a. Defendants falsely claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Defendants falsely claiming or implying that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, than other cannabis products.

c. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or

therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, than other cannabis products.

e. Defendants falsely claiming or implying that their cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

f. Defendants falsely claiming or implying that there is credible scientific or medical evidence establishing that their cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

334. Defendants' marketing and advertisements for and labeling of their cannabis products concealed and failed to adequately disclose the facts and/or warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and anxiety and/or cause or contribute to adverse cardiovascular events and/or CHS, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

335. Defendants' conduct was unfair and unconscionable in that it included: a) the manufacture, sale, and marketing of products that are illegal under federal law and cause and exacerbate serious and debilitating mental health and other physical conditions, and b) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under the Illinois Cannabis Tax and Regulation Act; offends public policy; was immoral, unethical, oppressive, and unscrupulous; was part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

336. Defendants owed Plaintiffs and class members a duty to adequately disclose and warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and/or because Defendants made partial representations concerning the same subject matter as the omitted facts.

337. Defendants knew or had a reckless disregard for the truth that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

338. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

339. Defendants' motive of increasing profits at the expense of the mental health of vulnerable people was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

340. Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them.

341. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; and (d) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT X
**Unjust Enrichment**

342. Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of their cannabis products through a pervasive pattern of false and/or misleading statements and/or omissions. At all times relevant to this Complaint, Defendants, violated the ICFA by making and disseminating untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to Illinois consumers to promote the sale and use of

135

cannabis. The many material and untrue, false, and/or misleading statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns, television and radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These untrue, false, and/or misleading statements include, but were not limited to:

a. Defendants falsely claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Defendants falsely claiming or implying that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, than other cannabis products.

c. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as

136

bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, than other cannabis products.

e. Defendants falsely claiming or implying that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

f. Defendants falsely claiming or implying that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

343. Defendants' marketing and advertisements for and labeling and packaging of their cannabis products concealed and failed to adequately disclose the facts and/or warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as

137

schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and anxiety and/or cause or contribute to adverse cardiovascular events, cannabis use disorder and CHS, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

344.  Defendants' conduct was unfair and unconscionable in that it included: 1) the manufacture, distribution, possession, sale, and marketing of products that are illegal under federal law and that cause and exacerbate serious and debilitating mental health and other physical conditions, and 2) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under the CRTA; offends public policy; was immoral, unethical, oppressive, and unscrupulous; was part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

345.  As a result of Defendants' deceptive, false, and misleading statements and illegal claims and omissions as to the health, medicinal, or therapeutic qualities of its products and actions and many violations of the ICFA, the CRTA, and the federal Controlled Substances Act, Defendants were enriched at the expense of Plaintiffs, and class members through the payment of the purchase price for Defendants' products.

346.  Defendants requested and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for Defendants' cannabis products.

347.  There is no justification for Defendants' retention of this benefit.

348.  Defendants' retention of the benefit of these ill-gotten gains on the back of human misery and suffering caused by mental health disorders violates fundamental principles of justice, equity, and good conscience.

138

349.    Thus, it would be unjust for Defendants to retain the ill-gotten benefits that they received from Plaintiffs and class members without restitution to Plaintiffs and class members.

350.    Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

351.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to pay the Plaintiffs and class members punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; and (e) such other and further relief as this Honorable Court may deem just, proper, and equitable.

## VIII.    CAUSES OF ACTION STATE SUB-CLASSES

### A.  Violations of Arizona Law Brought on Behalf of Arizona Subclass.

352.    Plaintiffs W. Smith, Ward, Herbert, and Steele bring each of the following claims on behalf of themselves and the Arizona Subclasses under Arizona law.

### COUNT I
### Arizona Consumer Fraud Act Violation

353.    Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

354.    Pursuant to A.R.S. § 44-1522: "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any

139

merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

355. Defendants have engaged in unlawful and deceptive business practices in violation of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 *et seq.*, as set forth above.

356. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

357. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

358. Defendants' conduct was fraudulent and deceptive for all of the reasons stated herein. The misrepresentations and omissions at issue were likely cause confusion or misunderstanding to reasonable consumers including Plaintiffs and class members. Reasonable consumers, including Plaintiffs and class members, would have found it material to their purchasing decisions that: a) Defendants' cannabis products were not therapeutic or medicinal as described by Defendants and could not treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; b) there is no credible medical or scientific evidence or scholarship that supports that Defendants'

140

cannabis products are medicinal or therapeutic as described by the Defendants and/or can treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; c) certain of Defendants' cannabis products do not uniquely or more effectively treat, ease, alleviate, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety when compared to other cannabis products and/or other medical disorders, including, but not limited to, pain and glaucoma and d) Defendants' cannabis products cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

359. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' decisions to purchase cannabis products.

360. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an

unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

361. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading and intended for consumers, including Plaintiffs and class members, to rely on such misrepresentations and omissions.

362. Defendants' conduct actually and proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

363. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (c) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) prohibiting Defendants from making any further misrepresentations or omissions regarding the medicinal, health, or therapeutic benefits of cannabis or cannabis products; (g) for prejudgment interest; and (h) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### Arizona Breach of Express Warranty

364.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

365.    Pursuant to A.R.S. § 47-2313:

> (1) Express warranties by the seller are created as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise;
> (b) Any description of the good which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description
>
>                                                          ….
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant" or guarantee" or that he have specific intention to make a warrant, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

366.    Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that cannabis, any constituent part of cannabis, or their cannabis products can treat, ease, alleviate, are good for, aid, or relieve or otherwise are a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

367.    Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that certain Defendants' products uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD,

depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

368.    Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma

369.    Defendants breached these warranties resulting in damages to Plaintiffs and class members who purchased Defendants' products, which did not have the purported benefits.

370.    Plaintiffs and class members complied with the terms of the express warranty, and demanded Defendants fulfill its terms, and provided notice to Defendants within a reasonable time upon discovering their breach of this express warranty.

371.    As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value as compared to what was warranted.

372.    Defendants' motive of increasing profits at the expense of the mental health disorders of Plaintiffs and the class members was immoral and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

144

373.     WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT III
### Arizona Breach of Implied Warranty of Merchantability

374.     Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

375.     Pursuant to A.R.S. § 47-2314:

> (1) Unless excluded or modified (Section 47-2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
> (2) Goods to be merchantable must be at least such as
> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any.

145

(3) Unless excluded or modified (Section 47-2316) other implied warranties may arise from course of dealing or usage of trade.

376. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the ordinary purpose for which they would be used. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cardiovascular disease and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

377. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

378. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

146

379. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

380. Plaintiffs and class members provided Defendants with notice of the breach of implied warranty within a reasonable time after discovering, or when they should have discovered, the above-mentioned breaches.

381. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that were not fit for the ordinary purposes for which therapeutic or medicinal products are used and did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or purchased products that they would not otherwise have purchased.

382. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

383. WHEREFORE, Plaintiffs and class members seek judgment against Defendants and award relief including: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of

147

the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**COUNT IV**
**Arizona Common Law Fraud**

384. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

385. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

386. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

148

387. Defendants knew or had a reckless disregard for the truth that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

388. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

389. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

390. Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

391. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (c) awarding punitive damages; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

392.

149

## COUNT V
### Arizona Unjust Enrichment

393.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

394.    Defendants were also enriched by their marketing and advertisements for and/or labeling and packaging of their cannabis products that concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety;  cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or poses significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

395.    Defendants' conduct was unfair and unconscionable in that: 1) it included the manufacture, distribution, possession, sale, and marketing of products that are illegal under federal law and cause and exacerbate serious and debilitating mental health and other physical conditions; and 2) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under Arizona law; offend public policy; are immoral, unethical, oppressive, and unscrupulous; are part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

396.    As a result of Defendants' deceptive, false, and misleading statements and illegal claims as to the health, medicinal, or therapeutic qualities of its products and actions and many violations of the law, Defendants were enriched at the expense of consumers, Plaintiffs and class

150

members, who were impoverished through the payment of the purchase price for Defendants' products.

397. Defendants requested and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for Defendants' cannabis products.

398. There is no justification for Defendants' retention of this benefit.

399. Defendants' retention of the benefit of these ill-gotten gains on the back of human misery and suffering caused by mental health disorders violates fundamental principles of justice, equity, and good conscience.

400. Thus, it would be unjust for Defendants to retain the ill-gotten benefits that they received from Plaintiffs and class members without restitution to Plaintiffs and class members.

401. Plaintiffs and class members plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

402. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations or omissions; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**B.      Violations of Connecticut Law Brought on Behalf of Connecticut Subclass.**

403. Plaintiff Brown brings each of the following claims on behalf of himself and the Connecticut Subclass under Connecticut law.

151

## COUNT I
### Violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a-110q)

404.    Plaintiff and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

405.    Pursuant to Conn. Gen. State §42-110b(a), "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

406.    Pursuant to Conn. Gen. Stat. §42-110b(b), "[i]t is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1 of the Federal Trade Commission Act (15 USC 45(a)(1)), as from time to time amended."

407.    Under the Federal Trade Commission Act, a person engages in an "unfair or deceptive act" by making "misrepresentations or deceptive omissions of material facts," 15 U.S.C. § 45(a)(1), in connection with the "advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." *See also* Conn. Gen. Stat. §442-110a(4).

408.    Defendants' marketing, advertising, and labeling and packaging of their cannabis products, purchased by Plaintiff and class members, constituted unfair and deceptive acts or practices in the conduct of trade or commerce within the meaning of Conn. Gen. Stat. § 42-110b. Defendants misrepresented, concealed and failed to disclose or adequately warn of the material facts that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from

152

prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

409. These actions and omissions were misleading, unfair, and deceptive standing alone and were particularly deceptive and willful considering Defendants' advertising of their products as medicinal and therapeutic.

410. In purchasing Defendants' products for personal, family, or household purposes, Plaintiff and class members relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to have relied on the misrepresentations and omissions.

411. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading, intended for consumers to rely on such misrepresentations and omissions, and that Plaintiff and class members were ignorant of the facts that cannabis products are not therapeutic or medicinal as described by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

412. Defendants' conduct proximately caused ascertainable losses to Plaintiff and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiff and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiff and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

153

413. WHEREFORE, Plaintiff and class members seek judgment against all Defendants: (a) for actual damages sustained by Plaintiff and class members as a result of Defendants' unfair or deceptive acts or practices, together with punitive damages as permitted under Conn. Gen. Stat. § 42-110g; (b) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (c) for reasonable attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g; (d) for restitution and disgorgement of profits; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

### COUNT II
**Unfair and Deceptive Trade Practices: Unlawful Advertising in Violation of Conn. Gen. Stat. § 21a-421bb(b)(5) and (f), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b**

414. Plaintiff and class members re-allege and incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

415. Pursuant to Conn. Gen. Stat. § 21a-421bb(b)(5), no cannabis establishment shall "advertise cannabis or cannabis products in a manner claiming or implying, or permit any employee of the cannabis establishment to claim or imply, that such products have curative or therapeutic effects, or that any other medical claim is true, or allow any employee to promote cannabis for a wellness purpose unless such claims are substantiated as set forth in regulations adopted under chapter 420f."

416. Pursuant to Conn. Gen. Stat. § 21a-421bb(f), a violation of subsection (b)(5) "shall constitute an unfair or deceptive trade practice under section 42-110b."

417. Defendants created and implemented a scheme to expand the market for cannabis products through a pervasive pattern of false, misleading, and deceptive advertising and omissions. At all relevant times, Defendants made statements, directly or by implication, claiming or suggesting that their cannabis products were healthy, therapeutic, or medicinal.

154

418. These statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns, television and radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These statements included, but were not limited to: Defendants claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

419. Plaintiff and class members are consumers for whose protection Conn. Gen. Stat. §§ 21a-421bb and 42-110b were enacted.

420. Defendants' conduct, as alleged herein, constitutes unlawful advertising in violation of Conn. Gen. Stat. § 21a-421bb(b)(5), and thereby constitutes an unfair or deceptive trade practice under Conn. Gen. Stat. § 42-110b, as expressly provided by § 21a-421bb(f).

421. As a direct and proximate result of Defendants' unlawful advertising, Plaintiff and class members suffered ascertainable losses, including monetary loss, and other damages.

422. WHEREFORE, Plaintiff and class members seek judgment against all Defendants: (a) for actual damages sustained by Plaintiff and class members as a result of Defendants' unfair or deceptive acts or practices, together with punitive damages as permitted under Conn. Gen. Stat. § 42-110g; (b) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (c)

155

for reasonable attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g; (d) for restitution and disgorgement of profits; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT III
### Connecticut Negligent Misrepresentation

423.    Plaintiff and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

424.    Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cause or contribute to adverse cardiovascular events, CHS, and/or cause cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

425.    These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

426.    Defendants were careless or negligent in determining the truth of the above statements and/or omissions. Defendants, in the course of their business of manufacturing, marketing, and selling cannabis products, failed to exercise reasonable care or competence in obtaining or communicating the information supplied to consumers.

427.    At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiff and class members and with the intent to cause Plaintiff and class members to purchase their cannabis products.

156

428. Plaintiff and class members reasonably and justifiably relied on these statements and/or omissions when purchasing cannabis products.

429. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

430. Defendants' conduct proximately caused actual damages to Plaintiff and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiff and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiff and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

431. WHEREFORE, Plaintiff and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including economic losses and consequential damages; (b) for restitution and/or disgorgement of revenues, profits, and other benefits wrongfully obtained by Defendants; (c) for prejudgment interest; (d) award costs, expenses, and attorneys' fees; and (e) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT IV
**Connecticut Breach of Express Warranty (Conn. Gen. Stat. §§ 42a-2-313)**

432. Plaintiff and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

433. Defendants made affirmations of fact and promises to Plaintiff and class members including but not limited to:

a. Warranties that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Warranties that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

c. Warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Warranties that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e. Warranties that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

f. Warranties that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

434. Connecticut Plaintiffs and class members complied with the terms of the express warranty, and demanded Defendants fulfill its terms.

435. As a proximate result of the breach of warranties by Defendants, Connecticut Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted.

436. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and the acts showed gross recklessness.

159

437. Defendants breached their express warranties because their products were not therapeutic or safe and did not conform to the affirmations and promises made.

438. Plaintiff and class members provided notice of breach within a reasonable time after discovery.

439. As a direct and proximate result of Defendants' breach, Plaintiff and class members suffered damages including overpayment for the products, loss of the benefit of their bargain, and incidental and consequential damages pursuant to Conn. Gen. Stat. §§ 42a-2-313, 42a-2-714, and 42a-2-715.

440. WHEREFORE, Plaintiff and class members seek judgment against Defendants: (a) for breach of express warranty under Conn. Gen. Stat. § 42a-2-313; (b) for compensatory damages, including overpayment for the products, loss of the benefit of the bargain, and incidental and consequential damages pursuant to Conn. Gen. Stat. §§ 42a-2-714 and 42a-2-715; (c) for restitution and/or disgorgement of revenues, profits, and other benefits wrongfully obtained by Defendants; (d) for pre judgment interest; (e) for costs, expenses, and attorneys' fees; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT V
### Connecticut Breach of Implied Warranty of Merchantability
### (Conn. Gen. Stat. §§ 42a-2-314)

441. Plaintiff and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

442. Defendants' cannabis products came with an implied warranty that they were merchantable under Conn. Gen. Stat. § 42a-2-314, warranting that such goods were fit for the ordinary purpose for which they would be used.

443. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; posed significant health risks; and did not conform to marketing promises, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cardiovascular disease, CHS, and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

444. Defendants breached the warranty implied at the time of sale in that Plaintiff and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, or sold.

445. Defendants also breached the warranty implied at the time of sale in that Plaintiff and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

446. Defendants' products were not fit for ordinary use because they posed significant health risks, were defectively marketed without adequate warnings, and did not conform to the promises and affirmations made.

447. Plaintiff and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiff and class members, on the other hand.

448. Plaintiff and class members were third-party beneficiaries of Defendants' agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of Defendants' products to consumers. Specifically, Plaintiff and class members are the intended beneficiaries of Defendants' implied warranties. Defendants' products are manufactured with the express purpose and intent of being sold to consumers.

449. Plaintiff and class members provided notice of breach within a reasonable time after discovery.

450. As a direct and proximate result of Defendants' breach, Plaintiff and class members suffered damages recoverable under Conn. Gen. Stat. §§ 42a-2-314, 42a-2-714, and 42a-2-715., including overpayment, loss of the benefit of their bargain, and incidental and consequential damages.

451. WHEREFORE, Plaintiff and the class members seek judgment against all Defendants: (a) for actual damages, including overpayment, loss of the benefit of the bargain, and incidental and consequential damages as permitted by Conn. Gen. Stat. §§ 42a-2-714 and 42a-2-715; (b) requiring rescission or revocation of acceptance under Conn. Gen. Stat. § 42a-2-608 and restitution of monies paid; (c) for equitable and injunctive relief enjoining Defendants from continuing to market and sell cannabis products without adequate warnings; (d) for reasonable attorneys' fees, costs, and expenses of litigation as allowed by law; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VI
### Connecticut Common Law Fraud

452. Plaintiff and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

453. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiff and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits. These omitted facts were material to reasonable consumers in deciding whether to purchase Defendants' cannabis products.

454. Defendants owed Plaintiff and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiff and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

163

455. Defendants knew, or recklessly disregarded the truth, and acted willfully and intentionally to deceive as to whether their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them. Defendants made these misrepresentations and omissions with the specific intent to induce Plaintiff and class members to purchase cannabis products and thereby increase Defendants' profits.

456. Plaintiff and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances and Plaintiff's and class members' reliance on these misrepresentations and omissions was foreseeable, direct, and a substantial factor in causing their purchases.

457. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

458. Defendants' conduct was the direct and proximate cause of Plaintiff's and class members' damages. Absent Defendants' fraudulent conduct, Plaintiff and class members would not have purchased Defendants' cannabis products or would have paid less for them. As a result, Plaintiff and class members suffered actual damages, including but not limited to, the purchase price paid, the diminished value of the products, and consequential losses.

459. WHEREFORE, Plaintiff and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (c) for punitive damages; (d) for reasonable attorneys' fees, costs, and expenses incurred in

164

prosecuting this action; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VII
### Connecticut Unjust Enrichment

460. Plaintiff and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

461. Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and/or misleading statements and/or omissions. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to consumers to promote the sale and use of cannabis.

462. Defendants' marketing, advertising, and labeling and packaging of their cannabis products concealed and failed to disclose the facts and/or adequately warn Plaintiff and class members that the products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or contribute to adverse cardiovascular events, CHS, and cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

463. Plaintiff and class members purchased Defendants' cannabis products directly from Defendants and/or from Defendants' authorized retailers, conferring a direct and substantial benefit on Defendants.

464. Defendants were unjustly enriched by receiving payments from Plaintiff and class members for cannabis products sold through deception, fraud, and unlawful conduct.

165

465. Defendants' retention of these benefits is unjust and inequitable because it was obtained through false statements, material omissions, and the sale of unreasonably dangerous products, and equity and good conscience require restitution.

466. Plaintiff and class members plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate remedy.

467. WHEREFORE, Plaintiff and class members seek judgment against all Defendants; (a) requiring restitution and/or disgorgement of all revenues, profits, and other benefits unjustly obtained by Defendants as a result of their misrepresentations and omissions; (b) for prejudgment interest; (c) for costs, expenses, and attorneys' fees; and (d) for such other and further relief as this Honorable Court deems just, proper, and equitable.

### C.      Violations of Maryland Law Brought on Behalf of Maryland Subclass.

468. Plaintiffs Arrington, DeSombre, and Jackson bring each of the following claims on behalf of themselves and the Maryland Subclasses under Maryland law.

### COUNT I:
### Violations of the Maryland Consumer Protection Act

469. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

470. Pursuant to Md. Code Ann., Com. Law § 13-303, a person may not engage in any unfair, abusive, or deceptive trade practice, as defined in § 13-303 or as further defined by the Division of Consumer Protection, in: "(1) The sale … of any consumer goods; or (2) The offer for sale … of consumer goods."

471. Unfair, abusive, or deceptive trade practices include any:

> (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind

166

which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods … have a … characteristic, ingredient, use, benefit, or quantity which they do not have;

…

(3) Failure to state a material fact if the failure deceives or tends to deceive;

…

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

(i) The promotion or sale of any consumer goods, consumer realty, or consumer service….

472. Defendants have engaged in unfair, abusive, or deceptive trade practices in violation of the Maryland Consumer Protection Act, independent of any contract, warranty, or commercial agreement.

473. Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions.

474. As described above and below, Defendants made false or misleading oral or written statements, false visual depictions, and other false representations about the benefits of cannabis products which had the capacity, tendency, and/or effect of deceiving or misleading consumers. Further, Defendants failed to state material facts about the negative effects of cannabis products in a manner that deceived or tended to deceive consumers. Finally, Defendants used deception, fraud, false pretenses, false premises, misrepresentations and/or knowingly concealed, suppressed, or omitted material facts with the intent that a consumer rely on the same in connection with the promotion or sale of cannabis products.

475. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

476. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

477. Defendants' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, cause confusion or misunderstanding to reasonable consumers including Plaintiffs and class members. Reasonable consumers, including Plaintiffs and class members, would have found it material to their purchasing decisions that: i) Defendants' cannabis products were not therapeutic or medicinal as represented by Defendants and could not treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; ii) there is no credible medical or scientific evidence or scholarship that supports that Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; iii) certain of Defendants' cannabis products do not uniquely or more effectively treat,

168

ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety when compared to other cannabis products and/or other medical disorders, including, but not limited to, pain and glaucoma; and iv) Defendants' cannabis products cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

478. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' decisions to purchase cannabis products.

479. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

480. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading and intended for consumers, including Plaintiffs and class members, to rely on such misrepresentations and omissions. Defendants' conduct actually and proximately caused

169

damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

481.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (e) prohibiting Defendants from making any further misrepresentations or omissions regarding the medicinal, health, or therapeutic benefits of cannabis or cannabis products; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### Maryland Negligent Misrepresentation

482.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

483.    Defendants owed Plaintiffs and class members a duty independent of contract arising from their knowledge, control over product safety information, and affirmative representations made to consumers, as detailed below.

484.    Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their

170

cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cause or contribute to adverse cardiovascular events, CHS, cause cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

485. These omissions were misleading, material, and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

486. Defendants failed to exercise reasonable care or competence in obtaining or communicating the truth of the above statements and/or omissions.

487. At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

488. Plaintiffs and class members did rely on these statements and/or omissions when purchasing cannabis products.

489. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

490. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members constituted actual malice. At a minimum, Plaintiffs intended to deceive class members and failed to exercise reasonable care in communicating material information to consumers.

171

491.    Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Plaintiffs and class members were also harmed by exposure to undisclosed and unreasonable health risks, and by the loss of informed choice regarding products marketed as therapeutic or health-promoting. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

492.    WHEREFORE, Plaintiffs and class members seek damages against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for punitive damages; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT III
**Maryland Breach of Express Warranty**

493.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

494.    Pursuant to Md. Code Ann., Com. Law § 2-313:

> (1) Express warranties by the seller are created as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> …

172

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

495. Defendants provided Plaintiffs and class members with written and unwritten express warranties consisting of specific and verifiable affirmations of fact that did not constitute mere opinion or puffery, including but not limited to, warranties that cannabis or any constituent part of cannabis can treat, ease, alleviate, are good for, aid, or relieve or otherwise are a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

496. Defendants provided Plaintiffs and class members with written and unwritten express warranties consisting of specific and verifiable affirmations of fact that did not constitute mere opinion or puffery, including but not limited to, warranties that certain Defendants' products uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

497. Defendants provided Plaintiffs and class members with written and unwritten express warranties consisting of specific and verifiable affirmations of fact that did not constitute mere opinion or puffery, including but not limited to, warranties that that there is credible medical or scientific evidence or scholarship that supports that cannabis products are medicinal or therapeutic in the manner represented by Defendants and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

173

498.     Defendants breached these warranties resulting in damages to Plaintiffs and class members who purchased Defendants' products, which did not have the purported benefits.

499.     Plaintiffs and class members complied with the terms of the express warranty, and demanded Defendants fulfill its terms, and provided notice to Defendants within a reasonable time upon discovering their breach of this express warranty.

500.     As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted.

501.     Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and their acts showed gross recklessness.

502.     WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay the costs of the suit, including attorneys' fees; (c) for prejudgment interest; and (d) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT IV
### Maryland Breach of Implied Warranty of Merchantability

503.     Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

174

504. Pursuant to Md. Code Ann., Com. Law § 2-314:

(1) Unless excluded or modified (§ 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. … Notwithstanding any other provisions of this title
(a) In §§ 2-314 through 2-318 of this title, "seller" includes the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer; and
(b) Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer.
(2) Goods to be merchantable must be at least such as
(a) Pass without objection in the trade under the contract description; and
(b) In the case of fungible goods, are of fair average quality within the description; and
(c) Are fit for the ordinary purposes for which such goods are used; and
(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) Are adequately contained, packaged, and labeled as the agreement may require; and
(f) Conform to the promises or affirmations of fact made on the container or label if any.
(3) Unless excluded or modified (§ 2-316) other implied warranties may arise from course of dealing or usage of trade.

505. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the ordinary purpose for which they would be used. Defendants breached the implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant undisclosed health and safety risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cardiovascular disease, CHS, and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in an ordinary manner as marketed and labeled; and did not conform to the promises

175

and affirmations of fact made during Defendants' marketing scheme that their cannabis products had certain medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

506. Plaintiffs and class members complied with the terms of the warranty, and demanded Defendants fulfill its terms, and provided notice to Defendants within a reasonable time upon discovering their breach of the warranty.

507. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

508. Although not necessary, Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

509. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or purchased products that they would not otherwise have purchased.

510.     Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

511.     WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay the costs of the suit, including attorneys' fees; (c) for prejudgment interest; and (d) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT V
## Maryland Common Law Fraud

512.     Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

513.     Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

514.     Each Defendant participated in, approved, controlled, or disseminated the relevant marketing and labeling advertisements.

177

515.    Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

516.    Defendants knew or had a reckless disregard for the truth that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

517.    Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

518.    Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members constituted actual malice and evidenced a morally wrong motive and intent to deceive.

519.    Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to

178

purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

520. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (c) for punitive damages; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VI
### Maryland Unjust Enrichment

521. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

522. Defendants were also enriched by their marketing and advertisements for and/or labeling and packaging of their cannabis products that concealed and failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

523. Defendants' conduct was unfair and unconscionable and demonstrated actual malice in that: 1) it included the manufacture, distribution, possession, sale, and marketing of products that

179

are illegal under federal law and caused and exacerbate serious and debilitating mental health and other physical conditions; and 2) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are unlawful under Maryland law; offend public policy; are immoral, unethical, oppressive, and unscrupulous; are part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

524. As a result of Defendants' deceptive, false, and misleading statements and illegal claims as to the health, medicinal, or therapeutic qualities of its products and actions and many violations of the law, Defendants were enriched at the expense of consumers, Plaintiffs and class members, who were impoverished through the payment of the purchase price for Defendants' products.

525. Defendants requested and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for Defendants' cannabis products.

526. There is no justification for Defendants' retention of this benefit.

527. Defendants' retention of the benefit of these ill-gotten gains on the back of human misery and suffering caused by mental health disorders violates fundamental principles of justice, equity, and good conscience.

528. Thus, it would be unjust for Defendants to retain the ill-gotten benefits that they received from Plaintiffs and class members without restitution to Plaintiffs and class members.

529. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

530. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or

purchased Defendants' products when they otherwise would not have done so; (b) requiring restitution and disgorgement by Defendants of any money acquired as a result of Defendants' misrepresentations or omissions; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**D.** **Violations of Massachusetts Law Brought on Behalf of Massachusetts Subclass.**

531. Plaintiffs Kemp, Medoff, Anzalone, Casper, and Harper bring each of the following claims on behalf of themselves and the Massachusetts Subclasses under Massachusetts law.

<u>**COUNT I:**</u>
**Violations of the Massachusetts Consumer Protection Act**

532. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

533. Pursuant to Mass. Gen. Laws Ann. ch. 93A, § 2: "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

534. Pursuant to Mass. Gen. Laws Ann. ch. 93A, § 9:

> (1) Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action in the superior court, or in the housing court as provided in section three of chapter one hundred and eighty-five C whether by way of original complaint, counterclaim, cross-claim or third party action, for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper. (2) Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar

181

injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons…

535.    Defendants have engaged in unfair or deceptive acts and practices in violation of the Massachusetts Consumer Protection Act.

536.    Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions.

537.    As described above and below, Defendants made false or misleading oral or written and unwritten statements, false visual depictions, and other false representations about the benefits of cannabis products which had the capacity, tendency, and/or effect of deceiving or misleading consumers. Further, Defendants failed to state material facts about the negative effects of cannabis products in a manner that deceived or tended to deceive consumers. Finally, Defendants used deception, fraud, false pretenses, false premises, misrepresentations and/or knowingly concealed, suppressed, or omitted material facts with the intent that a consumer rely on the same in connection with the promotion or sale of cannabis products.

538.    Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

539. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

530. Defendants' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, cause confusion or misunderstanding to reasonable consumers including Plaintiffs and class members. Reasonable consumers, including Plaintiffs and class members, would have found it material to their purchasing decisions that: a) Defendants' cannabis products were not therapeutic or medicinal as represented by Defendants and could not treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; b) there is no credible medical or scientific evidence or scholarship that supports that Defendants' cannabis products are medicinal or therapeutic as represented by Defendants and/or can treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; c) certain of Defendants' cannabis products do not uniquely or more effectively treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety when compared to other cannabis products and/or other medical disorders, including, but not limited to, pain and glaucoma and d) Defendants' cannabis products cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

531. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' decisions to purchase cannabis products.

532. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

533. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading and intended for consumers, including Plaintiffs and class members, to rely on such misrepresentations and omissions.

534. Defendants' conduct proximately caused damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

535. Plaintiffs delivered to Defendants more than thirty days ago written demands for relief, identifying the claimants and reasonably describing the unfair or deceptive acts or practices relied upon and the injuries suffered.

536. WHEREFORE Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay the costs of the suit, including attorneys' fees; (c) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (d) prohibiting Defendants from making any further misrepresentations or omissions regarding the medicinal, health, or therapeutic benefits of cannabis or cannabis products; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### Massachusetts Negligent Misrepresentation

537. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

538. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

539.     These omissions were misleading, material, and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

540.     Defendants failed to exercise reasonable care or competence in obtaining or communicating the truth of the above statements and/or omissions.

541.     At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

542.     Plaintiffs and class members did rely on these statements and/or omissions when purchasing cannabis products.

543.     Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

544.     Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

545.     Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

546. Plaintiffs' and class members' claims are not barred by the economic loss rule because Defendants fraudulently misrepresented and concealed material health risks associated with their cannabis products—an established exception under state law.

547. WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for punitive damages; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT III
### Massachusetts Negligence

548. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs with this Complaint as if they were fully set forth herein.

549. Defendants had a non-delegable duty of care to Plaintiffs and class members to cultivate, manufacture, transport, and sell reasonably safe products and/or adequately warn consumers of a product's dangerous propensity of which the average consumer would not be aware.

550. It was reasonably foreseeable that Plaintiffs would rely on the representations of Defendants with respect to the purchase and use of Defendants' cannabis products.

551. At all relevant times, Defendants sold to Plaintiffs and class members such products that were unreasonably dangerous to Plaintiffs and class members as their products are addictive, cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation depression, and/or anxiety and cause and/or contribute to adverse cardiovascular events, CHS, and cannabis use disorder, and/or pose significant risks to fetuses and

children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

552.    Defendants breached their duty to Plaintiffs and class members by failing to adequately warn Plaintiffs and class members of these dangers.

553.    Defendants knew or should have known that their cannabis products were addictive, caused, contributed to, and/or exacerbated mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and caused and/or contributed to adverse cardiovascular events, CHS, and cannabis use disorder, and/or posed significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

554.    The actions or inactions of Defendants as described herein created a substantial and unreasonable risk of personal injury.

555.    As a proximate result of Defendants' failure to adequately warn of the mental health and other health dangers of their product, Plaintiffs and class members have suffered damages in an amount to be determined at trial, in that, among other things, they purchased and paid for products that they would not have purchased if they had known of the mental health dangers.

556.    Defendants' motive of increasing profits at the expense of the mental health and other health dangers of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

557.    Defendants also violated the rules of the Massachusetts Cannabis Control Commission.

558.    Specifically, Cannabis Control Commission rules state:

935 CMR:     Cannabis Control Commission
935 CMR 500.000:

188

…

(b) Prohibited Practices. The following Advertising activities are prohibited:

1. Advertising in such a manner that is deemed to be is deceptive, misleading, false or fraudulent, or that tends to deceive or create a misleading impression, whether directly or by omission or ambiguity;

…

7. Advertising by a Licensee that asserts that its products are safe, or represent that its products have curative or therapeutic effects, other than labeling required pursuant to M.G.L. c. 94G, § 4(a½)(xxvi), unless supported by substantial evidence or substantial clinical data with reasonable scientific rigor as determined by the Commission;….

559. As described herein, Defendants have engaged in advertisement by publishing, disseminating, and circulating through multiple media auditory, visual, digital, oral, and written and unwritten statements that make therapeutic and medical claims about cannabis or cannabis products.

560. Defendants have not supported these claims with reliable, scientific evidence.

561. Defendants have also failed to include information on the most serious and most common side effects or risks associated with the use of cannabis in these advertisements.

562. Notwithstanding Massachusetts' economic loss rule, Defendants owed and breached an independent common-law and statutory duty to disclose known material health risks of cannabis use, including risks of psychosis, schizophrenia, bipolar disorder, suicidal ideation, depression, and/or anxiety, cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits such that Plaintiffs' and class members' negligence claim may proceed to the extent it is predicated on this affirmative duty separate from any contractual expectation.

563. Plaintiffs' and class members' claims are also not barred by the economic loss rule because Defendants fraudulently misrepresented and concealed material health risks associated with their cannabis products—an established exception under state law.

189

564. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations or omissions; (c) for punitive damages; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT IV
### Massachusetts Breach of Express Warranty

565. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

566. Pursuant to Mass. Gen. Laws Ann. ch. 106, § 2-313:

§ 2-313. Express Warranties by Affirmation, Promise, Description, Sample

> (1) Express warranties by the seller are created as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the sample or model.
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

190

567. Defendants provided Plaintiffs and class members with express warranties, including but not limited to, warranties that cannabis, any constituent part of cannabis, or their cannabis products can treat, ease, alleviate, are good for, aid, or relieve or otherwise are a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

568. Defendants provided Plaintiffs and class members with express warranties, including but not limited to, warranties that certain Defendants' products uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

569. Defendants provided Plaintiffs and class members with express warranties, including but not limited to, warranties that that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma

570. Defendants breached these warranties resulting in damages to Plaintiffs and class members who purchased Defendants' products, which did not have the purported benefits.

571. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and

spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted.

572.    Defendants' motive of increasing profits at the expense of the mental health disorders of Plaintiffs and the class members resulted in acts showing a reckless disregard of the rights of Plaintiffs and class members.

573.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) for punitive damages; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT V
### Massachusetts Breach of Implied Warranty of Merchantability

574.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

575.    Pursuant to Mass. Gen. Laws Ann. ch. 106, § 2-314:

§ 2-314. Implied Warranty: Merchantability; Usage of Trade

> (1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
> (2) Goods to be merchantable must at least be such as
> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and

192

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require; and
(f) conform to the promises or affirmations of fact made on the container or label if any.
(3) Unless excluded or modified by section 2-316, other implied warranties may arise from course of dealing or usage of trade.

576. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the ordinary purpose for which they would be used. Defendants breached the implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cardiovascular disease, CHS, and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in an ordinary manner; and did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had certain medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

577. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not

193

merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

578. Although not necessary, Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

579. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or purchased products that they would not otherwise have purchased.

580. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

581. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) for punitive damages; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VI
### Massachusetts Breach of Implied Warranty of Fitness for a Particular Purpose

582. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

194

583. Pursuant to Mass. Gen. Laws Ann. ch. 106, § 2-315:

§ 2-315. Implied Warranty; Fitness for Particular Purpose

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

584. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the particular purpose as advertised. Defendants breached the warranty of fitness for a particular purpose because their products did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

585. Defendants breached the warranty at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the particular purposes for which they were promoted, marketed, and advertised, or sold.

586. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

587. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted,

195

marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or purchased products that they would not otherwise have purchased.

588. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

589. WHEREFORE, Plaintiffs and class seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) awarding punitive damages; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VII
### Massachusetts Common Law Fraud

590. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

591. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

196

592.     Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

593.     Defendants knew or had a reckless disregard for the truth that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

594.     Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions.  Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

595.     Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

596.     Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to

197

purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

597.     WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (c) for punitive damages; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VIII
### Massachusetts Unjust Enrichment

598.     Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

599.     Defendants were also enriched by their marketing and advertisements for and/or labeling and packaging of their cannabis products that concealed and/or failed to disclose  the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety;  cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

600.     Defendants' conduct was unfair and unconscionable in that: 1) it included the manufacture, distribution, possession, sale, and marketing of products that are illegal under federal

198

law, 2) it caused and exacerbated serious and debilitating mental health and other physical conditions; and 3) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are unlawful under the Massachusetts Consumer Protection Act and the rules of the Cannabis Control Commission; offend public policy; are immoral, unethical, oppressive, and unscrupulous; are part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

601. As a result of Defendants' deceptive, false, and misleading statements and illegal claims as to the health, medicinal, or therapeutic qualities of their products and actions and many violations of the law, Defendants were enriched at the expense of consumers, Plaintiffs and class members, who were impoverished through the payment of the purchase price for Defendants' products.

602. Defendants requested and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for Defendants' cannabis products.

603. There is no justification for Defendants' retention of this benefit.

604. Defendants' retention of the benefit of these ill-gotten gains on the back of human misery and suffering caused by mental health disorders violates fundamental principles of justice, equity, and good conscience.

605. Thus, it would be unjust for Defendants to retain the ill-gotten benefits that they received from Plaintiffs and class members without restitution to Plaintiffs and class members.

606. Plaintiffs and class members plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

199

607. WHEREFORE, Plaintiffs and class seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations or omissions; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**E.     Violations of Michigan Law Brought on Behalf of the Michigan Subclass.**

608. Plaintiffs Baig, Coleman, Duzy, and Reible bring each of the following claims on behalf of themselves and the Michigan Subclasses under Michigan law.

<u>COUNT I</u>
**Michigan Consumer Protection Act Violations**

609. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

610. Pursuant to MCL 445.911, any person who suffers a loss as result of any unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce is permitted to bring a claim against the party who engaged in such conduct.

611. Defendants have engaged in unlawful and deceptive business practices in violation of the Michigan Consumer Protection Act ("MCPA"), 445.901 *et seq.*, as set forth above.

612. Defendants' marketing and advertisements for and labeling and packaging of their cannabis products concealed and failed to reveal material facts that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal

200

ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

613. These omissions were material, misleading, and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

614. Defendants' conduct was unfair and unconscionable in that: 1) it included the manufacture, sale, and marketing of products that are illegal under federal law and cause and/or exacerbate serious and debilitating mental health conditions; and 2) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products violate Mich. Admin. R. 420.507; offend public policy; are immoral, unethical, oppressive, and unscrupulous; are part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

615. Defendants' conduct constituted the following prohibited fraudulent, deceptive, and unfair business practices: a) representing that cannabis products have certain medicinal or therapeutic properties or have characteristics, uses, benefits, or quantities which they do not have; b) misrepresenting that cannabis products are of a particular standard, quality, or grade, or that the goods are of a particular style or model, when they are not; c) advertising good or services with the intent not to sell them as advertised; d) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; e) making a representation of fact or statement of fact material to the transaction such that a person

reasonably believes the represented or suggested state of affairs to be other than it actually is; and f) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

616. Defendants' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, deceive reasonable consumers including Plaintiffs and class members. Reasonable consumers, including Plaintiffs and class members, would have found it material to their purchasing decisions that: a) Defendants' cannabis products were not therapeutic or medicinal as represented by Defendants and could not treat, ease, alleviate, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; b) there is no credible medical or scientific evidence or scholarship that supports that Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; c) certain of Defendants' cannabis products do not uniquely or more effectively treat, ease, alleviate, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety when compared to other cannabis products and/or other medical disorders, including, but not limited to, pain and glaucoma; and d) Defendants' cannabis causes, contributes to, and exacerbates mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including

increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits .

617. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' decisions to purchase cannabis products.

618. Plaintiffs purchased Defendants' cannabis products for personal, family, or household purposes.

619. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

620. Defendants knew or should have known that their misrepresentations and/or omissions were false, misleading, unfair, and/or unconscionable and intended for consumers, including Plaintiffs and class members, to rely on such misrepresentations and omissions.

621. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class

members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

622. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (d) compelling Defendants to disgorge their ill-gotten profits; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (f) for prejudgment interest; (g) prohibiting Defendants from making any further misrepresentations or omissions regarding the medicinal, health, or therapeutic benefits of cannabis or cannabis products; and (h) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### Innocent Misrepresentation

623. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

624. Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions.

625. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to Michigan consumers to promote the sale and use of cannabis.

626. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their

cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cause or contribute to adverse cardiovascular events, CHS, and/or cause cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

627. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

628. Defendants' misrepresentations were made in connection with entering into a contract with Plaintiffs' and class members for the purchase and sale of Defendants' cannabis products.

629. Plaintiffs and class members did rely on these statements and/or omissions when purchasing cannabis products.

630. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them.

631. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

632. Plaintiffs and class members were in privity of contract with Defendants with respect to Plaintiffs' and class members' purchases of Defendants' cannabis products.

633. Defendants' conduct proximately caused actual damages to Plaintiffs and class members.

634. The injuries suffered by Plaintiffs' and class members as a consequence of Defendants' misrepresentations regarding Defendants' cannabis products inured to the benefit of Defendants as Plaintiffs and class members paid monies directly to Defendants to purchase said products.

635. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT III
### Michigan Negligence

636. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

637. Defendants had a non-delegable duty of care to Plaintiffs and class members to cultivate, manufacture, transport, and sell reasonably safe products and/or adequately warn consumers of a product's dangerous propensity of which the average consumer would not be aware.

638. At all relevant times, Defendants sold to Plaintiffs and class members such products that were unreasonably dangerous to Plaintiffs and class members as their products cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation depression, and/or anxiety and cause and/or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

639. Defendants breached their duty to Plaintiffs and class members by failing to adequately warn Plaintiffs and class members of these dangers.

640. Defendants knew or should have known that their cannabis products caused, contributed to, and/or exacerbated mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and caused and/or contributed to adverse cardiovascular events, CHS, and cannabis use disorder, and/or posed significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

641. As a proximate result of Defendants' failure to adequately warn of the health and mental health dangers of their product, Plaintiffs and class members have suffered damages in an amount to be determined at trial, in that, among other things, they purchased and paid for products that they would not have purchased if they had known of the mental health dangers.

642. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

643. Plaintiffs' and class members' claims are not barred by the economic loss rule because Defendants fraudulently misrepresented and concealed material health risks associated with their cannabis products—an established exception under Michigan law.

644. WHEREFORE, Plaintiffs and class seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) requiring Defendants to disgorge their ill-gotten profits; (d) requiring Defendants to pay the costs of the suit,

including attorneys' fees; (d) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT IV
### Michigan Breach of Express Warranty

645.   Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

646.   Pursuant to MCL 440.2313:

(1) Express warranties by the seller are created as follows:
   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise.
   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description.

…

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant" or "guarantee" or that he or she have specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty . . .

647.   Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that cannabis, any constituent part of cannabis, or their cannabis products can treat, ease, alleviate, are good for, aid, or relieve or otherwise are a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

648.   Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that certain Defendants' products uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute a medicine or

therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

649. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that that there is credible medical or scientific evidence or scholarship that supports that cannabis products are medicinal or therapeutic and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

650. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that there is credible medical or scientific evidence or scholarship that supports that certain Defendants' cannabis products uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

651. Defendants breached these warranties resulting in damages to Plaintiffs and class members who purchased Defendants' products, which did not have the purported benefits.

652. Plaintiffs and class members complied with the terms of the express warranty, and demanded Defendants fulfill its terms, and provided notice to Defendants within a reasonable time upon discovering their breach of this express warranty.

653. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and

209

spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted.

654. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and their acts showed gross recklessness.

655. WHEREFORE, Plaintiffs and class members seek damages against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) requiring Defendants to disgorge their ill-gotten profits; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT V
### Michigan Breach of Implied Warranty of Merchantability

656. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

657. Pursuant to MCL 440.2314:

(1) Unless excluded or modified (Section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as
(a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and

210

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (Section 2316) other implied warranties may arise from course of dealing or usage of trade.

658. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the ordinary purpose for which they would be used. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cardiovascular disease, CHS, and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

659. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not

merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

660. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

661. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

662. Plaintiffs and class members provided Defendants with notice of the breach of implied warranty within a reasonable time after discovering, or when they should have discovered, the above-mentioned breaches.

663. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or purchased products that they would not otherwise have purchased.

664. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

665. WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental

212

and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) requiring Defendants to disgorge their ill-gotten profits; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**COUNT VI**
**Michigan Common Law Fraud**

666. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

667. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

668. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an

unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

669. Defendants knew or had a reckless disregard for the truth that their misrepresentations, false statements, and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations, false statements, and/or omissions and act upon them.

670. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions.

671. Reasonable consumers would have been expected to rely on the misrepresentations, false statements, and/or omissions under the circumstances.

672. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was malicious, willful, and/or showed reckless disregard for Plaintiffs' and class members' rights.

673. Defendants' conduct directly caused actual damages to Plaintiffs and class members.

674. Absent Defendants' fraudulent misrepresentations regarding their cannabis products, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them.

675. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

676. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct;

214

(c) for exemplary damages; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VII
### Michigan Unjust Enrichment

677.     Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

678.     Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety;  cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

679.     As a result of Defendants' deceptive, false, and misleading statements and illegal claims as to the health, medicinal, or therapeutic qualities of their products and actions and many violations of the law, Defendants were enriched at the expense of consumers, Plaintiffs, and class members through the payment of the purchase price for Defendants' products.

680.     Defendants requested and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for Defendants' cannabis/ products.

681.     There is no justification for Defendants' retention of this benefit.

215

682. Defendants' retention of the benefit of these ill-gotten gains on the back of human misery and suffering caused by mental health disorders violates fundamental principles of justice, equity, and good conscience.

683. Thus, it would be unjust for Defendants to retain the ill-gotten benefits that they received from Plaintiffs and class members without restitution to Plaintiffs and class members.

684. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

685. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations or omissions; (c) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (h) for prejudgment interest; and (d) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**F.    Violations of Minnesota Law Brought on Behalf of Minnesota Subclass.**

686. Plaintiffs Mullerleile and Williams bring each of the following claims on behalf of themselves and the Minnesota Subclass under Minnesota law.

**COUNT I**
**Violation of Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.69 *et seq*.)**

687. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

688. Pursuant to Minn. Stat. § 325F.69, subdivision 1:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the

216

sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

689. Defendants created and implemented a scheme to expand the market for cannabis and substantially increase sales of cannabis products through pervasive, false, and misleading statements not supported by credible scientific or medical evidence to Minnesota consumers.

690. Defendants deceptively concealed and failed to disclose material facts, including that cannabis products are not FDA-approved treatments, that no credible scientific evidence substantiates their claimed medicinal or therapeutic uses, and that such products can cause or exacerbate mental-health disorders, cardiovascular events, and cannabis use disorder.

691. Defendants' omissions were misleading and deceptive standing alone and especially so in light of their affirmative representations touting cannabis products as medicinal, therapeutic, or health-promoting.

692. Defendants knew or should have known that their misrepresentations were false and misleading, and intended for consumers to rely on such false statements, misrepresentations, concealments, and omissions.

693. The false and/or misleading statements and deceptive practices were actions taken in connection with the sales of their cannabis products.

694. Plaintiffs and class members suffered ascertainable economic loss by purchasing cannabis products at prices inflated by Defendants' deception and by buying products they would not otherwise have purchased.

695. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class

217

members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

696. WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for restitution, actual damages, and disgorgement of ill-gotten gains; (b) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (c) for attorneys' fees and costs pursuant to Minn. Stat. § 8.31, subd. 3a; (d) for injunctive relief barring further deceptive practices; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

**COUNT II**
**Violation of Minnesota False Statement in Advertising Act (Minn. Stat. § 325F.67)**

697. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs as if fully set forth herein.

698. Minnesota's False Statement in Advertising Act, Minn. Stat. §325F.67, makes it unlawful for any person, with intent to sell merchandise, to make, publish, disseminate, or place before the public any advertisement containing "any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."

699. Defendants' marketing and labeling of cannabis products contained material assertions and representations that were untrue, deceptive, and/or misleading, including false claims of therapeutic efficacy, safety, and non-addictiveness.

700. Defendants' statements had the capacity to, tendency to, and in fact did, deceive reasonable consumers, including Plaintiffs and class members. Reasonable consumers, including Plaintiffs and class members, found Defendants untrue, false, and/or misleading statements or omissions material to their purchasing decisions.

218

701. Defendants knew or should have known that their untrue, false, and misleading statements and misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations to induce sales of cannabis products and/or increase the public's consumption of cannabis.

702. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

703. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for restitution, actual damages, and disgorgement of ill-gotten gains; (b) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (c) for attorneys' fees and costs pursuant to Minn. Stat. § 8.31, subd. 3a; (d) for prejudgment interest; (e) for injunctive relief barring further deceptive practices; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT III
**Violation of Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43 *et seq*.)**

704. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs as if fully set forth herein.

705. Under Minn. Stat. § 325D.44, a person engages in a deceptive trade practice when, in the course of business, they:

219

    a. Represent goods as having characteristics, uses, or benefits they do not have;

    b. Represent goods as being of a particular standard, quality, or grade if they are not; or

    c. Engage in any conduct which creates a likelihood of confusion or misunderstanding.

706. Defendants violated the Minnesota Deceptive Trade Practices Act ("MDTPA") by misrepresenting that their cannabis products have characteristics, uses, and/or benefits they do not have. Thes misrepresentations include:

    a. Defendants falsely claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

    b. Defendants falsely claiming or implying that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

    c. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or

otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d.  Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e.  Defendants falsely claiming or implying that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

f.  Defendants falsely claiming or implying that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

707. Defendants' marketing and advertisements for and labeling and packaging of their cannabis products created the likelihood of confusion or misunderstanding by concealing and failing to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

708. These omissions were misleading and deceptive standing alone and were particularly deceptive and likely to cause confusion or misunderstanding considering Defendants' advertising of their products as medicinal and therapeutic.

709. This conduct created a likelihood of confusion and misunderstanding among reasonable Minnesota consumers, including Plaintiffs and class members.

710. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for attorneys' fees as authorized for willful violations; (c) for declaratory and injunctive relief enjoining Defendants from continuing deceptive trade practices; (d) for prejudgment interest; and (e) for such other relief as this Honorable Court deems just, proper, and reasonable.

## COUNT IV
### Negligence - Unlawful Advertising in Violation of Minn. Stat. § 342.64

711. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

712. Pursuant to Minn. Stat. § 342.64, "[c]annabis businesses, hemp businesses, and other person shall not publish or cause to be published an advertisement for a cannabis business, a hemp business, cannabis flower, a cannabis product, a lower-potency hemp edible, or a help-derived consumer product in a manner that:…(2) contains unverified claims about the health or therapeutic benefits or effects of consuming cannabis flower, a cannabis product, a lower-potency hemp edible, or a hemp-derived consumer product…"

713. Pursuant to Minn. Stat. §342.01, "advertisement" is defined as: "any written or oral statement, illustration, or depiction that is intended to promote sales of cannabis flower, cannabis products, lower-potency hemp edibles, hemp-derived consumer products, or sales at a specific cannabis business or hemp business and includes any newspaper, radio, Internet and electronic media, or television promotion; the distribution of fliers and circulars; and the display of window and interior signs in a cannabis business."

714. Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions. At all times relevant to this Complaint, Defendants made numerous statements regarding the health, medicinal, and therapeutic benefits of cannabis.

715. These statements were made through an array of marketing channels, including, but not limited to: in-person and other forms of detailing, point of sale displays and in-store promotions, search engine marketing, mobile app advertisements, public relations and press releases, sponsorship and event marketing, product demonstrations and free trials, brochures, advertisements, influencer endorsements and testimonials, email marketing campaigns, television and radio commercials, customer reviews and ratings, chatbots and automated messaging, product packaging and labeling, websites, and social media. These statements included, but were not limited to:

223

Defendants claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

716. Plaintiffs and class members are members of the class for whose benefit Minn. Stat. §342.64 was passed.

717. A private right of action is consistent with the purposes of the Minnesota cannabis related legislative scheme.

718. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution and disgorgement of any profits obtained as a result of Defendants' unlawful advertising; (c) for punitive damages and reasonable attorneys' fees and costs as authorized by applicable Minnesota law; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT V
## Minnesota Negligent Misrepresentation

719. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

720. In the course of their business, Defendants supplied false information regarding the therapeutic efficacy, safety, and addictiveness of cannabis products for the guidance of consumers in purchasing such products. This false information included, without limitation:

224

a. Defendants falsely claiming or implying that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Defendants falsely claiming or implying that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

c. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Defendants falsely claiming or implying that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e. Defendants falsely claiming or implying that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

f. Defendants falsely claiming or implying that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

721. Defendants failed to exercise reasonable care or competence in obtaining or communicating this information.

722. Plaintiffs and class members justifiably relied on Defendants' misrepresentations and omissions in purchasing cannabis products.

723. Defendants' conduct deliberately disregarded the rights or safety of others. Defendants knew their actions created a high probability of injury, and/or deliberately proceeded to act in conscious and/or intentional disregard of this high probability of injury.

724. As a direct and proximate result, Plaintiffs and class members suffered damages in the form of economic loss.

725. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or

purchased Defendants' products when they otherwise would not have done so; (b) for restitution; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other relief as this Honorable Court deems just, proper, and equitable.

## COUNT VI
### Breach of Express Warranty (Minn. Stat. § 336.2-313)

726. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

727. Defendants made affirmations of fact and promises to Plaintiffs and class members including but not limited to:

a. Warranties that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Warranties that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

c. Warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD,

227

depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Warranties that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e. Warranties that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

f. Warranties that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

728. These affirmations became part of the basis of the bargain, creating express warranties under Minn. Stat. § 336.2-313.

729. Defendants breached their express warranties because their products were not therapeutic or safe and did not conform to the affirmations and promises made.

228

730. Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

731. As a direct and proximate result, Plaintiffs and class members suffered damages in the form of overpayment and loss of the benefit of their bargain.

732. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) for restitution; (c) for punitive damages; (d) requiring disgorgement; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other relief as this Honorable Court deems just, proper, and equitable.

## COUNT VII
### Breach of Implied Warranty of Merchantability (Minn. Stat. § 336.2-314)

733. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

734. Defendants' cannabis products came with an implied warranty that they were merchantable under Minn. Stat. § 336.2-314, warranting that such good were fit for the ordinary purpose for which they would be used.

735. Defendants breached their implied warranty of merchantability because their products were not in a merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cardiovascular disease, CHS and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and

229

unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

736. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

737. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

738. Defendants' products were not fit for ordinary use because they posed significant health risks, were defectively marketed without adequate warnings, and did not conform to the promises and affirmations made.

739. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

740. Plaintiffs and each member of the class were third-party beneficiaries of the Defendant's agreements with their distributors, dealers, and sellers for the distribution, dealing, and sale of Defendants' products to consumers. Specifically, Plaintiffs and class members are the intended

beneficiaries of the Defendants' implied warranties. Defendants' products are manufactured with the express purpose and intent of being sold to consumers.

741. Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

742. As a direct and proximate result, Plaintiffs and class members suffered damages, including overpayment and loss of the benefit of their bargain.

743. WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) for restitution; (c) for punitive damages; (d) requiring disgorgement; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other relief as this Honorable Court deems just, proper, and equitable.

## COUNT VIII
### Minnesota Common Law Fraud

744. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

745. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

231

746. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

747. Defendants' untrue, false, and/or misleading statements and omissions had the capacity to, were likely to, and in fact did, deceive reasonable consumers, including Plaintiffs and class members. Reasonable consumers, including Plaintiffs and class members, found Defendants untrue, false, and/or misleading statements and/or would have found Defendants' omissions, concealments, and/or undisclosed facts material to their purchasing decisions. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' decisions to purchase Defendants cannabis products.

748. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

749. Defendants knew that their misrepresentations and/or omissions were false and misleading and/or acted with reckless disregard for their truth or falsity.

750. Defendants intended for consumers to rely on such misrepresentations and omissions and act upon them.

232

751.     Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions and did not know they were false. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

752.     Defendants' conduct proximately caused damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

753.     Defendants' conduct deliberately disregarded the rights or safety of others, knew their actions created a high probability of injury, and/or deliberately proceeded to act in conscious and/or intentional disregard of this high probability of injury.

754.     WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (c) for punitive damages; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and reasonable.

## COUNT IX
### Minnesota Unjust Enrichment

755.     Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

233

756.    Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and/or misleading statements and/or omissions.

757.    Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety;  cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

758.    Defendants' conduct was unfair and unconscionable in that: 1) it included the manufacture, distribution, possession, sale, and marketing of products that are illegal under federal law and cause and exacerbate serious and debilitating mental health and other physical conditions; and 2) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under the Minnesota Cannabis Tax and Regulation Act; offend public policy; are immoral, unethical, oppressive, and unscrupulous; are part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

759.    As a result of Defendants' deceptive, false, and misleading statements and illegal claims as to the health, medicinal, or therapeutic qualities of their products and actions and many violations of Minnesota law and the federal Controlled Substances Act, Defendants were enriched at

234

the expense of consumers, Plaintiffs, and class members through the payment of the purchase price for Defendants' products.

760. Defendants were unjustly enriched by receiving payments from Plaintiffs and class members for cannabis products sold through deception, fraud, and unlawful conduct.

761. Defendants' retention of these benefits is unjust and inequitable because it was obtained through false statements, material omissions, and the sale of unreasonably dangerous products.

762. Plaintiffs and class members have no adequate remedy at law if Defendants are allowed to retain these ill-gotten gains.

763. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for restitution; (c) for punitive damages; (d) requiring disgorgement; (e) for prejudgment interest; (f) for attorneys' fees; and (g) for such other relief as this Honorable Court deems just, proper, and equitable.

**G.      Violations of Nevada Law Brought on Behalf of Nevada Subclass.**

764. Plaintiffs Rosenthal, Schiedel, and Ward bring each of the following claims on behalf of themselves and the Nevada Subclasses under Nevada law.

**<u>COUNT I</u>**
**Violation of the Nevada Deceptive Practices Act (Nev. Rev. Stat. §598.0903 *et seq*.)**

765. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

766. Pursuant to Nev. Rev. Stat. §598.0915, 598.0923, & 598.0925, "any person engages in a deceptive trade practice if, in the course of his or her business or occupation, he or she:"

a. "Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith." Nev. Rev. Stat. §§598.0915(5).

b. "Knowingly makes any other false representation in a transaction." Nev. Rev. Stat. §§598.0915(15).

c. "Violates a state or federal statute or regulation relating to the sale or lease of goods or services." Nev. Rev. Stat. §§598.0923(1)(c).

d. "Fails to disclose a material fact in connection the sale or lease of goods or services." Nev. Rev. Stat. §§598.0925(1)(a).

e. "Makes an assertion of scientific, clinical or quantifiable fact in an advertisement which would cause a reasonable person to believe that the assertion is true, unless, at the time the assertion is made, the person making it has possession of factually objective scientific, clinical or quantifiable evidence which substantiates the assertion." Nev. Rev. Stat. §§598.0925(1)(b).

767. Defendants have engaged in unlawful and deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. 598.0903 *et seq*., as set forth above, independent of any contract or warranty.

768. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the material facts that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can

236

cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

769. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

770. Defendants' conduct was illegal because it involved the manufacture, sale, and marketing of products that are illegal under federal law, including the federal Controlled Substances Act and the Racketeer Influenced and Corrupt Organizations Act.

771. In purchasing Defendants' products, Plaintiffs and class members relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to have relied on the misrepresentations and omissions.

772. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

773. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

774.     WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual damages, exemplary and punitive damages pursuant to Nev. Rev. Stat. § 42.005 for Defendants' fraudulent, malicious, and oppressive conduct; (b) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (c) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (d) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (e) requiring Defendants to disgorge their ill-gotten profits; (f) requiring Defendants to pay the costs of the suit, including attorneys' fees; (g) for prejudgment interest; and (h) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### Nevada Negligent Misrepresentation

775.     Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

776.     Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cause or contribute to adverse cardiovascular events, CHS, and/or cause cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

777.     These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

238

778. Defendants were careless or negligent in determining the truth of the above statements and/or omissions.

779. At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

780. Plaintiffs and class members did rely on these statements and/or omissions when purchasing cannabis products.

781. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

782. Defendants' conduct proximately caused actual damages to Plaintiffs and class members by exposing them to undisclosed health risks, loss of informed consumer choice, and purchase of products posing unreasonable safety risks, in addition to any economic losses. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

783. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring restitution, disgorgement, and/or rescission of all monies wrongfully obtained by Defendants; (c) for injunctive and equitable relief to prevent further negligent and misleading practices; (d) for attorney's

fees and costs as permitted by law; (e) for pre judgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT III
### Nevada Breach of Express Warranty (Nev. Rev. Stat. 104.2313)

784.    Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

785.    Defendants made affirmations of fact and promises to Plaintiffs and class members including but not limited to:

a.    Warranties that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b.    Warranties that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

c.    Warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis  products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD,

240

depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Warranties that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e. Warranties that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

f. Warranties that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

786. These affirmations became part of the basis of the bargain, creating express warranties under Nev. Rev. Stat. 104.2313.

787. Defendants breached their express warranties because their products were not therapeutic or safe and did not conform to the affirmations and promises made.

241

788.    Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

789.    As a direct and proximate result, Plaintiffs and class members suffered damages in the form of overpayment and loss of the benefit of their bargain.

790.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring restitution, disgorgement, and/or rescission of all monies wrongfully obtained by Defendants; (c) for injunctive and equitable relief to prevent further false warranty claims and to require corrective disclosures; (d) for reasonable attorney's fees and costs as permitted by law; (e) for pre judgment interest (f) requiring Defendants to pay the costs of the suit, including attorneys' fees; (g) for prejudgment interest; and (h) for such other and further relief as this Honorable Court deems just, proper, and equitable.

<u>COUNT IV</u>
**Nevada Breach of Implied Warranty of Merchantability (NRS 104.2314)**

791.    Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

792.    Defendants' cannabis products came with an implied warranty that they were merchantable under Nev. Rev. Stat. 104.2314, warranting that such goods were fit for the ordinary purpose for which they would be used.

793.    Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cardiovascular disease, CHS, and/or cannabis use disorder, and/or

242

significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

794. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, or sold.

795. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

796. Defendants' products were not fit for ordinary use because they posed significant health risks, were defectively marketed without adequate warnings, and did not conform to the promises and affirmations made.

797. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

243

798. Plaintiffs and class members were third-party beneficiaries of Defendants' agreements with their distributors, dealers, and sellers for the distribution, dealing, and sale of Defendants' products to consumers. Specifically, Plaintiffs and class members are the intended beneficiaries of Defendants' implied warranties. Defendants' products are manufactured with the express purpose and intent of being sold to consumers.

799. Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

800. As a direct and proximate result, Plaintiffs and class members suffered damages, including overpayment and loss of the benefit of their bargain.

801. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring restitution, disgorgement, and/or rescission of all monies wrongfully obtained by Defendants; (c) for injunctive and equitable relief to prevent further sales of unmerchantable products and to require corrective disclosures; (d) for reasonable attorney's fees and costs as permitted by law; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT V
### Nevada Common Law Fraud

802. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

803. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented

244

by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

804. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

805. Defendants knew or had a reckless disregard for the truth that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

806. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

807. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

808. Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

809. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for exemplary and punitive damages pursuant to Nev. Rev. Stat. § 42.005 on the grounds that Defendants acted with fraud, malice, and/or oppression; (c) requiring restitution, disgorgement, and/or rescission of all monies wrongfully obtained by Defendants; (d) for injunctive and equitable relief to prevent further fraudulent and misleading practices; (e) for reasonable attorney's fees and costs as permitted by law; (f) for pre judgment interest; and (g) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VI
### Nevada Unjust Enrichment

810. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

811. Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and/or

246

misleading statements and/or omissions. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to consumers to promote the sale and use of cannabis.

812. Defendants' marketing, advertising, and labeling and packaging of their cannabis products concealed and failed to disclose the facts and/or adequately warn Plaintiffs and class members that the products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or poses significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

813. Defendants were enriched at the expense of consumers, Plaintiffs, and class members through the payment of the purchase price for Defendants' products.

814. Defendants were unjustly enriched by receiving payments from Plaintiffs and class members for cannabis products sold through deception, fraud, and unlawful conduct.

815. Defendants' retention of these benefits is unjust and inequitable because it was obtained through false statements, material omissions, and the sale of unreasonably dangerous products.

816. Plaintiffs and class members plead this in the alternative to other claims, without which they will have no adequate remedy at law.

817. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) requiring restitution, disgorgement, and/or rescission of all monies wrongfully obtained by Defendants; (b) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis

products or purchased Defendants' products when they otherwise would not have done so; (c) for injunctive and equitable relief to prevent Defendants' further unjust enrichment; (d) for reasonable attorney's fees and costs as permitted by law; (e) for pre judgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

**H. Violations of New Jersey Law Brought on Behalf of New Jersey Subclass.**

818.     Plaintiffs Samuel, Schlenker, DeLorenzo, and Silveira bring each of the following claims on behalf of themselves and the New Jersey Subclasses under New Jersey law.

**COUNT I**
**New Jersey Consumer Fraud and Deceptive Business Practices Act Violation**

819.     Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

820.     Pursuant to  N.J. Stat. Anno. §56:8-2:

> The act, use, or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice…

821.     Defendants have engaged in, used, or employed unconscionable commercial practices, deceptions, frauds, false pretenses, and misrepresentations in violation of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-1 *et seq.*, as set forth above.

822.     Defendants' marketing and advertisements for and labeling and packaging of their cannabis products concealed, suppressed, omitted, and/or failed to disclose or adequately warn of the material facts that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as

248

schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

823. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

824. Defendants' conduct was unfair and unconscionable in that: a) it included the manufacture, sale, and marketing of products that are illegal under federal law and cause and/or exacerbate serious and debilitating mental health conditions; b) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products violate New Jersey laws and regulations; c) it offends public policy; is immoral, unethical, oppressive, and unscrupulous; d) it is part of a pattern of sales conduct that would outrage and offend the public conscience; and/or e) it caused substantial harm that greatly outweighs any benefits associated with the conduct.

825. Defendants' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, cause confusion or misunderstanding to reasonable consumers including Plaintiffs and class members. Reasonable consumers, including Plaintiffs and class members, would have found it material to their purchasing decisions that: a) Defendants' cannabis products were not therapeutic or medicinal as represented by Defendants and could not treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma; b) there is no credible medical or scientific evidence or scholarship that supports that Defendants' cannabis products are medicinal or

therapeutic as represented by Defendants and/or can treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma as Defendants represent; c) certain of Defendants' cannabis products do not uniquely or more effectively treat, ease, alleviate, be good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety when compared to other cannabis products and/or other medical disorders, including, but not limited to, pain and glaucoma; and d) Defendants' products cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; adverse cardiovascular events, CHS, and/or cannabis use disorder.

826. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' and class members' decisions to purchase cannabis products.

827. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

828. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading and intended for consumers, including Plaintiffs and class members, to rely on such misrepresentations and omissions.

829. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiff and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiff and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

830. WHEREFORE, Plaintiff and class members seek damages against Defendants: (a) awarding Plaintiff and class members threefold their actual or compensatory damages; (b) requiring Defendants to pay threefold restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to disgorge their ill-gotten profits; (d) prohibiting Defendants from making any further misrepresentations or omissions regarding the medicinal, health, or therapeutic benefits of cannabis or cannabis products; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### New Jersey Negligent Misrepresentation

831. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

832. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause,

251

contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cause or contribute to adverse cardiovascular events, CHS, and/or cause cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

833. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

834. Defendants were careless or negligent in determining the truth of the above statements and/or omissions.

835. At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reasonable reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

836. Plaintiffs and class members did rely on these statements and/or omissions when purchasing cannabis products.

837. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

838. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and the acts showed gross recklessness.

839. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class

members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

840.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for consequential and incidental damages resulting from Defendants' negligent conduct; (c) for prejudgment interest; (d) for reasonable attorneys' fees, costs, and expenses incurred in bringing this action; (e) for punitive damages to the extent permitted by New Jersey law to punish Defendants' willful, intentional, and reckless conduct and to deter similar future misconduct; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT III
### New Jersey Breach of Express Warranty

841.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

842.    Pursuant to N.J. Rev. Stat. §12A:2-313:

(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise.
(b) Any description of the good which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description….
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant" or guarantee" or that he have specific intention to make a warrant, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

843.    Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that cannabis, any constituent part of cannabis, or

253

their cannabis products can treat, ease, alleviate, are good for, aid, or relieve or otherwise are a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

844. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that certain Defendants' products uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

845. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that that there is credible medical or scientific evidence or scholarship that supports that cannabis products are medicinal or therapeutic and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

846. Defendants breached these warranties resulting in damages to Plaintiffs and class members who purchased Defendants' products, which did not have the purported benefits.

847. Plaintiffs and class members complied with the terms of the express warranty, and demanded Defendants fulfill its terms, and provided notice to Defendants within a reasonable time upon discovering their breach of this express warranty.

848. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and

254

spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted.

849.    Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and their acts showed gross recklessness.

850.    WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a)  for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT IV
### New Jersey Breach of Implied Warranty of Merchantability

851.    Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

852.    Pursuant to N.J. Rev. Stat §12A:2-314:

> (1) Unless excluded or modified (12A:2-316) a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
> (2) Goods to be merchantable must be at least such as
> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and

255

(c) are fit for the ordinary purposes for which such goods are used; and
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require; and
(f) conform to the promises or affirmations of fact made on the container or label if any.
(3) Unless excluded or modified (Section 2-316 [810 ILCS 5/2-316]) other implied warranties may arise from course of dealing or usage of trade.

853. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the ordinary purpose for which they would be used. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cardiovascular disease, CHS, and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that its cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

854. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not

merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

855. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

856. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

857. Plaintiffs and class members provided Defendants with notice of the breach of implied warranty within a reasonable time after discovering, or when they should have discovered, the above-mentioned breaches.

858. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or purchased products that they would not otherwise have purchased.

859. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and their acts showed gross recklessness.

860. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental

257

and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**<u>COUNT V</u>**
**New Jersey Common Law Fraud**

861. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

862. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

863. Defendants' conduct was unfair and unconscionable in that: a) it included the manufacture, sale, and marketing of products that are illegal under federal law and cause and exacerbate serious and debilitating mental health and other physical conditions; b) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under New Jersey law; c) it offends public policy; d) it is immoral, unethical, oppressive, and unscrupulous; e) it is part of a pattern of

sales conduct that would outrage and offend the public conscience; f) it caused substantial harm that greatly outweighs any benefits associated with the conduct.

864. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

865. Defendants knew or had a reckless disregard for the truth that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

866. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

867. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and their acts showed gross recklessness.

868. Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved

differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

869. WHEREFORE, Plaintiffs and class members seek damages against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for consequential and incidental damages resulting from Defendants' fraudulent conduct; (c) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (d) for prejudgment interest as permitted by law; (e) for reasonable attorneys' fees, costs of suit, and expenses incurred in bringing this action; (f) for punitive damages to the extent permitted by New Jersey law to punish Defendants' willful, intentional, and reckless conduct and to deter similar future misconduct; and (g) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VI
### New Jersey Unjust Enrichment

870. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

871. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose

260

significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

872. Defendants' conduct was unfair and unconscionable in that: 1) it included the manufacture, distribution, possession, sale, and marketing of products that are illegal under federal law and cause and exacerbate serious and debilitating mental health and other physical conditions; and 2) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under New Jersey law; offend public policy; are immoral, unethical, oppressive, and unscrupulous; are part of a pattern of sales conduct that would outrage and offend the public conscience; and caused substantial harm that greatly outweighs any benefits associated with the conduct.

873. As a result of Defendants' deceptive, false, and misleading statements and illegal claims as to the health, medicinal, or therapeutic qualities of their products and actions and many violations of New Jersey law and the federal Controlled Substances Act, Defendants were enriched at the expense of consumers, Plaintiffs, and class members through the payment of the purchase price for Defendants' products.

874. Defendants requested and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for Defendants' cannabis products.

875. There is no justification for Defendants' retention of this benefit.

876. Defendants' retention of the benefit of these ill-gotten gains on the back of human misery and suffering caused by mental health disorders violates fundamental principles of justice, equity, and good conscience.

877. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and their acts showed gross recklessness.

878. Thus, it would be unjust for Defendants to retain the ill-gotten benefits that they received from Plaintiffs and class members without restitution to Plaintiffs and class members.

879. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

880. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations or omissions; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**I.      Violations of New York Law Brought on Behalf of New York Subclass.**

881. Plaintiffs Levy, Acevedo, and Dabul bring each of the following claims on behalf of themselves and the New York Subclasses under New York law.

**<u>COUNT I</u>**
**New York General Business Law ("GBL") §349 Violation**

882. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

883. Pursuant to GBL §349 (a), "[d]eceptive acts or practices in conduct of any business, trade, or commerce or in the furnishing of any service in this state are hereby declared unlawful."

884. Defendants have engaged in deceptive acts or practices in conduct of their business, trade, and commerce and in furnishing services in violation of GBL §349.

885. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

886. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic. Defendants' conduct occurred, and continues to occur in the course of Defendants' business.

887. Defendants knowingly and willfully violated this section.

888. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

889. Further, GBL §349(a) provides that, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or

practice, and action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

890. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages increased to three times the actual damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to disgorge their ill-gotten profits; (d) for the costs of the suit, including attorneys' fees; (e) requiring injunctive relief necessary to preclude Defendants from making any further medicinal, health, or therapeutic claims regarding cannabis; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### New York GBL §350 Violation

891. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

892. Pursuant to GBL §350, "false advertising in the conduct of any business, trade or commerce in the furnishing of any service in this state is hereby declared unlawful." "False advertising" under GBL §350-a means "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect…In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

893.     Defendants created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions in advertising. At all times relevant to this Complaint, Defendants made numerous statements regarding the health, medicinal, and therapeutic benefits of cannabis.

894.     Defendants' statements were deceptive, and illegal under the Cannabis Law and applicable regulations, because Defendants' marketing and advertisements for and/or labeling of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn New York Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and anxiety; cause or contribute to adverse cardiovascular events and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

895.     Defendants knowingly and willfully violated this section.

896.     Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

897.     WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual or compensatory damages increased to three times the actual damages; (b) requiring

265

Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations and omissions; (c) requiring Defendants to disgorge their ill-gotten profits; (d) for Defendants to pay the costs of the suit, including attorneys' fees; (e) requiring injunctive relief necessary to preclude Defendants from making any further medicinal, health, or therapeutic claims regarding cannabis; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**<u>COUNT III</u>**
**New York Negligent Misrepresentation**

898. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

899. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

900. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

901. Defendants knew or should have known that such representations were false or unsupported by credible scientific evidence.

266

902. Defendants were in a special position of confidence and trust with Plaintiffs and class members because they held themselves out as possessing specialized or superior knowledge regarding the medical and health effects of cannabis products.

903. Defendants supplied this information for the purpose of influencing consumers' purchasing decisions.

904. At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

905. Plaintiffs and class members did reasonably rely on these statements and/or omissions when purchasing cannabis products.

906. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

907. Defendants' conduct was willful, wanton, malicious, and in reckless disregard of the rights and safety of Plaintiffs and the public at large. Defendants engaged in a pattern of deliberate deception and concealment that demonstrates a high degree of moral culpability and wanton dishonesty, evincing a conscious and reckless indifference to the health and safety of consumers.

908. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

909. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations or omissions; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT IV
### New York Breach of Express Warranty

910. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

911. Pursuant to New York General Business Law §2-313:

(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise.
(b) Any description of the good which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description.

…

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant" or guarantee" or that he have specific intention to make a warrant, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

912. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that cannabis, any constituent part of cannabis, or their cannabis products can treat, ease, alleviate, are good for, aid, or relieve or otherwise are a

268

medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

913. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that certain Defendants' products uniquely or more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute a medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

914. Defendants provided Plaintiffs and class members with written and unwritten express warranties, including but not limited to, warranties that that there is credible medical or scientific evidence or scholarship that supports that cannabis products are medicinal or therapeutic as described by Defendants and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma

915. Defendants breached these warranties resulting in damages to Plaintiffs and class members who purchased Defendants' products, which did not have the purported benefits.

916. Plaintiffs and class members complied with the terms of the express warranty, and demanded Defendants fulfill its terms, and provided notice to Defendants within a reasonable time upon discovering their breach of this express warranty.

917. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and

269

spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted.

918. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was intentional, willful, morally wrong and their acts showed gross recklessness.

919. Defendants' conduct was willful, wanton, malicious, and in reckless disregard of the rights and safety of Plaintiffs and the public at large. Defendants engaged in a pattern of deliberate deception and concealment that demonstrates a high degree of moral culpability and wanton dishonesty, evincing a conscious and reckless indifference to the health and safety of consumers.

920. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**COUNT V**
**New York Breach of Implied Warranty of Merchantability**

921. Plaintiffs and class members re-allege and incorporate the allegations in all prior paragraphs within this Complaint as if they were fully set forth herein.

922. Pursuant to New York General Business Law 2-314:

> (1) Unless excluded or modified (Section 2-316) a warranty that the
> goods shall be merchantable is implied in a contract for their sale if the

270

seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

923. Defendants' cannabis products came with an implied warranty that they were merchantable and fit for the ordinary purpose for which they would be used. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; were defective when sold; posed significant health risks, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cardiovascular disease and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health

271

disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

924. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, and advertised, or sold.

925. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

926. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

927. Plaintiffs and class members provided Defendants with notice of the breach of implied warranty within a reasonable time after discovering, or when they should have discovered, the above-mentioned breaches.

928. As a proximate result of the breach of warranties by Defendants, Plaintiffs and class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised and promoted, marketed, and advertised by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have the purported benefits or value or had less purported benefits or value than warranted or purchased products that they would not otherwise have purchased.

929. Defendants' conduct was willful, wanton, malicious, and in reckless disregard of the rights and safety of Plaintiffs and the public at large. Defendants engaged in a pattern of deliberate

deception and concealment that demonstrates a high degree of moral culpability and wanton dishonesty, evincing a conscious and reckless indifference to the health and safety of consumers.

930.    WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including incidental and consequential damages; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' breach; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VI
### New York Common Law Fraud

931.    Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

932.    Defendants made numerous false and misleading statements and omissions of material fact concerning the nature, safety, and purported therapeutic qualities of their cannabis products.

933.    Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety;  cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

273

934. Defendants' conduct was unfair and unconscionable in that: a) it included the manufacture, sale, and marketing of products that are illegal under federal law and cause and exacerbate serious and debilitating mental health and other physical conditions; and b) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under New York law; c) it offends public policy; are immoral, unethical, oppressive, and unscrupulous; d) it is part of a pattern of sales conduct that would outrage and offend the public conscience; and e) it caused substantial harm that greatly outweighs any benefits associated with the conduct.

935. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products ; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

936. Defendants knew or had a reckless disregard for the truth that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

937. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

938. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

939. Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

940. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (c) requiring Defendants to pay the costs of the suit, including attorneys' fees; (d) for prejudgment interest; and (e) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT VII
### New York Unjust Enrichment

941. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

275

942.     Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

943.     Defendants' conduct was unfair and unconscionable in that: a) it included the manufacture, distribution, possession, sale, and marketing of products that are illegal under federal law and cause and exacerbate serious and debilitating mental health and other physical conditions; and b) the misrepresentations and omissions of material facts concerning the medicinal and therapeutic characteristics and safety of their cannabis products are illegal under New York laws; c) it offends public policy; are immoral, unethical, oppressive, and unscrupulous; d) it is part of a pattern of sales conduct that would outrage and offend the public conscience; and e) it caused substantial harm that greatly outweighs any benefits associated with the conduct.

944.     As a result of Defendants' deceptive, false, and misleading statements and illegal claims as to the health, medicinal, or therapeutic qualities of their products and actions and many violations of New York Laws and the federal Controlled Substances Act, Defendants were enriched at the expense of consumers, Plaintiffs, and class members through the payment of the purchase price for Defendants' products.

945.     Defendants requested and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for Defendants' cannabis products.

946. There is no justification for Defendants' retention of this benefit.

947. Defendants' retention of the benefit of these ill-gotten gains on the back of human misery and suffering caused by mental health disorders violates fundamental principles of justice, equity, and good conscience.

948. Thus, it would be unjust for Defendants to retain the ill-gotten benefits that they received from Plaintiffs and class members without restitution to Plaintiffs and class members.

949. Plaintiffs and class members plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

950. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring Defendants to pay restitution on any money acquired as a result of Defendants' misrepresentations or omissions; (c) for punitive damages; (d) requiring Defendants to disgorge their ill-gotten profits; (e) requiring Defendants to pay the costs of the suit, including attorneys' fees; (f) for prejudgment interest; and (g) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

**J.       Violations of Ohio Law Brought on Behalf of Ohio Subclass.**

951. Plaintiffs Kindell, Walker, Hahn Jr., Hill, Coble, and Secor bring each of the following claims on behalf of themselves and the Ohio Subclass under Ohio law.

**COUNT I**
**Violation of the Ohio Consumers Sales Practices Act (Ohio Rev. Code §1345.01 *et seq.*)**

952. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

953. Pursuant to Ohio Rev. Ann. §1345.02, §1345.03 (West 2025), it constitutes an unfair, deceptive, or unconscionable act or practice for a supplier, in connection with a consumer transaction, to:

    a. Represent "[t]hat the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have." Ohio Rev. Code Ann. § 1345.02 (B)(1).

    b. Represent "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." Ohio Rev. Code Ann. § 1345.02 (B)(3).

    c. Knowingly take advantage of the inability of the consumer to reasonably protect the consumer's interests because of the consumer's ignorance. *See* Ohio Rev. Code Ann. § 1345.03(B)(1).

    d. Know at the time of the transaction of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction. *See* Ohio Rev. Code § 1345.03(B)(3).

    e. Knowingly make a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment. *See* Ohio Rev. Code § 1345.03(B)(6).

954. Defendants have engaged in unlawful and deceptive business practices in violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §1345.01 *et seq*. ("OCSPA")

955. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the material fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar

disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

956. These omissions were misleading, unfair, and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

957. In purchasing Defendants' products, Plaintiffs and class members relied on these misrepresentations and/or omissions. Reasonable consumers would have been expected to have relied on the misrepresentations and omissions.

958. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading, intended for consumers to rely on such misrepresentations and omissions, and that Plaintiffs and class members were ignorant of the facts that cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

959. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class

279

members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

960. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual damages sustained as a result of Defendants' violations of the OCSPA, and, where applicable, treble damages pursuant to Ohio Rev. Code Ann. §1345.09; (b) for statutory, multiplied, or other penalties in the maximum amount authorized by law; (c) for reasonable attorneys' fees and costs; and (d) for equitable and injunctive relief, including but not limited to, an order enjoining Defendants from engaging in the unlawful practices alleged herein; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court may deem just, proper, and equitable.

## COUNT II
### Violation of the Ohio Deceptive Practices Act (Ohio Rev. Code Ann. §4165.01 *et seq.*)

961. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

962. Pursuant to Ohio Rev. Code Ann. §4165.02 (West 2025), it constitutes an unfair, deceptive, or unconscionable act or practice for a supplier, in connection with a consumer transaction, to:

a. Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

b. Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

c. Advertises goods or services with intent not to sell them as advertised.

963. Defendants have engaged in unlawful and deceptive business practices in violation of the Ohio Deceptive Practices Act, Ohio Rev. Code Ann. § 4165.01 *et seq.* ("ODPA").

964. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the material fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

965. These omissions were misleading, unfair, and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

966. In purchasing Defendants' products, Plaintiffs and class members class relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to have relied on the misrepresentations and omissions.

967. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading, intended for consumers to rely on such misrepresentations and omissions, and that Plaintiffs and class members were ignorant of the facts that cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

968. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

969. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual damages sustained by Plaintiffs and class members, or statutory damages as permitted by Ohio Rev. Code Ann. §1345.09; (b) for declaratory and injunctive relief enjoining Defendants from continuing the unfair, deceptive, and unconscionable practices alleged herein; (c) requiring rescission of purchase contracts where appropriate and restitution of monies paid; (d) for reasonable attorneys' fees, costs, and expenses of litigation as provided by Ohio Rev. Code §1345.09(F); (h) for prejudgment interest; and (e) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT III
**Ohio Negligent Misrepresentation**

970. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

971. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or cause or contribute to adverse cardiovascular events, CHS, and/or cause cannabis use disorder, and/or pose significant risks to

282

fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

972. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

973. Defendants were careless or negligent in determining the truth of the above statements and/or omissions.

974. At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

975. Plaintiffs and class members did reasonably and justifiably rely on these statements and/or omissions when purchasing cannabis products.

976. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

977. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

978. WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring restitution and/or disgorgement of all monies wrongfully obtained by Defendants, and, where

283

appropriate, rescission of purchase contracts entered into as a result of Defendants' conduct; (c) for equitable or injunctive relief as the Court deems proper to prevent continuing negligent and misleading practices; (d) for reasonable attorneys' fees and costs where authorized by law; (e) for pre judgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

**COUNT IV**
**Breach of Express Warranty (Ohio Rev. Code §1302.26)**

979. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

980. Defendants made affirmations of fact and promises to Plaintiffs and class members including but not limited to:

a. Warranties that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

b. Warranties that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

c. Warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or

284

can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Warranties that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e. Warranties that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

f. Warranties that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS.

981. These affirmations became part of the basis of the bargain, creating express warranties under Ohio Rev. Code 1302.26.

982. Defendants breached their express warranties because their products were not therapeutic or safe and did not conform to the affirmations and promises made.

983. Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

984. As a direct and proximate result, Plaintiffs and class members suffered incidental and consequential damages in the form of overpayment and loss of the benefit of their bargain.

985. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) requiring Defendants to pay Plaintiffs' and class members' damages for breach of express warranty, including restitution, rescission, and incidental and consequential damages as permitted under Ohio Rev. Code 1302.88; (b) requiring disgorgement of all monies wrongfully obtained by Defendants; (c) for pre interest as permitted by law; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; (e) for prejudgment interest; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT V
### Breach of Implied Warranty of Merchantability (Ohio Rev. Code 1302.27)

986. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

987. Defendants' cannabis products came with an implied warranty that they were merchantable under Ohio Rev. Code §1302.27, warranting that such goods were fit for the ordinary purpose for which they would be used.

988. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; posed significant health risks; and did not conform to marketing promises, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cardiovascular disease, CHS, and/or cannabis use

286

disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

989.    Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, or sold.

990.    Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

991.    Defendants' products were not fit for ordinary use because they posed significant health risks, were defectively marketed without adequate warnings, and did not conform to the promises and affirmations made.

992.    Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

287

993. Plaintiffs and class members were third-party beneficiaries of Defendants' agreements with their distributors, dealers, and sellers for the distribution, dealing, and sale of Defendants' products to consumers. Specifically, Plaintiffs and class members are the intended beneficiaries of Defendants' implied warranties. Defendants' products are manufactured with the express purpose and intent of being sold to consumers.

994. Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

995. As a direct and proximate result, Plaintiffs and class members suffered incidental and consequential damages, including overpayment and loss of the benefit of their bargain.

996. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) requiring Defendants to pay Plaintiffs' and class members' damages for breach of implied warranty of merchantability, including restitution, rescission, and incidental and consequential damages as permitted under Ohio Rev. Code 1302.88; (b) requiring disgorgement of all monies wrongfully obtained by Defendants; (c) for prejudgment interest as permitted by law; (d) requiring Defendants to pay the costs of the suit, including attorneys' fees; and (e) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VI
## Ohio Common Law Fraud

997. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

998. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as

288

schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events and/or CHS; and/or poses significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

999. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

1000. Defendants knew or acted with reckless disregard as to whether their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

1001. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

1002. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and their acts showed a reckless disregard of the rights of Plaintiffs and class members.

289

1003.   Defendants' conduct directly caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

1004.   WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) requiring rescission and restitution, or alternatively disgorgement of all profits, revenues, and benefits unjustly retained by Defendants; (c) for punitive damages sufficient to punish and deter Defendants' willful, wanton, and reckless conduct; (d) for prejudgment interest; (e) for costs of suit, including reasonable attorneys' fees where authorized; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VII
### Ohio Unjust Enrichment

1005.   Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

1006.   Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and/or misleading statements and/or omissions. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to consumers to promote the sale and use of cannabis.

290

1007. Defendants' marketing, advertising, and labeling and packaging of their cannabis products concealed and failed to disclose the facts and/or adequately warn Plaintiffs and class members that the products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis sue disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

1008. Defendants were enriched at the expense of consumers and class members through the payment of the purchase price for Defendants' products and accepted these payments with awareness of the benefits conferred.

1009. Defendants were unjustly enriched by receiving payments from Plaintiffs and class members for cannabis products sold through deception, fraud, and unlawful conduct.

1010. Defendants' retention of these benefits is unjust and inequitable because it was obtained through false statements, material omissions, and the sale of unreasonably dangerous products.

1011. Plaintiffs and class members plead this in the alternative to other claim, without which they will have no adequate remedy at law.

1012. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) requiring restitution and disgorgement of all monies and benefits unjustly obtained by Defendants from Plaintiffs and class members; (b) impose a constructive trust over such monies and benefits for the benefit of Plaintiffs and class members; (c) for prejudgment interest as permitted by law; (d)

291

requiring Defendants to pay the costs of the suit, including attorneys' fees; and (e) for such other and further relief as this Honorable Court deems just, proper, and equitable.

### K. Violations of Rhode Island Law Brought on Behalf of Rhode Island Subclass

1013. Plaintiffs Ardito and Kennedy bring each of the following claims on behalf of themselves and the Rhode Island Subclass under Rhode Island law.

**COUNT I**

**Violation of the Rhode Island Deceptive Practices Act (R.I. Gen. Laws §6-13.1-1 *et seq*)**

1014. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

1015. Pursuant to R.I. Gen. Laws §6-13.1-1 and §6-13.1-2, it constitutes an unfair method of competition and unfair or deceptive acts or practices to:

    a. Represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

    b. Represent that goods or services are of a particular standard, quality, or grade, or that good are of a particular style or model, if they are of another.

    c. Advertise goods or services with the intent not to sell them as advertised;

    d. Engage in any act conduct that creates a likelihood of confusion or of misunderstanding.

    e. Use any method, act, or practice that misleads or deceives members of the public in a material respect.

1016. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the material fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar

292

disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or poses significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

1017. These omissions were misleading, unfair, and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

1018. In purchasing Defendants' products, Plaintiffs and class members relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to have relied on the misrepresentations and omissions.

1019. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading, intended for consumers to rely on such misrepresentations and omissions, and that Plaintiffs and class members were ignorant of the facts that cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

1020. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class

members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered for Defendants' cannabis products or pay more for Defendants' cannabis products than they otherwise would have paid.

1021. WHEREFORE, Plaintiffs and class members seek damages against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for treble damages for Defendants' willful and knowing violations of the Rhode Island Deceptive Trade Practices Act pursuant to R.I. Gen. Laws § 6-13.1-5.2(b); (c) for reasonable attorneys' fees and costs as permitted under R.I. Gen. Laws § 6-13.1-5.2(b); (d) for prejudgment interest; (e) requiring equitable and injunctive relief enjoining Defendants from continuing the deceptive practices alleged herein; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

**COUNT II**
**Rhode Island Negligent Misrepresentation**

1022. Plaintiffs and class members re-allege and incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

1023. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose or adequately warn of the fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cause or contribute to adverse cardiovascular events, CHS, and/or cause cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

294

1024. These omissions were misleading and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

1025. Defendants were careless or negligent in determining the truth of the above statements and/or omissions. Defendants, in the course of their business of manufacturing, marketing, and selling cannabis products, failed to exercise reasonable care or competence in obtaining or communicating the information supplied to consumers.

1026. At all relevant times, Defendants made these statements and/or omissions with the intent of inducing reliance on them by Plaintiffs and class members and with the intent to cause Plaintiffs and class members to purchase their cannabis products.

1027. Plaintiffs and class members reasonably and justifiably relied on these statements and/or omissions when purchasing cannabis products.

1028. Defendants' unlawful representations described herein are continuing in nature and are widespread practices.

1029. Defendants' conduct proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

1030. WHEREFORE, Plaintiffs and class members seek judgment against Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for pre-judgment

interest; (c) for costs and reasonable attorneys' fees; and (d) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT III
### Breach of Express Warranty (R.I. Gen. Laws § 6A-2-313)

1031. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

1032. Defendants made affirmations of fact and promises to Plaintiffs and class members including but not limited to:

   a. Warranties that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

   b. Warranties that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

   c. Warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD,

296

depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d.  Warranties that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e.  Warranties that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis sue disorder, and/or CHS.

f.  Warranties that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events, cannabis use disorder and/or CHS.

1033.  These affirmations became part of the basis of the bargain, creating express warranties under R.I. Gen. Laws §6-A-2-313.

1034.  Defendants breached their express warranties because their products were not therapeutic or safe and did not conform to the affirmations and promises made.

297

1035. Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

1036. As a direct and proximate result of Defendants' breach, Plaintiffs and class members suffered damages including overpayment for the products, loss of the benefit of their bargain, and incidental and consequential damages pursuant to R.I. Gen. Laws § 6A-2-714 and § 6A-2-715.

1037. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for actual, compensatory, incidental, and consequential damages, including overpayment and loss of the benefit of the bargain, pursuant to R.I. Gen. Laws §§ 6A-2-714 and 6A-2-715; (b) for prejudgment interest as allowed by law; (c) for costs and reasonable attorneys' fees; and (d) for such other and further relief as this Honorable Court deems just, proper, and equitable.

### COUNT IV
### Breach of Implied Warranty of Merchantability (R.I. Gen. Laws § 6A-2-314)

1038. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

1039. Defendants' cannabis products came with an implied warranty that they were merchantable under R.I. Gen. Laws § 6A-2-314, warranting that such goods were fit for the ordinary purpose for which they would be used.

1040. Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; posed significant health risks; and did not conform to marketing promises, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cardiovascular disease and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably

298

dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

1041. Defendants breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, or sold.

1042. Defendants also breached the warranty implied at the time of sale in that Plaintiffs and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

1043. Defendants' products were not fit for ordinary use because they posed significant health risks, were defectively marketed without adequate warnings, and did not conform to the promises and affirmations made.

1044. Plaintiffs and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiffs and class members, on the other hand.

1045. Plaintiffs and class members were third-party beneficiaries of Defendants' agreements with their distributors, dealers, and sellers for the distribution, dealing, and sale of Defendants' products to consumers. Specifically, Plaintiffs and class members are the intended

299

beneficiaries of Defendants' implied warranties. Defendants' products are manufactured with the express purpose and intent of being sold to consumers.

1046. Plaintiffs and class members provided notice of breach within a reasonable time after discovery.

1047. As a direct and proximate result of Defendants' breach, Plaintiffs and class members suffered damages recoverable under R.I. Gen. Laws §§ 6A-2-714 and 6A-2-715, including overpayment, loss of the benefit of their bargain, and incidental and consequential damages.

1048. WHEREFORE, Plaintiffs and class members seek judgment Defendants: (a) for actual, compensatory, incidental, and consequential damages, including overpayment and loss of the benefit of the bargain, pursuant to R.I. Gen. Laws §§ 6A-2-714 and 6A-2-715; (b) for prejudgment interest; (c) for costs and reasonable attorneys' fees; and (d) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT V
**Rhode Island Common Law Fraud**

1049. Plaintiffs and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

1050. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiffs and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

1051. Defendants owed Plaintiffs and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

1052. Defendants knew, or recklessly disregarded the truth, and acted willfully and intentionally to deceive. Defendants' misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions and act upon them.

1053. Plaintiffs and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances.

1054. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiffs and class members.

1055. Defendants' conduct was the direct and proximate cause of Plaintiffs and Plaintiffs class ascertainable loss of money and property. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and

301

omissions induced Plaintiffs and class members to purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered or pay more for Defendants' cannabis products than they otherwise would have paid.

1056. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so; (b) for punitive damages based on Defendants' willful, malicious, and reckless conduct; (c) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (d) for prejudgment interest; (e) for costs and attorneys' fees; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VI
### Rhode Island Unjust Enrichment

1057. Plaintiffs and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

1058. Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and/or misleading statements and/or omissions. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to consumers to promote the sale and use of cannabis.

1059. Defendants' marketing, advertising, and labeling and packaging of their cannabis products concealed and failed to disclose the facts and/or adequately warn Plaintiffs and class members that the products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to

302

adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

1060. Defendants were enriched at the expense of Plaintiffs and class members through the payment of the purchase price for Defendants' cannabis products, and Defendants accepted and retained these payments with full knowledge of the benefits conferred.

1061. Defendants were unjustly enriched by receiving payments from Plaintiffs and class members for cannabis products sold through deception, fraud, and unlawful conduct.

1062. Defendants' retention of these benefits is unjust and inequitable because it was obtained through false statements, material omissions, and the sale of unreasonably dangerous products, and equity and good conscience require restitution.

1063. Plaintiffs and class members allege this in the alternative to other claims, without which they would have no adequate remedy at law.

1064. WHEREFORE, Plaintiffs and class members seek judgment against all Defendants: (a) for restitution and disgorgement of all amounts by which Defendants were unjustly enriched through the sale of their cannabis products; (b) for prejudgment interest; (c) for costs and reasonable attorneys' fees; and (d) for such other and further relief as this Honorable Court deems just, proper, and equitable.

L. **Violations of Virginia Law Brought on Behalf of Virginia Subclass**

1065. Plaintiffs Burrola and Childs bring each of the following claims on behalf of themselves and the Virginia Subclass under Virginia law.

303

## COUNT I
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §§ 59.1-196 through 59.1-207).

1066. Plaintiff and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein. Pursuant to the Virginia Consumer Protection Act, "the following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful":

a. "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits[.]" Va. Code Ann. § 59.1-200(A)(5).

b. "Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model[.]" Va. Code Ann. § 59.1-200(A)(6).

c. "Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised[.]" Va. Code Ann. § 59.1-200(A)(8).

d. "Using a deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code Ann. § 59.1-200(A)(14).

1067. Defendants' marketing and advertisements for and labeling and packaging of their cannabis products, which were purchased by Plaintiff and class members as person, family, or household consumer transactions within the meaning of Va. Code Ann. § 59.1-198, concealed and failed to disclose or adequately warn of the material fact that their cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal

304

exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits.

1068. These omissions were misleading, unfair, and deceptive standing alone and were particularly deceptive considering Defendants' advertising of their products as medicinal and therapeutic.

1069. In purchasing Defendants' products for personal, family, or household purposes, Plaintiff and class members relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to have relied on the misrepresentations and omissions.

1070. Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading, intended for consumers to rely on such misrepresentations and omissions, and that Plaintiff and class members were ignorant of the facts that cannabis products are not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavioral deficits. Defendants' conduct was willful, entitling Plaintiff and class members to treble damages under Va. Code Ann. § 59.1-204(A).

1071. Defendants' conduct proximately caused actual damages to Plaintiff and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiff and class members would have behaved differently and would not have purchased Defendants' cannabis products or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiff and class members to

305

purchase Defendants' cannabis products they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered.

1072.   WHEREFORE, Plaintiff and class seek judgment against Defendants; (a) for actual damages or $500 per violation, whichever is greater, and treble damages for Defendants' willful violations pursuant to Va. Code Ann. § 59.1-204(A); (b) for reasonable attorneys' fees and costs as permitted by Va. Code Ann. § 59.1-204(B); (c) for prejudgment interest; and (d) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT II
### Virginia Negligence

1073.   Plaintiff and class members re-allege and incorporate the allegations within all prior paragraphs with this Complaint as if they were fully set forth herein.

1074.   Defendants had a non-delegable duty of care to Plaintiff and class members to design, cultivate, test, manufacture, label, market, transport, and sell reasonably safe products and/or to adequately warn consumers of a product's dangerous propensities of which the average consumer would not be aware.

1075.   At all relevant times, Defendants sold to Plaintiff and class members such products that were unreasonably dangerous to Plaintiff and class members as their products cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation depression, and/or anxiety and cause and/or contribute to adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

1076. Defendants breached their duty to Plaintiff and class members by failing to exercise reasonable care in designing, testing, marketing, and selling their cannabis products and by failing to provide adequate warnings of the products' dangers.

1077. Defendants knew or should have known that their cannabis products caused, contributed to, and/or exacerbated mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and caused and/or contributed to adverse cardiovascular events, CHS, and/or cannabis use disorder, and/or posed significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

1078. As a proximate result of Defendants' failure to adequately warn of the mental health dangers of their product, Plaintiff and class members have suffered damages in an amount to be determined at trial, in that, among other things, they purchased and paid for products that they would not have purchased if they had known of the mental health dangers or paid more for those products than they would have otherwise paid.

1079. Plaintiff's and class members' claims are not barred by the economic loss rule because Defendants fraudulently misrepresented and concealed material health risks associated with their cannabis products—an established exception under state law.

1080. WHEREFORE, Plaintiff and class members respectfully request that the Court: (a) enter judgment in their favor and against Defendants for negligence; (b) for damages to Plaintiffs and class members who overpaid for Defendants' cannabis products or purchased Defendants' products when they otherwise would not have done so including consequential damages; (c) for punitive damages for Defendants' willful and wanton disregard of consumer safety; (d) for pre -judgment

interest; (e) for costs, expenses, and attorneys' fees; and (f) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT III
### Virginia Breach of Express Warranty

1081. Plaintiff and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

1082. Defendants made affirmations of fact and promises to Plaintiff and class members including but not limited to:

   a. Warranties that cannabis, any constituent part of cannabis, or Defendants' cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

   b. Warranties that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

   c. Warranties that there is credible medical or scientific evidence or scholarship that supports that cannabis products have certain medicinal or therapeutic properties and/or can treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain mental health disorders

308

such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma.

d. Warranties that there is credible medical or scientific evidence or scholarship that supports that certain cannabis products can more effectively treat, ease, alleviate, are good for, aid, or relieve or otherwise constitute medicine or therapy for certain health and mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical disorders, including, but not limited to, pain and glaucoma, when compared to other cannabis products.

e. Warranties that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

f. Warranties that there is credible scientific or medical evidence establishing that cannabis products are healthy or health-promoting, not dangerous or hazardous to consumers' health, not addictive, and/or do not cause, contribute to, and/or exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety and/or do not cause or contribute to adverse cardiovascular events and/or CHS.

1083. These affirmations became part of the basis of the bargain under Va. Code Ann. §§ 8.2-313, 8.2-714, 8.2-715.

1084. Defendants breached their express warranties because their products were not therapeutic or safe and did not conform to the affirmations and promises made.

1085.   Plaintiff and class members provided notice of breach within a reasonable time after discovery.

1086.   As a direct and proximate result of Defendants' breach, Plaintiff and class members suffered damages including overpayment for the products, loss of the benefit of their bargain, and incidental and consequential damages.

1087.   WHEREFORE, Plaintiff and class members seek judgment against Defendants:  (b) for damages for overpayment and loss of the benefit of the bargain, together with incidental and consequential damages as permitted by Va. Code Ann. §§ 8.2-714 and 8.2-715; (c) for prejudgment interest; (d) for costs, expenses, and attorneys' fees as permitted by law; and (e) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT IV
### Virginia Breach of Implied Warranty of Merchantability

1088.   Plaintiff and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

1089.   Defendants' cannabis products came with an implied warranty that they were merchantable under Va. Code Ann. § 8.2-314, warranting that such goods were fit for the ordinary purpose for which they would be used.

1090.   Defendants breached their implied warranty of merchantability because their products were not in merchantable condition when sold; posed significant health risks; and did not conform to marketing promises, including but not limited to, dangers of psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety, and/or cardiovascular disease, CHS, and/or cannabis use disorder, and/or significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits; lacked adequate warnings or instructions regarding these risks, rendering Defendants' products unreasonably

310

dangerous and unfit for consumption in their ordinary manner; and/or did not conform to the marketing promises and affirmations of fact made during Defendants' marketing scheme that their cannabis products had medicinal, therapeutic, or health benefits, including, but not limited to, cannabis products being capable of treating, easing, alleviating, being good for, aiding, or relieving or otherwise being medicine or therapy for certain mental health disorders such as bipolar disorder, PTSD, depression, and/or anxiety and/or other medical conditions, including, but not limited to, pain and glaucoma.

1091. Defendants breached the warranty implied at the time of sale in that Plaintiff and class members did not receive products with the purported benefits and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, or sold.

1092. Defendants also breached the warranty implied at the time of sale in that Plaintiff and class members did not receive products that were adequately contained, packaged, and labeled as required by the contract of sale.

1093. Defendants' products were not fit for ordinary use because they posed significant health risks, were defectively marketed without adequate warnings, and did not conform to the promises and affirmations made.

1094. Plaintiff and class members have had sufficient direct dealings with Defendants to establish privity of contract between Defendants, on the one hand, and Plaintiff and class members, on the other hand.

1095. Plaintiff and class members were third-party beneficiaries of Defendants' agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of Defendants' products to consumers. Specifically, Plaintiff and class members are the intended beneficiaries of Defendants'

implied warranties. Defendants' products are manufactured with the express purpose and intent of being sold to consumers.

1096. Plaintiff and class members provided notice of breach within a reasonable time after discovery.

1097. As a direct and proximate result of Defendants' breach, Plaintiff and class members suffered damages, including overpayment, loss of the benefit of their bargain, and incidental and consequential damages.

1098. WHEREFORE, Plaintiff and class members seek judgment against all Defendants: (a) for damages for overpayment, loss of the benefit of the bargain, and incidental and consequential damages as permitted by Va. Code Ann. §§ 8.2-714 and 8.2-715; (b) for pre -judgment interest; (c) for costs, expenses, and attorneys' fees; and (d) for such other and further relief as this Honorable Court deems just, proper, and reasonable.

## COUNT V
## Virginia Common Law Fraud

1099. Plaintiff and class members re-allege and incorporate by reference all foregoing paragraphs of this Complaint as if they were fully stated herein.

1100. Defendants' marketing and advertisements for and/or labeling and packaging of their cannabis products concealed and/or failed to disclose the facts and/or adequately warn Plaintiff and class members that their cannabis products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events, cannabis use disorder, and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low

312

birth weight, preterm birth, and long-term cognitive and behavior deficits. These omitted facts were material to reasonable consumers in deciding whether to purchase Defendants' cannabis products.

1101. Defendants owed Plaintiff and class members a duty to adequately disclose or warn of these facts because Defendants possess and have always possessed vastly superior knowledge, resources, experience, and other advantages, in comparison to Plaintiffs and class members, concerning the manufacture, distribution, nature, and properties of their cannabis products and have at all relevant times been in a position to know, identify, and confirm the threats posed by their cannabis products; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the misrepresentations and omissions in question; because Defendants' cannabis products posed an unreasonable risk of substantial injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

1102. Defendants knew, or recklessly disregarded the truth, and acted willfully and intentionally to deceive. Defendants intended for consumers to rely on such misrepresentations and omissions and act upon them. Defendants made these misrepresentations and omissions with the specific intent to induce Plaintiff and class members to purchase cannabis products and thereby increase Defendants' profits.

1103. Plaintiff and class members reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable consumers would have been expected to rely on the misrepresentations and/or omissions under the circumstances and Plaintiff's and class members' reliance on these misrepresentations and omissions was a foreseeable, direct, and a substantial factor in causing their purchases.

313

1104. Defendants' motive of increasing profits at the expense of the mental health of Plaintiffs and the class members was morally wrong and the acts showed a reckless disregard of the rights of Plaintiff and class members.

1105. Defendants' conduct was the direct and proximate cause of Plaintiff's and class members' damages. Absent Defendants' fraudulent conduct, Plaintiff and class members would not have purchased Defendants' cannabis products or would have paid less for them. As a result, Plaintiff and class members suffered actual damages, including but not limited to, the purchase price paid, the diminished value of the products, and consequential losses.

1106. WHEREFORE, Plaintiff and class members seek judgment against Defendants: (a) for compensatory damages in an amount to be determined at trial, together with prejudgment interest; (b) for punitive damages sufficient to punish Defendants and deter similar misconduct in the future; (c) requiring Defendants to pay restitution on any money acquired as a result of Defendants' fraudulent conduct; (d) for reasonable attorneys' fees, costs, and expenses; and (e) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## COUNT VI
### Virginia Unjust Enrichment

1107. Plaintiff and class members re-allege and incorporate by reference all prior paragraphs as if fully set forth herein.

1108. Defendants created and implemented a scheme to create a market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and/or misleading statements and/or omissions. At all times relevant to this Complaint, Defendants made and disseminated untrue, false, and misleading statements that are not supported by credible scientific or medical evidence to consumers to promote the sale and use of cannabis.

314

1109. Defendants' marketing, advertising, and labeling and packaging of their cannabis products concealed and failed to disclose the facts and/or adequately warn Plaintiff and class members that the products are addictive, not therapeutic or medicinal as represented by Defendants, but rather can cause, contribute to, and exacerbate mental health disorders such as schizophrenia, psychosis, bipolar disorder, suicidal ideation, depression, and/or anxiety; cause or contribute to adverse cardiovascular events and/or CHS; and/or pose significant risks to fetuses and children from prenatal exposure, including increased risk of death, low birth weight, preterm birth, and long-term cognitive and behavior deficits.

1110. Plaintiff and class members purchased Defendants' cannabis products directly from Defendants and/or from Defendants' authorized retailers, conferring a direct and substantial benefit on Defendants.

1111. Defendants were unjustly enriched by receiving payments from Plaintiff and class members for cannabis products sold through deception, fraud, and unlawful conduct.

1112. Defendants' retention of these benefits is unjust and inequitable because it was obtained through false statements, material omissions, and the sale of unreasonably dangerous products, and equity and good conscience require restitution.

1113. Plaintiff and class members plead this in the alternative to the other claims described herein without which they will no adequate remedy at law.

1114. WHEREFORE, Plaintiff and class members seek judgment against all Defendants: (a) requiring restitution and/or disgorgement of all monies wrongfully obtained by Defendants; (b) for prejudgment interest; (c) for costs and expenses; and (d) for such other and further relief as this Honorable Court deems just, proper, and equitable.

## IX.    PRAYER FOR RELIEF

1115.    Plaintiffs, on behalf of themselves and the proposed classes, respectfully demand that the Court determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), direct that reasonable notice of this action be given to the classes, declare Plaintiffs as the named representatives of the classes, and appoint Plaintiffs' counsel as class counsel. Plaintiffs further request that the Court enter judgment against Defendants and in favor of Plaintiffs and the classes, award damages including statutory, punitive, and multiple damages as provided by law, and/order restitution to the classes in an amount to be determined at trial, together with interest in accordance with law, as well as the relief requested in each count above. Plaintiffs also seek disgorgement from Defendants, an award of costs of suit including reasonable attorneys' fees, and such further relief as may be just and proper under the circumstances.

## X.    LACK OF ADEQUATE REMEDIES AT LAW

1116.    To the extent that equitable relief is sought under any of the above claims, Plaintiffs plead such claims in the alternative to any legal claims without which Plaintiffs would not have adequate remedies at law. Until discovery and other pretrial matters are complete, the extent to which the legal claims may provide the same relief for the same harms as could be available under claims providing equitable relief is unknown. Restitution may, for example, be measured differently than legal damages and provide a different amount of relief. The difference between the value of restitutionary and legal relief will therefore remain unknown until, at the earliest, the completion of expert reports and discovery.

## XI.    DEMAND FOR JURY

1117.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and the classes, demand a trial by jury on all issues triable.

Dated: May 4, 2026

Respectfully Submitted,

/s/ Patrick Kenneally
Patrick Kenneally
**BURKE LAW GROUP, P.L.L.C.**
205 N. Michigan Ave, Suite 810
Chicago, IL 60601
Telephone: 847-651-8525
patrick.kenneally@burkegroup.law

Jack D. Franks
**FRANKS GERKIN PONITZ GREELEY, P.C**
19333 E. Grant Hwy.
Marengo, IL 60152
Telephone: 815-923-2107
jfranks@fgpglaw.com

James Bilsborrow (*pro hac vice* forthcoming)
**WEITZ & LUXENBERG PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
E-mail: jbilsborrow@weitzlux.com

Michael Piggins (*pro hac vice* forthcoming)
**WEITZ & LUXENBERG PC**
3011 W. Grand Blvd., Fl. 24
Detroit, MI 48202
Telephone: 231-366-3108
E-mail: mpiggins@weitzlux.com

Matthew F. Pawa (*pro hac vice* forthcoming)
**PAWA LAW GROUP, P.C.**
1280 Centre Street, Suite 230
Newton Centre, MA 02459
Telephone: 617-641-9550
mp@pawalaw.com

*Counsel for Plaintiffs*